

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

------------------------------------------------------------- X

ANTHONY ZAPPIN,

               Plaintiff,

          - against -

ANCIL G. RAMEY,
STEPTOE & JOHNSON PLLC,
KEVIN M. DOYLE,
JORGE DOPICO,
RACHAEL FLETCHER CIPOLETTI,

               Defendants.

------------------------------------------------------------- X

Case No. 3:22-cv-00080

**AMENDED COMPLAINT**

       Plaintiff Anthony Zappin ("Plaintiff") hereby brings this action under West Virginia state

tort law as well as 42 U.S.C. § 1983 against Defendants Ancil G. Ramey, Steptoe & Johnson

PLLC, Kevin M. Doyle, Jorge Dopico and Rachael Fletcher Cipoletti (collectively, Defendants")

alleging the following:

## THE PARTIES

    1.     Plaintiff Anthony Zappin is a citizen and resident of the State of South Carolina.

    2.     Upon information and belief, Defendant Ancil G. Ramey ("Ramey") resides in the

State of West Virginia at 5 Club House Drive, Huntington, WV 25705. Ramey is a member at the

law firm of Steptoe & Johnson PLLC. He maintains a professional address of 825 3rd Avenue,

Suite 400, Huntington, WV 25722.

    3.     Upon information and belief, Defendant Steptoe & Johnson PLLC ("Steptoe") is a

professional limited liability company with a principal place of business at 400 White Oaks Blvd.,

Bridgeport, WV 26330. Steptoe also maintains an office at 825 3rd Avenue, Suite 400, Huntington,

1

WV 25722.  Upon information and belief, and after conducting a search based on Steptoe's website and publicly available information, none of the members of Steptoe reside in South Carolina.

4.      Upon information and belief, Defendant Kevin M. Doyle ("Doyle") resides in the State of New York at 26 Washington Ave., Nyack, NY 10960.  Doyle is the "Principal Attorney" for the New York Departmental Disciplinary Committee for the First Judicial Department.  He maintains a professional address of 180 Maiden Lane, 17th Floor, New York, NY 10038.  Plaintiff brings this case against Doyle in his individual capacity.

5.      Upon information and belief, Defendant Jorge Dopico ("Dopico") resides in the State of New York at 30 Evergreen Way, Sleepy Hollow, NY 10591.  Dopico is the "Chief Attorney" for the New York Departmental Disciplinary Committee for the First Judicial Department.  He maintains a professional address of 180 Maiden Lane, 17th Floor, New York, NY 10038.  Plaintiff brings this case against Dopico in his individual capacity.

6.      Upon information and belief, Defendant Rachael Fletcher Cipoletti ("Cipoletti") resides in the State of West Virginia at 1067 Green Meadow Road, Charleston, WV 25314.  Cipoletti is the "Chief Disciplinary Counsel" for the West Virginia Office of Disciplinary Counsel.  She maintains a professional address of 4700 MacCorkle Avenue, SE, Suite 1200C, Charleston, WV 25304.  Plaintiff brings this case against Cipoletti in her individual capacity.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over Plaintiff's federal claims asserted in this action pursuant to 28 U.S.C. § 1331 as those claims in this action arise out of the constitution and laws of the United States, namely 42 U.S.C. § 1983 ("Section 1983").

8.     This Court has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332 as there is complete diversity between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

9.     Additionally, this Court has supplemental or pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as the state law claims are so related to Plaintiff's federal Section 1983 claims that they form part of the same case or controversy under Article III of the United States Constitution.

10.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to the claims in this action occurred in this Judicial District.

## FACTUAL ALLEGATIONS

A.    <u>Plaintiff's New York Divorce Proceeding</u>

11.    Plaintiff filed for divorce against his ex-wife, Claire Comfort, in November 2013 in New York County Supreme Court.  The matter was originally assigned to Justice Deborah Kaplan.

12.    During the *Zappin v. Comfort* proceeding, Justice Kaplan ordered Plaintiff to have supervised visitation with his child <u>without a hearing</u> in violation of New York state law.  This was despite Ms. Comfort admitting under oath to committing acts of domestic violence against Plaintiff causing permanent scaring to his face and Ms. Comfort kidnapping the child when he was just six (6) weeks old.

13.    Plaintiff began to publicly criticize and speak out against Justice Kaplan's supervised visitation ruling as well as similar unlawful rulings in other matters.  Plaintiff also published a transcript of her testimony in her father's federal criminal trial in connection with drug

dealing for the Lucchese Crime Family in which she disparaged a domestic violence victim testifying against her father.  Shortly thereafter, Plaintiff was taken into a hallway by Justice Kaplan's court office after a hearing in *Zappin v. Comfort* in April 2014 where he was brutally beaten and hospitalized.  (*See* Exhibit A.)  The beating was apparently in retaliation for Plaintiff's criticism towards Justice Kaplan and releasing the transcript of her testimony.

14.    Plaintiff subsequently filed suit against Justice Kaplan and her court officer in the New York Court of Claims for the assault.  (*See* Exhibit A.)  She was then removed not only from *Zappin v. Comfort*, but from the vast majority of the cases on her docket.  (*See* Exhibit B.)  She was also apparently demoted to an administrative position.  *Zappin v. Comfort* was singled-out and transferred to Justice Matthew F. Cooper, a close colleague of Justice Kaplan.  (*See* Exhibit B.)

15.    Prior to and after presiding over *Zappin v. Comfort*, Justice Cooper has been well-known for publicly deriding and embarrassing litigants in his courtroom as well as his repeated intemperate behavior and misconduct in the courtroom.  This not only included bending and breaking the law, but regularly belittling, abusing and inappropriately publicly tormenting litigants in his courtroom – the tactics he used on Plaintiff in the New York *Zappin v. Comfort* proceeding. His improper and unethical acts include, but are not limited to:

- Justice Cooper solicited tabloid press and shamed/belittled a litigant by calling him a "**Bed-Pooping, Cokehead**" in open court;[1]

- Justice Cooper solicited tabloid press and shamed/belittled a litigant by calling him "**The Shyster of Smoked Meat**" in open court;[2]

---

[1] *See* https://nypost.com/2015/01/08/judge-blasts-banker-wife-for-horrible-fiasco-of-a-divorce/

[2] *See* https://nypost.com/2015/08/05/judge-calls-carnegie-deli-manager-the-shyster-of-smoked-meat/

- Justice Cooper solicited tabloid press and shamed a litigant/belittled a professional basketball player litigant by calling him a "**Deadbeat Dad**" in open court before conducting a trial;[3]

- Justice Cooper solicited tabloid press and shamed a litigant/belittled a litigant by calling him a "**Deadbeat Dad**" in open court before conduct a hearing or trial;[4]

- Justice Cooper solicited tabloid press and shamed a litigant/belittled a litigant by calling him a "**Deadbeat Dad**" in open court and using profanity on-the-record.[5] Justice Cooper was later forced to apologize for cursing on-the-record;

- Justice Cooper gave public testimony to the New York Assembly stating that he "shamed" litigants into outcomes he believed were just, even where the law was contrary to his rulings (*see* Exhibit C);

- Justice Cooper can be seen verbally abusing litigants and engaging intemperate behavior in multiple court proceedings;[6]

- Justice Cooper can be seen making unethical, biased, prejudicial and, most importantly, racist statements in Continuing Legal Education presentation;[7]

- Justice Cooper gained national notoriety when he stripped a mother of custody and visitation after she did not wear a mask while picking her daughter up from school;[8]

- Justice Cooper again gained national notoriety when he stripped a father of custody and visitation after he learned the father was unvaccinated;[9] and

---

[3] See https://nypost.com/2014/09/23/judge-slams-nba-star-for-being-a-deadbeat-dad/

[4] *See* https://nypost.com/2015/05/14/deadbeat-dad-claimed-poverty-while-taking-european-ski-trips

[5] *See* https://www.nydailynews.com/new-york/ny-rikers-inmate-accidentally-released-20210403-p7tgh5ls65hqnovjk3ox7qxrgi-story.html

[6] *See* https://www.youtube.com/watch?v=89hQWm3bNsw.

[7] *See* https://www.youtube.com/watch?v=uD4DA4e8els.

[8] *See* http://thegatewaypundit.com/2021/03/exclusive-nyc-judge-removes-6-year-old-mother-didnt-wear-mask-dropping-off-school/

[9] https://nypost.com/2021/10/14/nyc-judge-suspends-dads-visits-with-kid-over-vaccination-status/

- Justice Cooper was apparently linked as a "john" in the Sarah Lawrence sex trafficking cult weeks after leaving the bench.[10]

Justice Cooper's misconduct reached a boiling point and he was forced off the bench in December 2021, years before the expiration of his elected term and his mandatory retirement age.

16.    In September 2015, prior to Plaintiff even opening his mouth in Justice Cooper's courtroom and without notice, Justice Cooper sanctioned Plaintiff $10,000 – the maximum sanction – for filing a privileged medical complaint with the New York Office of Professional Medical against the Attorney for the Child's retained unqualified medical expert.  The sanction itself was not the part the inflicted the most harm on Plaintiff, however.  Justice Cooper violated state law (as held and confirmed by a Manhattan federal court, *see Zappin v. Cooper*, Case No. 16-cv-5985 at Dkt. No. 67, Opinion & Order) by publishing the statutorily sealed sanctions order[11] and personally disseminating it to the New York Post, the New York Daily News and the New York Law Journal.  Even worse, without hearing a single piece of evidence in the case, Justice Cooper branded Plaintiff a domestic abuser in the sanctions order, deliberately misrepresented (and at times outright lied) about Plaintiff's actions as confirmed by the record and went so far as to overtly and publicly attack his law license (which both Justice Cooper and Defendant Doyle later conceded was specifically designed to instigate a disciplinary proceeding against Plaintiff).  There is no question that Justice Cooper's sanction decision was an act of retaliation against Plaintiff for filing the Court of Claims action against Justice Kaplan and her court officer.

---

[10] *See* https://nypost.com/2022/03/23/sarah-lawrence-sex-cult-prostitute-list-full-of-nyc-power-players/

[11] Divorce proceedings, including orders issued in them, are sealed pursuant to New York Domestic Relations Law Section 235.

17.    To be clear, Justice Cooper's misconduct in connection with the September 15, 2016 sanctions decision[12] in *Zappin v. Comfort* included, but was not limited to:

- Justice Cooper engaged in judicial misconduct and extrajudicial conduct by personally disseminating the statutorily sealed decision to *The New York Post*, *The New York Daily News* and *The New York Law Journal* in violation of New York Domestic Relations Law Section 235 in an attempt to permanently damage Plaintiff's personal and professional reputation. (*See Zappin v. Cooper*, Case No. 16-CV-5985 Dkt. No. 57.) As a result of Justice Cooper's unlawful and unethical dissemination of the decision, Plaintiff was fired from his job less than two (2) months before the child custody trial and could not afford counsel to represent him;

- Justice Cooper unethically and publicly branded Plaintiff as a "domestic abuser" in the sanction decision before hearing a shred of evidence in the case.

- Justice Cooper unethically and corruptly questioned Plaintiff's "fitness to practice law" admittedly without providing Plaintiff advanced notice or an opportunity to be (*see* Exhibit C, Appendix of Justice Cooper's Misstatements in the Sept. 18, 2015 Sanctions Decision);

- Justice Cooper falsely accused Plaintiff of publishing a "defamatory" website about the Attorney for the Child in the case. Justice Cooper was so deceitful that he intentionally represented that private e-mails between Plaintiff's father and the Attorney for the Child were "posts" on the website (*see id.*);

- Justice Cooper overtly mispresented the scope of the subpoena he served of the Attorney for the Child asking for her financial records, which she had already be ordered to produce by prior presiding judge in the case Justice Deborah Kaplan (*see id.*); and

- Justice Cooper intentionally misrepresented Plaintiff's complaint to the Office of Professional Medical Conduct against the Attorney for the Child's retained expert as well as Plaintiff's statements to the agency (*see id.*).

18.    Despite the clear animus towards Plaintiff and his judicial misconduct, Justice Cooper refused to recuse himself from *Zappin v. Comfort*. This was even after Plaintiff lost his job as a direct result of Justice Cooper's misconduct and extrajudicial actions in connection with the sanctions decision and was Plaintiff unable to afford counsel to represent him.

---

[12] *See Zappin v. Comfort*, 26 N.Y.S.3d 217 (N.Y. Cnty. Sup. Ct. 2017).

19.     Despite his egregiously abusive and unethical behavior in connection with the Sanctions Decision, Justice Cooper refused to recuse himself from presiding over the child custody trial in the New York *Zappin v. Comfort* matter.  In fact, Justice Cooper went to great lengths to turn *Zappin v. Comfort* into a bona fide circus.  Most seriously, he (i) physically threatened Plaintiff to a "rumble" outside the courthouse (*see* Exhibit D, *Zappin v. Comfort* Trial Tr. Excerpts); (ii) repeatedly belittled and tried to provoke Plaintiff at trial calling him various derogatory names and slurs in open court (*see id.*); (iii) excluded metadata without any legal justification that show Ms. Comfort purported domestic violence photographs had been photoshopped and were taken weeks after Plaintiff separated from her (*see id.*); and (iv) excluded no less than three (3) witnesses without any legal justification who had images and who had seen Ms. Comfort without injuries during the two (2) month time period she alleged she was physically abused by Plaintiff (*see id*).

20.     Unfortunately, Justice Cooper's directed terror at Plaintiff did not stop with his denying Plaintiff access to evidence and effectively turning the trial into a bona fide circus with his antic.  Instead, on February 29, 2016, Justice Cooper issued his child custody decision in the New York *Zappin v. Comfort* proceeding that made clear his plan the entire time.  Specifically, Justice Cooper actively fabricated findings adverse to Plaintiff – which can be conclusively proven on the *Zappin v. Comfort* record alone – in a scheme to use the findings to bring a collateral estoppel attorney discipline case against Plaintiff based on those findings.  Indeed, witnesses have now come forward with evidence of this scheme.  *See Zappin v. Schorr et al.*, Case No. 22-CV-2034 at Dkt. No. 1 (Complaint).  With respect to these findings, it has been conceded by Defendants Doyle, Dopico and Cipoletti that Plaintiff was never given notice he was subject to the findings during the child custody trial.  Nevertheless, these fabricated and manufactured findings included, but are not limited to:

- In the New York *Zappin v. Comfort* Custody Decision, Justice Cooper accused Plaintiff of falsifying text messages and entering them into evidence at trial. Specifically, he wrote:

  > The text messages that plaintiff [Zappin] fabricated and introduced into evidence include, but are not limited to, those purportedly having defendant [Comfort] using racist, anti-Semitic and other derogatory and unacceptable language, as well as those that supposedly have her apologizing for assaulting plaintiff or otherwise harming him. Plaintiff [Zappin] also altered his own text messages to defendant [Comfort] by removing admissions of having assaulted her and having committed to her that he would attend a batterer's program.

  (New York *Zappin v. Comfort* Child Custody Decision at 37.)   Justice Cooper's finding was absolutely and conclusively false.  A simple review of the exhibit list in the *Zappin v. Comfort* trial shows that Plaintiff never entered any of the text messages described above into evidence.  In fact, the text messages described by Justice Cooper do not even exist.  (*See id.*).

- In the New York Custody Decision, Justice Cooper falsely stated that Plaintiff's expert, Dr. William Manion, testified during the trial that Plaintiff wrote his expert report.  Justice Cooper specifically wrote:

  > Not only were Dr. Manion's information and his resultant conclusions spoon-fed to him by plaintiff, but <u>Dr. Manion acknowledged in his testimony that plaintiff went so far as to draft the affidavit that served as his report.</u>

  (New York *Zappin v. Comfort* Custody Decision at 43 (emphasis added).).  Based on this fabrication, Justice Cooper went on to find that Plaintiff "induced" Dr. Manion to give false testimony at the child custody trial.  (*See id.*)

Unfortunately, Dr. Manion never testified that Plaintiff wrote his expert report. The record is beyond clear on that that point. Indeed, Dr. Manion testified to exactly the opposite, that he himself wrote his expert report:

| | |
|---|---|
| MS. COHEN: | Dr. Manion, you submitted an affidavit in this action; is that correct? |
| DR. MANION: | Yes, that's correct. |
| MS. COHEN: | That was written by Mr. Zappin; is that correct? |
| DR. MANION: | No. It was written by me. |

(New York *Zappin v. Comfort* Trial Tr. at 489-90 (emphasis added)). Again, the record conclusively shows that Justice Cooper fabricated his finding.


- Perhaps most disturbing in the New York Custody Decision, Justice Cooper fabricated again and found that Plaintiff falsified a November 9, 2013 text message between himself and Ms. Comfort. Defendant Cooper did not base this finding on any technical evidence (in fact, Justice Cooper denied Plaintiff the opportunity to provide technical evidence in his defense), but rather on the fact that Plaintiff has a "Computer Science Degree" and that according to Ms. Comfort (who first met Plaintiff is law school) that Plaintiff could program computers "at a young age." (*See Zappin v. Comfort* Child Custody Decision at 56-57.) However, the record shows that Plaintiff introduced an actual screenshot of his text message from his device and allowed Justice Cooper, Ms. Comfort, her counsel and the Attorney for the Child to inspect his iPad in open court:



Meanwhile, the evidence showed that Ms. Comfort refused to enter a screenshot from her device of her version of the text message into the record.   More importantly, she had placed multiple versions of the November 9, 2013 text messages into the record evidencing that she could edit the text in her versions and that she did to include the word "hit" instead of "yell."[13]

---

[13] Note that in the first version, Ms. Comfort accidentally deleted the "11" off the end of her Plaintiff's text message to her while altering the contents of the text messages.



(Given to Ravitz)



(Introduced into evidence)

Based on the record, it was apparent that it was Ms. Comfort – not Plaintiff – that had the ability to alter and did alter the representations of the November 13, 2013 text message she entered into evidence. Justice Cooper's finding that Plaintiff falsified the text message was unsupported by the record – whether that be by technical evidence or the fact that Ms. Comfort introduced multiple versions of the text message in dispute with different text.

- Justice Cooper found that Plaintiff committed acts of domestic violence against Ms. Comfort based on a set of photographs she produced at trial. However, the metadata to the photographs showed that they were altered using a program like Photoshop and that there were taken several weeks after Plaintiff had separated thousands of miles away from Ms. Comfort. And, Ms. Comfort's photographs

12

conflicted with uncontested photographs taken by Ms. Comfort's mother showing her with any injuries.

- Finally, in the New York Custody Decision, Justice Cooper described and attributed several passages of testimony to Plaintiff. (*Zappin v. Comfort* Custody Decision at 43-46.)  He then declared – without giving Plaintiff notice or an opportunity to defend himself – that the testimony was false and that Plaintiff had perjured himself.  This was a lie.  The testimony conjured up by Justice Cooper in the New York Custody Decision is found nowhere in the trial transcripts once again illustrating Justice Cooper's fabrication of the record and the overt denial of Due Process owed to Plaintiff.

21.     Justice Cooper faced no repercussions for his judicial misconduct in falsifying these and other findings.  However, he was recently removed from the bench in New York in December 2021 prior to the expiration of his term and prior to reaching New York's mandatory retirement age.  Justice Cooper's misconduct that led to his removal from the bench has not yet been made public.

B.     The New York Collateral Estoppel Disciplinary Action

22.     Justice Cooper's fabricated findings in the February 2016 *Zappin v. Comfort* child custody order became the basis for a "collateral estoppel" disciplinary proceeding filed by Defendant Doyle and Dopico against Plaintiff.

23.     Defendants Doyle and Dopico designed the collateral estoppel proceeding to deliberately skirt the Rules for Attorney Disciplinary Matters contained in 22 NYCRR 1240 *et seq.* Indeed, Plaintiff was never provided a formal charging document, he was denied discovery and, most importantly, as confirmed by the United States District Court for the Southern District of

New York in *Zappin v. Supple*, Plaintiff was denied a hearing on the merits as to the allegations of attorney misconduct lodged against him.

24.     During the collateral estoppel disciplinary proceeding, Defendant Doyle effectively conceded that Justice Cooper's findings were manufactured and falsified.  Likewise, he did not contest that Plaintiff was denied a meaningful opportunity to defend against Cooper's findings in *Zappin v. Comfort*.  Yet, he continued to pursue discipline against Plaintiff as a form of retaliation on behalf of Justice Kaplan and subsequently Justice Cooper after Plaintiff published videos from Continuing Legal Education events on YouTube in which Justice Cooper had made unethical, bigoted and outright racist statements (*see supra* fns. 6-7).  Indeed, Defendant Doyle in his quest to retaliate against Plaintiff went so far as to commit egregious attorney and prosecutorial misconduct by arguing in various reply papers and other documents that Plaintiff should be disbarred for uncharged, unlitigated and overtly false allegations of attorney misconduct.  These uncharged and unlitigated allegations included, but are not limited to, assertions that Plaintiff setup a website "disparaging" and "defaming" the Attorney for the Child Harriet Newman Cohen and that Plaintiff "threatened" Justice Cooper on the street in an altercation where Justice Cooper had seemingly spat on Plaintiff based on photographic evidence.

25.     In March 2018, the First Department issued a summary order disbarring Plaintiff without any analysis accepting Defendant Doyle and Defendant Dopico's contentions whole-cloth. The First Department failed to address any of Plaintiff's arguments, including his Due Process arguments or actual innocence contentions.

C.     The Outright Corruption of the *Zappin v. Comfort* Proceeding and Subsequent Collateral Estoppel Disciplinary Proceeding

26.     Sometime after, it became known to Plaintiff and others than Defendants Dopico and Doyle helped and assisted Justice Cooper in writing the February 2016 child custody decision

in *Zappin v. Comfort* in order to ensure a collateral estoppel disciplinary proceeding could be brought against Plaintiff. Defendants Dopico and Doyle also assisted Justice Cooper in preparing the September 2015 sanctions decision, with Defendant Doyle suggesting to Cooper that he should "publish the decision" to more easily enable to Department Disciplinary Committee to bring a disciplinary case against Plaintiff. However, despite Plaintiff's numerous demands, Defendant Dopico, Defendant Doyle and Justice Cooper have unlawfully and criminally refused to produce their communications.

27.    It likewise became known to Plaintiff that Defendants Dopico and Doyle substantially influenced Plaintiff's "*pro bono* attorney" David Evan Schorr at the *Zappin v. Comfort* child custody trial. Specifically, Mr. Schorr was subject to numerous disciplinary investigations, including but not limited to, for: (i) repeating lying during sworn testimony in multiple proceedings; (ii) repeatedly lying in sworn documents in multiple proceedings; (iii) stealing money as an estate executor; (iv) stealing money from clients; (v) harassing opposing counsel by putting up disparaging websites and posts; (vi) abusing his ex-wife and child; (vii) attempting to purchase a hostel in Cuba to traffic underage girls; and (viii) filing multiple frivolous actions. Defendants Dopico and Doyle stuck a deal with Mr. Schorr that he would only face a public censure for illicitly recording a court proceeding rather than disbarment if he subverted Plaintiff's defense in *Zappin v. Comfort* and destroyed several exculpatory documents (*i.e.*, the metadata printouts to Ms. Comfort's purported domestic violence photographs) that Justice Cooper order he maintain rather than Plaintiff. Despite Plaintiff's numerous demands, Defendant Dopico and Defendant Doyle have unlawfully and criminally refused to produce their communications with Mr. Schorr, despite his disciplinary case and investigation now being public.

28.     Plaintiff also learned sometime after that Justice Cooper and Justice Kaplan had improperly influenced Justice Rolando Acosta in the First Department.  Somehow, Justice Acosta sat on all seven (7) significant decisions in *Zappin v. Comfort* and the collateral estoppel disciplinary proceeding, despite the fact that the panels were supposed to be random and the other members of the panels changed.  Despite Plaintiff's numerous demands, Justice Kaplan, Justice Cooper and Justice Acosta have unlawfully and criminally refused to produce their communications.

D.     Kevin Doyle's Harassment of Plaintiff and Eventual Restraining Order in WV

29.     Prior to and during the New York disciplinary hearing, Defendant Doyle repeatedly harassed, stalked and bullied Plaintiff.  Shortly after the September 18, 2015 sanction decision in *Zappin v. Comfort* issued by Justice Cooper, Plaintiff received an anonymous threatening letter. (*See* Exhibit E.)  Forensic experts have confirmed that this unethical and harassing letter came from Defendant Doyle.

30.     Defendant Doyle continued his unprofessional conduct even after bringing a disciplinary investigation against him.  For instance, Defendant Doyle harassed Plaintiff with a bogus disciplinary investigation in which he accused Plaintiff of having an "unauthorized side practice" because he filed a FOIA request seeking records pertaining to Plaintiff's mother.  (*See* Exhibit F.)  Similarly, he accused Plaintiff of an "unauthorized side practice" baselessly asserting that Plaintiff aided David Evan Schorr in drafting his complaint in *Schorr v. Prudenti* filed in the Southern District of New York, even though Defendant Doyle knew Plaintiff had absolutely nothing to do with that action.  (*See id.*)  He also baselessly accused Plaintiff of misconduct that he knew David Evan Schorr solely posted to the Internet and that Plaintiff had absolutely nothing to do with.  (*See id.*)  And, he baselessly accused Plaintiff of misconduct for speech clearly

16

protected by the First Amendment.  (*See id.*)  Indeed, the entire disciplinary investigation was nothing but an attempt to harass Plaintiff, which Defendant Doyle later admitted when he told that First Department that there was "no basis" to charge Plaintiff. *See* https://www.youtube.com/watch?v=5rxZl3veHus.

31.     Defendant Doyle admittedly had no basis to charge Plaintiff with misconduct. Instead, as discussed above, Defendant Doyle and Justice Cooper hatched a plan to use the child custody decision in *Zappin v. Comfort* to fabricate findings that could be used as a basis for alleged misconduct in a collateral estoppel disciplinary proceeding.  But, even after Defendant Doyle brought the collateral estoppel disciplinary action, he continued to harass Plaintiff.  He regularly sent Plaintiff rude and inappropriate emails.  Likewise, he attacked everything from Plaintiff's appearance to Plaintiff's mother in his papers filed with the First Department while simultaneously avoiding the issues before the court.  (*See* Exhibit F.)  And, most disturbingly, Defendant Doyle got in Plaintiff's face, physically chest-bumped him and then shoved him prior to an appearance in the First Department.  (*See* Exhibit G.)  At the appearance, Defendant Doyle can even be heard interrupting and screaming at Plaintiff to "ACT LIKE A LAWYER" and other taunts while Plaintiff was addressing the First Department. *See* https://www.youtube.com/watch?v=5rxZl3veHus.

32.     And, despite obtaining discipline against Plaintiff in New York in March 2018, Defendant Doyle continued to harass Plaintiff after the fact.  He did so by sending inappropriate and harassing emails and letter to Plaintiff.  Consequently, in June 2018, Plaintiff sought and obtained a Temporary Personal Safety Order against Defendant Doyle in Cabell County, WV.

33.     Originally, Defendant Doyle was represented by Adam Berg from the New York Attorney General's Office.   But, at Defendant Cipoletti's suggestion, Defendant Doyle hired Defendant Ancil Ramey and Steptoe & Johnson PLLC to defend him.

34.     When Defendant Ramey entered the case, he instantly and continuously showed unprofessionalism by taunting, harassing and personally insulting Plaintiff.  He even insinuated he would make up unfounded lies in order to secure a dismissal.  Most importantly, however, in violation of the West Virginia Rules of Professional Conduct, Defendant Ramey threatened Plaintiff with additional disciplinary charges in West Virginia if he did not withdraw the Temporary Personal Safety Order.  He boasted at having conversations with Defendant Cipoletti about Plaintiff and stated that he could influence her to "make [Plaintiff's] life a living hell" if he did not withdraw the Temporary Personal Safety Order.  (*See* Exhibits H, I, J.)  He also stated he could influence Defendant Cipoletti to make Plaintiff's life "easier" if he did.  (*See* Exhibit I.)

35.     Plaintiff voluntarily dismissed the Temporary Personal Safety Order as a result of being inundated with harassment, threats and insults by Defendant Ramey.  Even then, Defendant Ramey threatened to bring criminal charges against Plaintiff for obtaining the Temporary Personal Safety Order, again in violation of the Rules of Professional Conduct.  (*See* Exhibit J.)  Of course, Defendant Ramey's threats were hollow.  But, his messages and threats showed a clear intent to further harass Plaintiff and influence the reciprocal disciplinary action in retaliation for Plaintiff exercising his right to petition and to defend himself.

E.     Reciprocal West Virginia Disciplinary Action

36.     In March 2018, Defendant Cipoletti filed a reciprocal disciplinary action in the West Virginia Supreme Court of Appeals based on the First Department's March 8, 2018 disciplinary decision.  She conducted no investigation, despite being required to do so under West

Virginia law. Indeed, she filed her petition in the West Virginia Supreme Court of Appeals demanding Plaintiff's disbarment on the same day that Plaintiff notified of the Office of Disciplinary Counsel of the First Department's disciplinary decision.

37.    During the reciprocal disciplinary proceeding, Defendant Cipoletti admitted and/or conceded three (3) things: (i) Justice Cooper's findings relied upon by the First Department in imposing discipline lacked any evidentiary basis in the *Zappin v. Comfort* child custody trial record (*i.e.*, Justice Cooper fabricated the findings); (ii) Plaintiff was not afforded a full and fair opportunity to contest Justice Cooper's findings in *Zappin v. Comfort* relied upon by the First Department; and (iii) Plaintiff was not afforded an opportunity to defend himself against the uncharged and unlitigated allegations of misconduct made by Defendant Doyle during the collateral estoppel disciplinary proceeding, which the First Department inexplicably cited as a basis for discipline in its decision.

38.    Based on these apparent concessions, Defendant Cipoletti was required under Rule 3.8 of the West Virginia Rules of Professional Responsibility to withdraw the reciprocal disciplinary proceeding and/or inform the West Virginia Supreme Court of Appeals that there was substantial and overwhelming evidence of Plaintiff's innocence.

39.    However, true to her corrupt nature, Defendant Cipoletti failed to comply with Rule 3.8 and continued to demand Plaintiff's disbarment. She deliberately and intentionally lied to the Hearing Panel Subcommittee and the Supreme Court of Appeals that Plaintiff had received a hearing on the merits before the New York disciplinary authority. Specifically, she overtly lied and stated:

> The New York disbarment proceedings were constitutional … Respondent [Zappin] acknowledged in his own testimony[14] that he appeared with counsel at the New York disciplinary proceeding that he was able to present evidence, that his

---

[14] Plaintiff never made any such acknowledgment. Another lie by Defendant Cipoletti.

counsel has the opportunity to cross-examine and elicit direct testimony from witnesses, and was given the opportunity to testify on his own behalf…

As the federal court in *Zappin v. Supple et al.* confirmed recently, Plaintiff never received the hearing Defendant Cipoletti so deceitfully described to the Hearing Panel and the Supreme Court of Appeals.  Indeed, Judge Schofield wrote:

> As previously noted, the First Department's disbarment decision makes clear that the referee's role [at the hearing] was "solely to consider evidence in mitigation or aggravation and thereafter to recommend an appropriate sanction" … The Amended Complaint makes numerous allegations that Defendants [Plaintiff's prior counsel] failed to contest directly the findings of the Misconduct Order during the sanctions hearing, but there is nothing to suggest that the referee at the sanctions hearing was empowered to alter or disregard the First Department's misconduct findings [based on Justice Cooper's child custody order].

(*Zappin v. Supple, et al.*, Case No. 20-cv-5602-LGS-KNF at *5, Opinion and Order (S.D.N.Y. July 1, 2021). Similarly, counsel to Defendant Doyle and Defendant Dopico similarly confirmed that Plaintiff received no hearing before the New York disciplinary authority in a hearing in the Southern District of New York:

> BERG:    As you've probably gleaned from plaintiff's letters, your Honor, the grievance committee relied upon factual findings made by Justice Cooper [in *Zappin v. Comfort*] … rather than having a *de novo* hearing on the underlying facts, and basically referred that --- made a finding of misconduct, referred it to a special masters, if that's the term, for a recommendation as to penalty only.

(*Zappin v. Dopico*, Case No. 19-cv-3781, Nov. 5, 2019 Tr. at 7:13-19.)  Put simply, Defendant Cipoletti knowingly, intentionally and overtly lied about the character and the nature of the hearing that Plaintiff received in the New York collateral estoppel disciplinary proceeding and falsely portrayed it as a hearing on the merits.

40.    Likewise, Defendant Cipoletti engaged in egregious prosecutorial misconduct by arguing to the Hearing Panel Subcommittee that Plaintiff should be disciplined for uncharged, unlitigated and false allegations of attorney misconduct.

41.     On February 16, 2021, the West Virginia Supreme Court of Appeals imposed reciprocal discipline.  In the Court's decision, it block quoted Defendant Cipoletti's deliberate and intentional lie that Plaintiff had received a hearing on the merits before the New York disciplinary authority as the basis for imposing reciprocal discipline.

F.     Defendants Ramey, Doyle and Dopico Improperly Influence Cipoletti to Continue to Pursue Reciprocal Discipline Against Plaintiff

42.     Upon information and belief, throughout the reciprocal disciplinary proceeding, Defendants Dopico, Doyle and Ramey continuously and repeatedly contacted Defendant Cipoletti about the proceeding.  More specifically, they unduly and improperly influenced her to continuing pursuing reciprocal discipline in West Virginia against Plaintiff, despite overwhelming evidence that reciprocal discipline was not warranted, that Plaintiff had been denied Due Process in New York and that the New York findings relied upon by the First Department were fundamentally infirm.

43.     Upon information and belief, Defendants Dopico, Doyle and Ramey encouraged Defendant Cipoletti not to comply with Rule 3.8, despite having a duty to do so.

44.     Upon information and belief, Defendants Dopico and Doyle encouraged Defendant Cipoletti to lie about the nature of the disciplinary proceeding in New York and tell the Hearing Panel Subcommittee and the West Virginia Supreme Court of Appeals that Plaintiff had a hearing on the merits.

45.     Upon information and belief, Defendants Dopico, Doyle and Ramey encouraged Defendant Cipoletti to continue to pursue reciprocal discipline against Plaintiff despite his innocence and the infirmity of the New York findings on the baseless and bad faith theory that West Virginia owed "full faith and credit" to the First Department decision.  (*See* Exhibit G.)

21

46.     Defendant Cipoletti had a duty under Rule 3.8 to withdraw the reciprocal disciplinary proceeding and/or inform the Court of the substantial and overwhelming evidence of Plaintiff's actual innocence and the denial of Due Process he faced in New York.  As a result of the undue and improper influence of Defendants Dopico, Doyle and Ramey, Defendant Cipoletti failed to abide by her duties under the Rules of Professional Conduct and continued to pursue discipline against Plaintiff.

G.      Defendants Unlawfully Conceal Their Communications

47.     Plaintiff has requested Defendant Cipoletti's communications with Defendants Dopico, Doyle and Ramey on multiple occasions.  First, Plaintiff requested them during the reciprocal disciplinary proceeding as they were relevant discovery required to be produced to Plaintiff under West Virginia law.  Ms. Cipoletti lied and claimed no such communications existed.

48.     On November 29, 2021, Plaintiff submitted a FOIA request seeking the communications to Defendant Cipoletti.  (*See* Exhibit K.)  In response and being represented by Defendant Ramey, Defendant Cipoletti conceded that the communications existed but asserted a bogus work-product defense.  (*See* Exhibit L.)  This defense is bogus as Plaintiff has some documents responsive to the FOIA requests that are not privileged under the work-product doctrine.  (*See* Exhibit M.)

49.     Defendants are unlawfully attempting to conceal their communications in order to obscure their misconduct.  Plaintiff believes that these communications will reveal that Defendant Cipoletti was improperly influenced by Defendants Dopico, Doyle and Ramey to maintain the reciprocal disciplinary action against him despite Plaintiff's innocence and Defendant Cipoletti's duties under Rule 3.8.  Likewise, Plaintiff believes that that these communications will reveal that

Defendants acted with an improper collateral or ulterior motive in pursuing and influencing Defendant Cipoletti to pursue the reciprocal disciplinary action against Plaintiff.

**COUNT I:**
**42 U.S.C. § 1983 – ABUSE OF PROCESS**
**(Defendants Doyle and Dopico)**

50.      Plaintiff re-alleges and incorporates by reference paragraph 1 through 45 as if fully set forth herein.

51.      By and through their conduct, as described herein in this Amended Complaint, and acting under color of state law, Defendant Kevin M. Doyle and Defendant Jorge Dopico are liable to Plaintiff under 42 U.S.C. § 1983 for the violation of Plaintiff's constitutional right to be free from abusive and perverted use of lawful process under the Fifth and Fourteenth Amendments of the United States Constitution.

52.      Defendant Doyle and Defendant Dopico, acting under color of state law, unlawfully participated in and employed regularly issued attorney disciplinary process in West Virginia against Plaintiff, including but not limited to, a reciprocal disciplinary proceeding styled *Lawyer Disciplinary Board v. Zappin*, Case No. 18-250.  As a result of this process, Plaintiff was subjected to a deliberately prolonged reciprocal disciplinary proceeding in which his rights were repeatedly violated throughout the proceeding until February 16, 2021 when he was disciplined by the West Virginia Supreme Court of Appeals.

53.      As set forth and alleged above, Defendant Doyle and Defendant Dopico provided Defendant Cipoletti with patently false information that influenced Defendant Cipoletti to pursue reciprocal discipline against Plaintiff despite the fact that she was obligated under the Rules of Professional Conduct to withdraw the reciprocal disciplinary proceeding and/or inform the West Virginia Supreme Court of Appeals that there was substantial and overwhelming evidence of

Plaintiff's innocence with respect to the underlying New York findings.  Furthermore, as shown and alleged above, Defendant Doyle and Defendant Dopico exerted improper influence on Defendant Cipoletti by and through their positions as state officials in New York to continue to pursue discipline against Plaintiff despite being aware of his innocence.

54.     Upon information and belief, Defendant Doyle and Defendant Dopico made continuous and repeated contact with Defendant Cipoletti and her office exerting improper and undue influence on her to continue to pursue unwarranted attorney discipline against Plaintiff. Defendant Cipoletti refused to provide these communications during the reciprocal disciplinary proceeding, despite these communications being discoverable under West Virginia law.  Plaintiff served Defendant Cipoletti a FOIA request on November 29, 2021 requesting such communications.  Despite acknowledging that such communications exist, Defendant Cipoletti (and her counsel, Defendant Ramey and Defendant Steptoe) refused to produce them.  Defendants are concealing these communications in an effort to conceal their misconduct and prevent Plaintiff from gaining documents to support his claims against Defendants.  Upon information and belief, discovery in this action will reveal that Defendant Doyle and Defendant Dopico exerted continuous and repeated influence on Defendant Cipoletti to pursue disciplinary action against Plaintiff despite Defendants conceding that he was innocent of the New York findings.

55.     Defendant Doyle and Defendant Dopico employed and improperly influenced Defendant Cipoletti to employ such process in the course of the reciprocal disciplinary processing with the intent to cause Plaintiff permanent and irreparable harm.

56.     Defendant Doyle and Defendant Dopico employed and improperly influenced Defendant Cipoletti to employ such process for several improper collateral purposes, including but not limited to:  (i) to retaliate against Plaintiff for exercising his First Amendment rights to speak

out against Defendants and other New York state officials; (ii) to retaliate against Plaintiff for contesting the attorney disciplinary process both in New York and West Virginia; (iii) to retaliate against Plaintiff for filing actions in federal court challenging the collateral estoppel disciplinary proceeding he was subjected to in New York; (iv) to conceal Defendants' misconduct in knowingly bringing a disciplinary action against Plaintiff based on findings rendered in Plaintiff's personal divorce matter that they knew were unsubstantiated, fabricated and manufactured; (v) to conceal Defendants' misconduct in pursuing a disciplinary proceeding against Plaintiff in New York that deliberately failed to comply with Due Process and the Rules for Attorney Disciplinary Matter set forth in 22 NYCRR 1240 *et seq.*; and (iv) to retaliate against Plaintiff for filing for and obtaining a harassment restraining order against Defendant Doyle in Cabell County, WV in 2018.

57.      As a direct and proximate result of Defendant Doyle and Defendant Dopico's unlawful actions, Plaintiff has suffered and will continue to suffer, damages in an amount to be determined at trial.

**COUNT II:**
**42 U.S.C. § 1983 – CONSPIRACY TO ABUSE OF PROCESS**
**(Defendants Doyle, Dopico and Cipoletti)**

58.      Plaintiff re-alleges and incorporates by reference paragraph 1 through 53 as if fully set forth herein.

59.      By and through their conduct, as described herein in this Amended Complaint, and acting under color of state law, Defendant Kevin M. Doyle, Defendant Jorge Dopico and Defendant Rachael Fletcher Cipoletti are liable to Plaintiff under 42 U.S.C. § 1983 for the violation of Plaintiff's constitutional right to be free from abusive and perverted use of lawful process under the Fifth and Fourteenth Amendments of the United States Constitution.

60.     Defendants Doyle, Dopico and Cipoletti, acting under color of state law, entered into an agreement whether express or in-fact to conspire to pursue a baseless and unwarranted reciprocal disciplinary action against Plaintiff in West Virginia.  As set forth above, Defendants have unlawfully concealed their communications despite requests for such communications during the reciprocal disciplinary proceeding and in a November 29, 2021 FOIA request.   Upon information and belief, discovery in this case will reveal Defendants entered into an agreement, whether express or implied in-fact, to pursue a baseless and unwarranted reciprocal disciplinary action against Plaintiff in West Virginia for a collateral purpose with the intent to cause him harm.

61.     As part of the conspiracy, Defendant Doyle and Defendant Dopico provided Defendant Cipoletti with patently false information that influenced Defendant Cipoletti to pursue reciprocal attorney discipline in West Virginia against Plaintiff despite the fact that she was obligated under the Rules of Professional Conduct to withdraw the reciprocal disciplinary proceeding and/or inform the West Virginia Supreme Court of Appeals that there was substantial and overwhelming evidence of Plaintiff's innocence as to the underlying New York findings. Furthermore, as shown and alleged above, as part of the conspiracy Defendant Doyle and Defendant Dopico exerted improper influence on Defendant Cipoletti by and through their positions as state officials in New York to continue to pursue discipline against Plaintiff despite being aware of his innocence.

62.     Defendant Cipoletti engaged in acts outside the scope of her duties as "Chief Disciplinary Counsel" in furtherance of the conspiracy.  These acts included, but are not limited to:  (i) repeatedly harassing Plaintiff on Twitter by contacting him through her personal Twitter account, despite the fact that Plaintiff was represented by counsel; and (ii) unethically reaching out to the West Virginia Reporter in March 2018 (as well as providing sealed documents from

Plaintiff's New York divorce) requesting that the paper write an article about Plaintiff's reciprocal disciplinary matter in an effect draw attention to the case, damage Plaintiff's reputation in West Virginia and gain an upper-hand in the reciprocal disciplinary matter.

63.     Upon information and belief, Defendant Doyle and Defendant Dopico made continuous and repeated contact with Defendant Cipoletti and her office as part of the conspiracy exerting improper and undue influence on her to continue to pursue unwarranted attorney discipline against Plaintiff.  Defendant Cipoletti refused to provide these communications during the reciprocal disciplinary proceeding in furtherance of the conspiracy, despite these communications being discoverable under West Virginia law.  Plaintiff served Defendant Cipoletti a FOIA request on November 29, 2021 requesting such communications.  Despite acknowledging that such communications exist, Defendant Cipoletti (and her counsel, Defendant Ramey and Defendant Steptoe), acting outside the scope of her authority as a disciplinary prosecutor, refused to produce them in furtherance of the conspiracy.   Defendants are concealing these communications as part of the conspiracy in an effort to conceal their misconduct and prevent Plaintiff from gaining documents to support his claims against Defendants.  Upon information and belief, discovery in this action will reveal that Defendant Doyle and Defendant Dopico exerted continuous and repeated influence on Defendant Cipoletti to pursue disciplinary action against Plaintiff despite Defendants conceding that he was innocent of the New York findings as part of their conspiracy.

64.     Defendant Doyle and Defendant Dopico employed and improperly influenced Defendant Cipoletti to employ such process in the course of the reciprocal disciplinary processing with the intent to cause Plaintiff permanent and irreparable harm.   Additionally, Defendant

Cipolletti carried out acts outside the scope of her responsibilities as "Chief Disciplinary Counsel," but in furtherance of the conspiracy with the intent to inflict harm on Plaintiff.

65.     Defendant Doyle and Defendant Dopico employed and improperly influenced Defendant Cipolletti to employ such process for several improper collateral purposes, including but not limited to:  (i) to retaliate against Plaintiff for exercising his First Amendment rights to speak out against Defendants and other New York state officials; (ii) to retaliate against Plaintiff for contesting the attorney disciplinary process both in New York and West Virginia; (iii) to retaliate against Plaintiff for filing actions in federal court challenging the collateral estoppel disciplinary proceeding he was subjected to in New York; (iv) to conceal Defendants' misconduct in knowingly bringing a disciplinary action against Plaintiff based on findings rendered in Plaintiff's personal divorce matter that they knew were unsubstantiated, fabricated and manufactured; (v) to conceal Defendants' misconduct in pursing a disciplinary proceeding against Plaintiff in New York that deliberately failed to comply with Due Process and the Rules for Attorney Disciplinary Matter set forth in 22 NYCRR 1240 *et seq*.; and (iv) to retaliate against Plaintiff for filing for and obtaining a harassment restraining order against Defendant Doyle in Cabell County, WV in 2018.

66.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer, damages in an amount to be determined at trial.

### COUNT III:
### STATE LAW - ABUSE OF PROCESS
#### (Defendants Ramey, Steptoe, Doyle and Dopico)

67.     Plaintiff re-alleges and incorporates by reference paragraph 1 through 62 as if fully set forth herein.

68.     By and through their conduct, as described herein in this Amended Complaint, Defendant Ancil G. Ramey, Defendant Steptoe & Johnson PLLC, Defendant Kevin M. Doyle and

Defendant Jorge Dopico are liable to Plaintiff under West Virginia state law for abuse of process in connection with the reciprocal disciplinary action *Lawyer Disciplinary Board v. Zappin*, Case No. 18-250 proceeding.

69.     Defendants unlawfully participated in and employed regularly issued attorney disciplinary process in West Virginia against Plaintiff, including but not limited to, a reciprocal disciplinary proceeding styled *Lawyer Disciplinary Board v. Zappin*, Case No. 18-250.  As a result of this process, Plaintiff was subjected to a deliberately prolonged reciprocal disciplinary proceeding in which his rights were repeatedly violated throughout the proceeding until February 16, 2021 when he was disciplined by the West Virginia Supreme Court of Appeals.

70.     As set forth and alleged above, Defendant Ramey, Defendant Steptoe, Defendant Doyle and Defendant Dopico provided Defendant Cipoletti with patently false information that influenced Defendant Cipoletti to pursue reciprocal discipline against Plaintiff despite the fact that she was obligated under the Rules of Professional Conduct to withdraw the reciprocal disciplinary proceeding and/or inform the West Virginia Supreme Court of Appeals that there was substantial and overwhelming evidence of Plaintiff's innocence with respect to the underlying New York findings.  Furthermore, as shown and alleged above, Defendant Doyle and Defendant Dopico exerted improper influence on Defendant Cipoletti by and through their positions as state officials in New York to continue to pursue discipline against Plaintiff despite being aware of his innocence. Likewise, Defendant Ramey and Defendant Steptoe exerted improper influence on Defendant Cipoletti to continue to pursue discipline against Plaintiff despite being aware of his innocence.

71.     Upon information and belief, Defendant Ramey, Defendant Steptoe, Defendant Doyle and Defendant Dopico made continuous and repeated contact with Defendant Cipoletti and her office exerting improper and undue influence on her to continue to pursue unwarranted attorney

discipline against Plaintiff.  Defendant Cipoletti refused to provide these communications during the reciprocal disciplinary proceeding, despite these communications being discoverable under West Virginia law.  Plaintiff served Defendant Cipoletti a FOIA request on November 29, 2021. Despite acknowledging that such communications exist, Defendant Cipoletti (and her counsel, Defendant Ramey and Defendant Steptoe), acting outside the scope of her authority as a disciplinary prosecutor, refused to produce them.  Defendants are concealing these communications as part of the conspiracy in an effort to conceal their misconduct and prevent Plaintiff from gaining documents to support his claims against Defendants.  Upon information and belief, discovery in this action will reveal that Defendant Doyle and Defendant Dopico exerted continuous and repeated influence on Defendant Cipoletti to pursue disciplinary action against Plaintiff despite Defendants conceding that he was innocent of the New York findings.

72.     Defendants employed and improperly influenced Defendant Cipoletti to employ such process in the course of the reciprocal disciplinary processing with the intent to cause Plaintiff permanent and irreparable harm.

73.     Defendants employed and improperly influenced Defendant Cipoletti to employ such process for several improper collateral purposes, including but not limited to:  (i) to retaliate against Plaintiff for exercising his First Amendment rights to speak out against Defendants and other New York state officials; (ii) to retaliate against Plaintiff for contesting the attorney disciplinary process both in New York and West Virginia; (iii) to retaliate against Plaintiff for filing actions in federal court challenging the collateral estoppel disciplinary proceeding he was subjected to in New York; (iv) to conceal Defendants' misconduct in knowingly bringing a disciplinary action against Plaintiff based on findings rendered in Plaintiff's personal divorce matter that they knew were unsubstantiated, fabricated and manufactured; (v) to conceal

30

Defendants' misconduct in pursing a disciplinary proceeding against Plaintiff in New York that deliberately failed to comply with Due Process and the Rules for Attorney Disciplinary Matter set forth in 22 NYCRR 1240 *et seq.*; and (iv) to retaliate against Plaintiff for filing for and obtaining a harassment restraining order against Defendant Doyle in Cabell County, WV in 2018.

74.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer, damages in an amount to be determined at trial.

## COUNT IV:
## STATE LAW – CONSPIRACY TO ABUSE OF PROCESS
### (All Defendants)

75.     Plaintiff re-alleges and incorporates by reference paragraph 1 through 70 as if fully set forth herein.

76.     By and through their conduct, as described herein in this Amended Complaint, and acting under color of state law, Defendant Ancil G. Ramey, Defendant Steptoe & Johnson PLLC, Defendant Kevin M. Doyle Defendant Jorge Dopico and Defendant Rachael Fletcher Cipoletti are liable to Plaintiff under West Virginia state law for abuse of process in connection with the reciprocal disciplinary action *Lawyer Disciplinary Board v. Zappin*, Case No. 18-250 proceeding.

77.     Defendants entered into an agreement whether express or in-fact to conspire to pursue a baseless and unwarranted reciprocal disciplinary action against Plaintiff in West Virginia. As set forth above, Defendants have unlawfully concealed their communications despite requests for such communications during the reciprocal disciplinary proceeding and in a November 29, 2021 FOIA request.  Upon information and belief, discovery in this case will reveal Defendants entered into an agreement, whether express or implied in-fact, to pursue a baseless and unwarranted reciprocal disciplinary action against Plaintiff in West Virginia for a collateral purpose with the intent to cause him harm.

31

78.     As part of the conspiracy, Defendant Ramey, Defendant Steptoe, Defendant Doyle and Defendant Dopico provided Defendant Cipoletti with patently false information that influenced Defendant Cipoletti to pursue reciprocal attorney discipline in West Virginia against Plaintiff despite the fact that she was obligated under the Rules of Professional Conduct to withdraw the reciprocal disciplinary proceeding and/or inform the West Virginia Supreme Court of Appeals that there was substantial and overwhelming evidence of Plaintiff's innocence as to the underlying New York findings.   Furthermore, as shown and alleged above, as part of the conspiracy Defendant Doyle and Defendant Dopico exerted improper influence on Defendant Cipoletti by and through their positions as state officials in New York to continue to pursue discipline against Plaintiff despite being aware of his innocence.  Likewise, Defendant Ramey and Defendant Steptoe exerted improper influence on Defendant Cipoletti to continue to pursue discipline against Plaintiff despite being aware of his innocence.

79.     Defendant Cipoletti engaged in acts outside the scope of her duties as "Chief Disciplinary Counsel" in furtherance of the conspiracy.  These acts included, but are not limited to:  (i) repeatedly harassing Plaintiff on Twitter by contacting him through her personal Twitter account, despite the fact that Plaintiff was represented by counsel; and (ii) unethically reaching out to the West Virginia Reporter in March 2018 (as well as providing sealed documents from Plaintiff's New York divorce) requesting that the paper write an article about Plaintiff's reciprocal disciplinary matter in an effect draw attention to the case, damage Plaintiff's reputation in West Virginia and gain an upper-hand in the reciprocal disciplinary matter.

80.     Upon information and belief, Defendant Ramey, Defendant Steptoe, Defendant Doyle and Defendant Dopico made continuous and repeated contact with Defendant Cipoletti and her office as part of the conspiracy exerting improper and undue influence on her to continue to

pursue unwarranted attorney discipline against Plaintiff. Defendant Cipoletti refused to provide these communications during the reciprocal disciplinary proceeding in furtherance of the conspiracy, despite these communications being discoverable under West Virginia law. Plaintiff served Defendant Cipoletti a FOIA request on November 29, 2021 requesting such communications. Despite acknowledging that such communications exist, Defendant Cipoletti (and her counsel, Defendant Ramey and Defendant Steptoe), acting outside the scope of her authority as a disciplinary prosecutor, refused to produce them in furtherance of the conspiracy. Defendants are concealing these communications as part of the conspiracy in an effort to conceal their misconduct and prevent Plaintiff from gaining documents to support his claims against Defendants. Upon information and belief, discovery in this action will reveal that Defendant Doyle and Defendant Dopico exerted continuous and repeated influence on Defendant Cipoletti to pursue disciplinary action against Plaintiff despite Defendants conceding that he was innocent of the New York findings as part of their conspiracy.

81. Defendant Ramey, Defendant Steptoe, Defendant Doyle and Defendant Dopico employed and improperly influenced Defendant Cipoletti to employ such process in the course of the reciprocal disciplinary processing with the intent to cause Plaintiff permanent and irreparable harm. Additionally, Defendant Cipolletti carried out acts outside the scope of her responsibilities as "Chief Disciplinary Counsel," but in furtherance of the conspiracy with the intent to inflict harm on Plaintiff.

82. Defendant Ramey, Defendant Steptoe, Defendant Doyle and Defendant Dopico employed and improperly influenced Defendant Cipoletti to employ such process for several improper collateral purposes, including but not limited to: (i) to retaliate against Plaintiff for exercising his First Amendment rights to speak out against Defendants and other New York state

officials; (ii) to retaliate against Plaintiff for contesting the attorney disciplinary process both in New York and West Virginia; (iii) to retaliate against Plaintiff for filing actions in federal court challenging the collateral estoppel disciplinary proceeding he was subjected to in New York; (iv) to conceal Defendants' misconduct in knowingly bringing a disciplinary action against Plaintiff based on findings rendered in Plaintiff's personal divorce matter that they knew were unsubstantiated, fabricated and manufactured; (v) to conceal Defendants' misconduct in pursuing a disciplinary proceeding against Plaintiff in New York that deliberately failed to comply with Due Process and the Rules for Attorney Disciplinary Matter set forth in 22 NYCRR 1240 *et seq*.; and (iv) to retaliate against Plaintiff for filing for and obtaining a harassment restraining order against Defendant Doyle in Cabell County, WV in 2018.

83.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer, damages in an amount to be determined at trial.

**COUNT V:**
**42 U.S.C. § 1983 – ABUSE OF PROCESS**
**(Defendants Cipoletti, Ramey and Steptoe)**

84.    Plaintiff re-alleges and incorporates by reference paragraph 1 through 83 as if fully set forth herein.

85.    By and through their conduct, as described herein in this Amended Complaint, and acting under color of state law, Defendant Rachael Fletcher Cipoletti, Defendant Ancil Ramey and Defendant Steptoe & Johnson PLLC are liable to Plaintiff under 42 U.S.C. § 1983 for the violation of Plaintiff's constitutional right to be free from abusive and perverted use of lawful process under the Fifth and Fourteenth Amendments of the United States Constitution.

86.    Defendants Cipoletti, Ramey and Steptoe, acting under color of state law, unlawfully participated in and employed regularly issued process in responding to and

(unlawfully) denying Plaintiff's November 29, 2021 FOIA request (seeking communications *inter alia* to and from Defendant Cipoletti concerning Plaintiff) by and through Defendant Ramey's December 3, 2021 denial letter.

87.     At all times, Defendants Ramey and Steptoe were agents of Defendant Cipoletti with respect to Plaintiff's November 29, 2021 FOIA request, including but not limited to in issuing the December 3, 2021 denial letter.

88.     Defendants Cipoletti, Ramey and Steptoe employed the process in the form of the December 3, 2021 denial letter with the intent to cause Plaintiff harm.

89.     Defendant Cipoletti, Ramey and Steptoe employed such process for several improper collateral purposes, including but not limited to:  (i) to improperly and unlawfully conceal communications that would have been exculpatory to Plaintiff in the West Virginia reciprocal disciplinary actions; (ii) to improperly and unlawfully conceal communications that would show misconduct on the part of Defendant Cipoletti, Defendant Ramey, Defendant Doyle, Defendant Dopico and/or other state actors; (iii) to improperly and unlawfully conceal communications that would show Defendant Doyle, Defendant Dopico and Defendant Ramey improperly influenced Defendant Cipoletti to maintain the West Virginia reciprocal disciplinary action against Plaintiff;  (iv) to retaliate against Plaintiff for exercising his First Amendment rights to speak out against Defendants and other West Virginia and  New York state officials; (v) to retaliate against Plaintiff for contesting the attorney disciplinary process both in New York and West Virginia; (vi) to retaliate against Plaintiff for filing actions in federal court challenging the collateral estoppel disciplinary proceeding he was subjected to in New York; (vii) to retaliate against Plaintiff for filing actions in federal court challenging the reciprocal disciplinary proceeding he was subjected to in West Virginia; (ix) to conceal Defendants' misconduct in

knowingly bringing a disciplinary action against Plaintiff based on findings rendered in Plaintiff's personal divorce matter that they knew were unsubstantiated, fabricated and manufactured; (x) to conceal Defendants' misconduct in pursuing a disciplinary proceeding against Plaintiff in New York that deliberately failed to comply with Due Process and the Rules for Attorney Disciplinary Matter set forth in 22 NYCRR 1240 *et seq.*; and (xi) to retaliate against Plaintiff for filing for and obtaining a harassment restraining order against Defendant Doyle in Cabell County, WV in 2018.

90.    As a direct and proximate result of Defendant Doyle and Defendant Dopico's unlawful actions, Plaintiff has suffered and will continue to suffer, damages in an amount to be determined at trial.

## COUNT VI:
## 42 U.S.C. § 1983 – CONSPIRACY TO ABUSE OF PROCESS
### (All Defendants)

91.    Plaintiff re-alleges and incorporates by reference paragraph 1 through 90 as if fully set forth herein.

92.    By and through their conduct, as described herein in this Amended Complaint, and acting under color of state law, Defendants acting in concert are liable to Plaintiff under 42 U.S.C. § 1983 for the violation of Plaintiff's constitutional right to be free from abusive and perverted use of lawful process under the Fifth and Fourteenth Amendments of the United States Constitution.

93.    Defendants Cipoletti, Ramey and Steptoe, acting under color of state law, unlawfully participated in and employed regularly issued process in responding to and (unlawfully) denying Plaintiff's November 29, 2021 FOIA request (seeking communications *inter alia* to and from Defendant Cipoletti concerning Plaintiff) by and through Defendant Ramey's December 3, 2021 denial letter.

94.     At all times, Defendants Ramey and Steptoe were agents of Defendant Cipoletti with respect to Plaintiff's November 29, 2021 FOIA request, including but not limited to in issuing the December 3, 2021 denial letter.

95.     Upon information and belief, as part of the agreement amongst Defendants, expressed or implied in fact, as well as their ongoing conspiracy, Defendant Dopico and Defendant Doyle exerted influence over Defendants Cipoletti, Ramey and Steptoe with respect to Defendant Ramey's December 3, 2021 denial letter to Plaintiff's November 29, 2021 FOIA request. Moreover, Defendant Ramey's December 3, 2021 denial letter was part of a common scheme and design between Defendants to commit tortious acts against Plaintiff.

96.     Defendants Cipoletti, Ramey and Steptoe employed the process in the form of the December 3, 2021 denial letter with the intent to cause Plaintiff harm.

97.     Defendants employed such process for several improper collateral purposes, including but not limited to:  (i) to improperly and unlawfully conceal communications that would have been exculpatory to Plaintiff in the West Virginia reciprocal disciplinary actions; (ii) to improperly and unlawfully conceal communications that would show misconduct on the part of Defendant Cipoletti, Defendant Ramey, Defendant Doyle, Defendant Dopico and/or other state actors; (iii) to improperly and unlawfully conceal communications that would show Defendant Doyle, Defendant Dopico and Defendant Ramey improperly influenced Defendant Cipoletti to maintain the West Virginia reciprocal disciplinary action against Plaintiff;  (iv) to retaliate against Plaintiff for exercising his First Amendment rights to speak out against Defendants and other West Virginia and  New York state officials; (v) to retaliate against Plaintiff for contesting the attorney disciplinary process both in New York and West Virginia; (vi) to retaliate against Plaintiff for filing actions in federal court challenging the collateral estoppel disciplinary proceeding he was

subjected to in New York; (vii) to retaliate against Plaintiff for filing actions in federal court challenging the reciprocal disciplinary proceeding he was subjected to in West Virginia; (ix) to conceal Defendants' misconduct in knowingly bringing a disciplinary action against Plaintiff based on findings rendered in Plaintiff's personal divorce matter that they knew were unsubstantiated, fabricated and manufactured; (x) to conceal Defendants' misconduct in pursing a disciplinary proceeding against Plaintiff in New York that deliberately failed to comply with Due Process and the Rules for Attorney Disciplinary Matter set forth in 22 NYCRR 1240 *et seq.*; and (xi) to retaliate against Plaintiff for filing for and obtaining a harassment restraining order against Defendant Doyle in Cabell County, WV in 2018.

98.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer, damages in an amount to be determined at trial.

### COUNT VII:
### STATE LAW - ABUSE OF PROCESS
### (Defendants Cipoletti, Ramey and Steptoe)

99.     Plaintiff re-alleges and incorporates by reference paragraph 1 through 90 as if fully set forth herein.

100.    By and through their conduct, as described herein in this Amended Complaint, Defendant Rachael Fletcher Cipoletti, Defendant Ancil G. Ramey and Defendant Steptoe & Johnson PLLC are liable to Plaintiff under West Virginia state law for abuse of process in connection with their participation in and employing regularly issued process in responding to and (unlawfully) denying Plaintiff's November 29, 2021 FOIA request *seeking communications *inter alia* to and from Defendant Cipoletti concerning Plaintiff) by and through Defendant Ramey's December 3, 2021 denial letter.

101.    At all times, Defendants Ramey and Steptoe were agents of Defendant Cipoletti with respect to Plaintiff's November 29, 2021 FOIA request, including but not limited to in issuing the December 3, 2021 denial letter.

102.    Defendants Cipoletti, Ramey and Steptoe employed the process in the form of the December 3, 2021 denial letter with the intent to cause Plaintiff harm.

103.    Defendant Cipoletti, Ramey and Steptoe employed such process for several improper collateral purposes, including but not limited to:  (i) to improperly and unlawfully conceal communications that would have been exculpatory to Plaintiff in the West Virginia reciprocal disciplinary actions; (ii) to improperly and unlawfully conceal communications that would show misconduct on the part of Defendant Cipoletti, Defendant Ramey, Defendant Doyle, Defendant Dopico and/or other state actors; (iii) to improperly and unlawfully conceal communications that would show Defendant Doyle, Defendant Dopico and Defendant Ramey improperly influenced Defendant Cipoletti to maintain the West Virginia reciprocal disciplinary action against Plaintiff;  (iv) to retaliate against Plaintiff for exercising his First Amendment rights to speak out against Defendants and other West Virginia and  New York state officials; (v) to retaliate against Plaintiff for contesting the attorney disciplinary process both in New York and West Virginia; (vi) to retaliate against Plaintiff for filing actions in federal court challenging the collateral estoppel disciplinary proceeding he was subjected to in New York; (vii) to retaliate against Plaintiff for filing actions in federal court challenging the reciprocal disciplinary proceeding he was subjected to in West Virginia; (ix) to conceal Defendants' misconduct in knowingly bringing a disciplinary action against Plaintiff based on findings rendered in Plaintiff's personal divorce matter that they knew were unsubstantiated, fabricated and manufactured; (x) to conceal Defendants' misconduct in pursuing a disciplinary proceeding against Plaintiff in New

York that deliberately failed to comply with Due Process and the Rules for Attorney Disciplinary Matter set forth in 22 NYCRR 1240 *et seq*.; and (xi) to retaliate against Plaintiff for filing for and obtaining a harassment restraining order against Defendant Doyle in Cabell County, WV in 2018.

104.    As a direct and proximate result of Defendant Doyle and Defendant Dopico's unlawful actions, Plaintiff has suffered and will continue to suffer, damages in an amount to be determined at trial.

**COUNT VIII:**
**STATE LAW – CONSPIRACY TO ABUSE OF PROCESS**
**(All Defendants)**

105.    Plaintiff re-alleges and incorporates by reference paragraph 1 through 104 as if fully set forth herein.

106.    By and through their conduct, as described herein in this Amended Complaint, Defendant Rachael Fletcher Cipoletti, Defendant Ancil G. Ramey and Defendant Steptoe & Johnson PLLC are liable to Plaintiff under West Virginia state law for abuse of process in connection with their participation in and employing regularly issued process in responding to and (unlawfully) denying Plaintiff's November 29, 2021 FOIA request *seeking communications *inter alia* to and from Defendant Cipoletti concerning Plaintiff) by and through Defendant Ramey's December 3, 2021 denial letter.

107.    At all times, Defendants Ramey and Steptoe were agents of Defendant Cipoletti with respect to Plaintiff's November 29, 2021 FOIA request, including but not limited to in issuing the December 3, 2021 denial letter.

108.    Upon information and belief, as part of the agreement amongst Defendants, expressed or implied in fact, as well as their ongoing conspiracy, Defendant Dopico and Defendant Doyle exerted influence over Defendants Cipoletti, Ramey and Steptoe with respect to Defendant

Ramey's December 3, 2021 denial letter to Plaintiff's November 29, 2021 FOIA request. Moreover, Defendant Ramey's December 3, 2021 denial letter was part of a common scheme and design between Defendants to commit tortious acts against Plaintiff.

109.     Defendants Cipoletti, Ramey and Steptoe employed the process in the form of the December 3, 2021 denial letter with the intent to cause Plaintiff harm.

110.     Defendants employed such process for several improper collateral purposes, including but not limited to: (i) to improperly and unlawfully conceal communications that would have been exculpatory to Plaintiff in the West Virginia reciprocal disciplinary actions; (ii) to improperly and unlawfully conceal communications that would show misconduct on the part of Defendant Cipoletti, Defendant Ramey, Defendant Doyle, Defendant Dopico and/or other state actors; (iii) to improperly and unlawfully conceal communications that would show Defendant Doyle, Defendant Dopico and Defendant Ramey improperly influenced Defendant Cipoletti to maintain the West Virginia reciprocal disciplinary action against Plaintiff; (iv) to retaliate against Plaintiff for exercising his First Amendment rights to speak out against Defendants and other West Virginia and New York state officials; (v) to retaliate against Plaintiff for contesting the attorney disciplinary process both in New York and West Virginia; (vi) to retaliate against Plaintiff for filing actions in federal court challenging the collateral estoppel disciplinary proceeding he was subjected to in New York; (vii) to retaliate against Plaintiff for filing actions in federal court challenging the reciprocal disciplinary proceeding he was subjected to in West Virginia; (ix) to conceal Defendants' misconduct in knowingly bringing a disciplinary action against Plaintiff based on findings rendered in Plaintiff's personal divorce matter that they knew were unsubstantiated, fabricated and manufactured; (x) to conceal Defendants' misconduct in pursing a disciplinary proceeding against Plaintiff in New York that deliberately failed to comply with Due

41

Process and the Rules for Attorney Disciplinary Matter set forth in 22 NYCRR 1240 *et seq*.; and (xi) to retaliate against Plaintiff for filing for and obtaining a harassment restraining order against Defendant Doyle in Cabell County, WV in 2018.

111.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and will continue to suffer, damages in an amount to be determined at trial.

## JURY TRIAL DEMANDED

Plaintiff demands a jury on all issues which may be properly tried by a jury

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

(a)    Enter judgment in favor of Plaintiff against Defendants;

(b)    Enter judgment award Plaintiff compensatory damages on all counts herein seeking money damages to compensate Plaintiff for Defendants' unlawful and tortious activities complained of herein and for any injury complained of herein; inclusive of interest and costs, in an amount to be determined at trial;

(c)    Enter judgment award punitive, exemplary, enhanced and/or treble damages as allowed by applicable state and federal law in an amount to be determined at trial;

(d)    Enter judgment award Plaintiff his fees and costs reasonably incurred in this action as allowed by applicable state and federal law; and

(e)    Order such other relief that the Court deems just and appropriate.

Dated: June 13, 2022

ANTHONY ZAPPIN
P.O. Box 443
North Myrtle Beach, SC 29597-8443
(304) 730-4463 (tel.)
anthony.zappin@gmail.com
*Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2022, I sent the foregoing Plaintiff's Amended

Complaint via USPS mail, postage prepaid to counsel for Defendants at the addresses listed

below:

Ancil Ramey
Steptoe & Johnson PLLC
P.O. Box 2195
Huntington, WV 25722-2195

Charles R. Bailey
Katherine H. Arritt
Bailey & Wyant, PLLC
500 Virginia Street, East, Suite 600
P.O. Box 3710
Charleston, WV 25337-3710

_____
ANTHONY ZAPPIN

# Anthony Zappin

P.O. Box 443 • North Myrtle Beach, SC 29582 • Phone: (304) 730-4463
E-Mail: anthony.zappin@gmail.com

Date:  June 13, 2022

**VIA FEDEX**

Clerk of the Court
United States District Court
Southern District of West Virginia
845 Fifth Avenue, Room 101
Huntington, WV 25701

      Re:    _Zappin v. Ramey, et al._, Case No. 22-cv-00080

Dear Sir or Madam:

      Please find enclosed for filing Plaintiff's Amended Complaint.  I am filing it within twenty-one (21) days of Defendants' motion to dismiss.  Pursuant to Fed. R. Civ. P. 15(a)(1)(B), the Amended Complaint may be filed as of right and does not need leave of the Court.

      You should have received or will be receiving a FedEx package with the same Amended Complaint.  Please disregard it as it did not contain a Certificate of Service with the Amended Complaint.

      Please contact me if you have any questions.  Thank you for your attention to this matter.

                    Respectfully,

                    Anthony Zappin

Enclosures

FedEx ®



PT 725 #1
10:30 0571
06 14
A
FZ

X-RAYED



FedEx Express ®

SHIP DATE: 13JUN22
ACTWGT:
CAD: 308600009/INET4492

BILL CREDIT CARD

ORIGIN ID:HTSA   (304) 730-4463
ANTHONY ZAPPIN
1827 WASHINGTON BLVD.
HUNTINGTON, WV 25701
UNITED STATES US

TO  CLERK OF THE COURT
US DISTRICT COURT, SDWV
845 FIFTH AVENUE
ROOM 101
HUNTINGTON WV 25701
(304) 529-5588
INV:
PO:
REF:
DEPT:

SB1J2/27AF/FE4A

TUE – 14 JUN 10:30A
PRIORITY OVERNIGHT

25701
WV-US   HTS

60 HTSA

7771 1807 0571

TRK#
0201