**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**ANTHONY ZAPPIN,**

          **Plaintiff,**

**v.**                            **Case No.: 3:22-cv-00080**

**ANCIL RAMEY, et al.,**

          **Defendants.**

## <u>PROPOSED FINDINGS AND RECOMMENDATIONS</u>

Pending before the Court are a *pro se* amended complaint filed by Plaintiff Anthony Zappin under 42 U.S.C. § 1983, (ECF No. 14), and Defendants' Motions to Dismiss and for Pre-Filing Injunction, (ECF Nos. 11, 15). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings herein and **RECOMMENDS** that Defendants' motions, (ECF Nos. 11, 15), be **GRANTED**; the amended complaint, (ECF No. 14), be **DISMISSED**, with prejudice; this action be **CLOSED** and **REMOVED** from the docket of the Court; and a prefiling injunction be **IMPOSED** prohibiting Plaintiff from instituting any further civil litigation in this district against the named defendants or any other individual concerning Plaintiff's divorce, custody, or attorney disciplinary proceedings; disbarments; or prosecution for a tangentially related criminal matter

without first obtaining leave to do so from this Court. *See, e.g., Brumfield v. Goodyear Tire & Rubber Co.*, No. 3:15-CV-14127, 2016 WL 1254627, at *11 (S.D.W. Va. Mar. 11, 2016), *report and recommendation adopted*, 2016 WL 1267803 (S.D.W. Va. Mar. 30, 2016) (imposing prefiling injunction due to repeated vexatious litigation on the same topics); *also Zappin v. Cooper,* 20 Civ. 2669 (ER), 2022 WL 985634 (S.D.N.Y. Mar. 31, 2022).

## I.    Factual and Procedural History

This case is one of many *pro se* lawsuits filed by Zappin, an attorney formerly licensed to practice law in the District of Columbia, New York, and West Virginia. Not all of Zappin's lawsuits are relevant to the instant action, but to the extent that they are relevant, they are discussed below. Also addressed below are two of three attorney disciplinary proceedings lodged against Zappin.

### A.  *Prior Relevant Legal Actions*

#### 1. Divorce and Custody Proceedings

Zappin married Claire K. Comfort in 2013. Comfort and Zappin quickly developed marital problems and by November of that year entered into a consent order in the District of Columbia by which Zappin agreed to have no contact with Comfort and only supervised visitation with the couple's newborn son. *Zappin v. Comfort*, 49 Misc. 3d 1201(A), 26 N.Y.S.3d 217 (N.Y. Sup. Ct. 2015), *aff'd,* 146 A.D.3d 575, 49 N.Y.S.3d 6 (2017) (hereinafter also referred to as "*Sanctions Order*"). On February 11, 2014, after Comfort moved to New York, Zappin filed for divorce and child custody in the New York County Supreme Court. Zappin represented himself in the proceedings. By all accounts, the divorce and custody battle were acrimonious and covered extensively by New York City tabloids.

Justice Matthew F. Cooper was assigned to preside over Zappin's divorce and child custody proceedings after Justice Deborah A. Kaplan withdrew from the case. On September 18, 2015, Justice Cooper issued an Order imposing sanctions against Zappin in the amount of $10,000. *Sanctions Order,* at \*11. In the Order, Justice Cooper found that Zappin had used "his law license as a tool to threaten, bully, and intimidate." *Id.,* at \*2. Justice Cooper reviewed the history of the divorce proceeding, describing Zappin as being aggressively hostile to both the presiding judge in the District of Columbia and to Justice Kaplan. *Id.,* at \*2-\*3. Justice Cooper cited to passages in the record where Zappin accused Justice Kaplan of lying, indicating that Zappin made "other deeply personal, and frankly outrageous, verbal attacks" against Justice Kaplan that could "only be described as words not said in civil discourse, let alone ones that should ever be uttered by an attorney to a judge in the context of a court proceeding." *Id.,* at \*3. Justice Cooper listed numerous instances in which Zappin intentionally tried to delay and disrupt the proceedings, all while vehemently complaining that he was being denied a hearing on continued supervised access to his child. *Id.,* at \*4-\*5. Justice Cooper noted that Zappin treated Comfort's counsel in the same "offensive and patently improper manner," but exhibited his "worst form of behavior" toward the attorney who was appointed to represent the interests of Zappin's child. *Id.,* at \*6. According to Justice Cooper, Zappin retaliated against his child's attorney by creating websites posting insulting statements about her, serving her with improper subpoenas, and filing an unmerited and dishonest complaint against the expert retained by the attorney. *Id.,* at \*7-\*10. Justice Cooper found that warnings had not had any effect on Zappin's misconduct; consequently, Justice Cooper imposed monetary sanctions "for the integrity of the judicial process, as well as for the protection of the other litigants and the child." *Id.,* at \*11.

3

Zappin appealed Justice Cooper's order of sanctions to the Supreme Court, Appellate Division, First Department, New York (hereinafter also referred to as the "Appellate Court"), which found that the sanctions were proper and that Zappin was not entitled to a hearing prior to the court imposing sanctions. *Zappin v. Comfort,* 146 A.D.3d 575, 49 N.Y.S.3d 6 (2017) *appeal dismissed by* 31 N.Y.3d 1077, 102 N.E.3d 1056 (2018). The Appellate Court determined that Justice Cooper's "detailed decision [was] amply supported by the record" and that Zappin had not advanced any meritorious argument. *Id.* The Appellate Court agreed that the record established "unprofessional, outrageous and malicious conduct" by Zappin and rejected each of his procedural arguments. *Id.*

On August 16, 2016, Justice Cooper entered a judgment of divorce on Zappin's petition, which incorporated an earlier order entered on March 1, 2016, awarding Comfort sole physical and legal custody of the parties' child, granting Zappin supervised visitation, and issuing a five-year stay-away order of protection in Comfort's favor. *Zappin v. Comfort,* 155 A.D.3d 497, 65 N.Y.S.3d 30-31 (2017) *appeal dismissed* 31 N.Y.3d 1077, 102 N.E.3d 1056 (2018) (hereinafter also referred to as the "*Divorce Judgment*").[1] Zappin appealed, and the Appellate Court affirmed the judgment. The Appellate Court concluded that the custody award was resolved on a "sound and substantial evidentiary basis," specifically finding support in the record for Justice Cooper's determination that Comfort and her witnesses were credible, while Zappin's testimony was frequently "not truthful," and Comfort's version of events regarding domestic violence was corroborated with

---

[1] The undersigned notes that, in the amended complaint, Zappin refers at length to trial transcripts from his divorce and custody proceeding and to the divorce and custody orders entered by Justice Cooper. However, Zappin did not provide any of these documents with his amended complaint, despite relying on them extensively, and the trial transcripts and divorce and custody orders are not available to this Court. As such, the undersigned relies on the written decision of the Appellate Court, which provides all of the necessary factual information to consider Defendants' motion to dismiss.

4

photographs. *Id.* at 498. The Appellate Court found the evidence persuasive that Zappin had physically and verbally harmed Comfort, engaged in abusive litigation tactics, lacked emotional restraint, made repeated false allegations of abuse, and committed numerous family offenses. *Divorce Judgment* at 498. The Appellate Court rejected all of Zappin's procedural challenges, concluding that Justice Cooper's "rulings in this lengthy, contentious proceeding were fair and impartial, and were based in part on credibility determinations that have support in the record." *Id.* at 500.

### 2. Disbarments

#### a. New York

In 2016, the Attorney Grievance Committee of the Appellate Division, First Department, New York charged Zappin with professional misconduct in a collateral estoppel disciplinary action based upon Justice Cooper's findings during the divorce and custody proceedings. *Matter of Zappin*, 160 A.D.3d 1, 73 N.Y.S.3d 182 (N.Y. App. Div. 2018). Zappin was prosecuted by defendant herein, Kevin M. Doyle, under the supervision of chief attorney and defendant herein, Jorge Dopico. On October 17, 2016, the Appellate Court found that Zappin had violated multiple rules of professional conduct, basing its findings on Justice Cooper's determinations that Zappin had engaged in domestic violence against Comfort, testified falsely at a custody trial, introduced false evidence during the proceedings, presented misleading testimony, demonstrated disrespect for the court and counsel, threatened his wife and her attorney with professional harm, made offensive remarks to his child, engaged in frivolous and abusive litigation, and attempted to defame the child's attorney. *Id.*, at *3. The Appellate Court referred the matter to a referee to recommend an appropriate sanction.

After conducting a hearing, the referee recommended disbarment, citing Zappin's

lack of remorse and lack of respect for the judicial process as aggravating factors. *Id,* at *5. On March 8, 2018, the Appellate Court accepted the recommendation and ordered Zappin disbarred. *Matter of Zappin*, 160 A.D.3d, at *9. The Appellate Court rejected Zappin's argument that it would be fundamentally unfair to discipline him pursuant to the doctrine of collateral estoppel, pointing out that the Appellate Court had previously reviewed and affirmed Justice Cooper's findings on appeal. *Id.,* at *6. The Appellate Court noted that the record was:

> replete with numerous egregious and outrageous acts of misconduct perpetrated by respondent over the course of a four-year period, including his repeated acts of domestic violence toward his wife; his false testimony at the custody trial; his introduction of falsified evidence in the form of altered text messages; his presentation of misleading testimony through his expert witnesses; his flouting the directives of three judges; his setting up of a fake website about the attorney for the child in the custody action and posting derogatory messages about her on it; his baseless filing of a disciplinary complaint against a court-appointed psychiatric expert; his threatening text messages directed to his wife; his cell phone calls to his then three-month-old son baselessly accusing his father-in-law of being a child sexual abuser who could harm him; his engagement in frivolous litigation against his wife, her parents, and her attorneys; his attempted defamation of the attorney for the child; and his filing of a police report falsely accusing his wife of committing acts of domestic violence.

*Id.,* at *8. Based on the record and the applicable case law, the Appellate Court agreed that the referee's findings of facts and conclusions of law should be adopted and Zappin disbarred. *Id.* Zappin appealed the judgment, which appeal was dismissed on the ground that no substantial constitutional question was directly involved. *Matter of Zappin,* 32 N.Y.3d 946, 108 N.E.3d 946 (2018).

### b. *West Virginia*

On March 8, 2018, Zappin notified the West Virginia State Bar of his disbarment in New York. *Lawyer Disciplinary Board v. Zappin,* No. 18-0250, 2021 WL 595869, at *4 (W. Va. Feb. 16, 2021). On March 21, 2018, defendant herein, Rachael Fletcher

Cipoletti, who was Chief Disciplinary Counsel for the West Virginia Office of Disciplinary Counsel, sought reciprocal discipline in West Virginia. *Zappin,* 2021 WL 595869, at *4*;* (ECF No. 14 at 18). Zappin requested a formal hearing, which was held over a two-day period before a hearing panel subcommittee. At the conclusion of the hearing, the subcommittee recommended that reciprocal punishment be imposed. *Zappin,* 2021 WL 595869, at *4. Zappin objected to the recommendation; accordingly, the case was set for oral argument before the Supreme Court of Appeals of West Virginia ("WVSC").

At oral argument, Zappin contended that the New York disciplinary proceeding violated his right to due process and there was a complete absence of proof of his misconduct. *Id.*, at *5. He claimed that the factual findings made in his divorce and custody proceedings were erroneous and contrary to the record, and that he had produced contradictory evidence during the disciplinary proceeding in West Virginia that proved the infirmity of the New York findings. *Id.* The WVSC disagreed, however, concluding that the facts developed in the New York divorce and custody proceedings established misconduct by Zappin involving "dishonesty, fraud, deceit, or misrepresentation, and abusive litigation tactics." *Id.*

The WVSC further addressed Zappin's argument that the application of collateral estoppel violated his due process rights, noting that Zappin had litigated that claim multiple times in New York and had been uniformly unsuccessful. *Id.,* at *6. Moreover, the WVSC affirmed the findings of the West Virginia hearing panel subcommittee, which ascertained that New York had provided Zappin with due process. The subcommittee observed that Zappin had received notice of the disciplinary charges in New York and had been given an opportunity to litigate them. He was able to offer evidence in support of his position, had counsel to cross examine witnesses and elicit direct examination, and was

7

given the chance to testify on his own behalf. When disbarment was recommended, Zappin was permitted, and in fact did, file a brief in opposition to the recommendation. He also received the opportunity to fully exhaust his appellate rights; thus, ensuring his due process protections. Accordingly, on February 16, 2021, the WVSC determined that Zappin had failed to raise any meritorious grounds to challenge the discipline imposed by New York and, therefore, West Virginia was mandated to impose the same sanction of disbarment. *Id.*

### 3. Other Civil Litigation

#### a. *Zappin v. Cooper*, 16 Civ. 5985 (KPF), 2018 WL 708369 (S.D.N.Y Feb. 2, 2018) (also referred to as "*Zappin I*")

After his divorce, Zappin filed "a series of federal actions against individuals and entities connected to his divorce proceedings in New York State Supreme Court," including this action against Justice Cooper alleging that Justice Cooper gave "unauthorized recipients" a copy of the Sanctions Order, which according to Zappin, contained "false, malicious, or defamatory statements" about him. *Zappin I***,** at *1. Zappin claimed defamation, intentional infliction of emotional distress, tortious interference with prospective economic advantage, and other related causes of action. Justice Cooper moved to dismiss the complaint on the grounds of judicial immunity, sovereign immunity, the *Rooker-Feldman* doctrine, collateral estoppel, and failure to state a claim. *Id.*

The United States District Court for the Southern District of New York (hereinafter also referred to as the "Southern District") reviewed the history of Zappin's divorce and custody proceedings, setting out Justice Cooper's stated reasons for imposing sanctions and noting the Appellate Court's affirmance of the award of sanctions. The Southern

District discussed Zappin's allegations that Justice Cooper disseminated the Sanctions Order intentionally to harm Zappin's reputation and took extrajudicial steps to ensure that the media would have access to the Sanctions Order. Considering Justice Cooper's defense of the *Rooker-Feldman* doctrine, the Southern District rejected it. The Southern District acknowledged that Zappin sometimes blurred the lines between injuries arising from the Sanctions Order itself, which would be barred by the *Rooker-Feldman* doctrine, and injuries from the dissemination of the Sanctions Order, but the Southern District accepted Zappin's representation that he was not seeking to disturb or challenge the Sanctions Order; rather, he was focused on its wrongful dissemination. *Zappin I*, at *8. The Southern District likewise found Justice Cooper's immunity defenses to be insufficient to dismiss the complaint. *Id.*

However, the Southern District was persuaded that Zappin's complaint could not survive review under the doctrine of non-mutual collateral estoppel. The Southern District explained that collateral estoppel, also known as issue preclusion, generally "prevented parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Zappin I***,** at *15 (quoting *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 288 (2d Cir. 2002)). Non-mutual collateral estoppel extended the benefit of the bar to a defendant who was not a party to the previous litigation when the "defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Id.* (quoting *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, n. 4 (1979)). The point being that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Id.* (quoting *Montana v. United*

*States,* 440 U.S. 147, 153 (1979)). The Southern District added that a "new defendant in the plaintiff's second lawsuit may defensively invoke collateral estoppel regarding issues of law or fact decided in the plaintiff's first action." *Zappin I,* at *15 (quoting *Jasper v. Sony Music Entm't,* 378 F.Supp.2d 334, 343 (S.D.N.Y. 2005)).

Applying the non-mutual collateral estoppel doctrine, the Southern District examined the Sanctions Order and determined that the factual findings forming the basis of Zappin's complaint were the same factual findings contained in the Sanctions Order. Indeed, the alleged false, malicious, and defamatory statements that were supposedly wrongfully disseminated by Justice Cooper were the same factual determinations made in the Sanctions Order. *Id.,* at *17-*18. As the validity of the factual determinations were affirmed on appeal and thus given preclusive effect, Zappin was barred from relying on opposite factual statements to support his claims that Justice Cooper disseminated false, defamatory, or malicious information. While the Southern District acknowledged that, when considering a motion to dismiss, courts generally must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff, "collateral estoppel 'will nonetheless bar a plaintiff's claim when [a] plaintiff's factual allegations have been decided otherwise in a previous litigation.'" *Id.,* at * 17 (quoting *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC,* 23 F.Supp.3d 344, 360 (S.D.N.Y 2014)).

Furthermore, contrary to Zappin's representation, the Southern District found that Zappin had received a full and fair opportunity to contest the Sanctions Order, including the integral factual determinations, pointing out that he argued to the Appellate Court that the factual findings were without evidentiary support and were erroneous and unfair. The Appellate Court, however, found Justice Cooper's factual findings to be amply

supported by the record. *Zappin I,* at *19-*21. The Southern District thus concluded that the dissemination of accurate, adjudicated facts could not serve as a basis for Zappin's claims against Justice Cooper. Therefore, his complaint was dismissed.

Zappin appealed the Southern District's dismissal to the United States Court of Appeals for the Second Circuit ("Second Circuit"), which affirmed the judgment. *Zappin v. Cooper,* 768 Fed. Appx. 51, 52 (2d Cir. 2019). The Second Circuit held that Zappin had a full and fair opportunity to challenge the state court findings on appeal; that he could not relitigate the issues in federal court; and that he failed to state any claim premised on the alleged falsity or impropriety of the state court findings. *Id.*

### b. *Zappin v. Doyle*, 17 Civ. 8837 (KPF), 2018 WL 2376502 (S.D.N.Y Apr. 10, 2018) (also referred to as "*Zappin II*")

Zappin filed suit against Defendant Doyle and multiple other individuals involved in his divorce, custody, and New York disbarment actions, stating that he wanted to "cease what has become a four-year campaign of harassment, retaliation and outright discrimination against him by Defendants." *Zappin II,* at *1. Zappin complained about Justice Cooper's "fabricated" findings in the Sanctions Order and the judgment of divorce, the "bad faith" collateral estoppel disciplinary proceeding, the collusion of the defendants, his inability to have a meaningful opportunity to be heard, and other retaliatory and allegedly unlawful behaviors. *Id.,* at *1-*2. Ultimately, on April 10, 2018, the Southern District dismissed the complaint against Doyle, with prejudice, pursuant to Fed. R. Civ. P. 41(b), because Zappin had repeatedly failed to comply with court orders. Although the Court recognized that dismissal was a harsh remedy, it found that dismissal was warranted in view of Zappin's behavior, particularly when considering his education, training, experience as a litigator, and the number of *pro se* cases he had filed in the

district, proving himself capable of filing complex briefs and accessing the electronic case filing system. *Zappin II,* at *5-*6. Furthermore, the Court did not believe a less harsh sanction would be effective. *Id.,* at *9. Zappin appealed the District Court's judgment to the Second Circuit, which affirmed it on March 13, 2019. *Zappin v. Doyle,* 756 Fed. Appx. 110 (2d Cir. 2019).

### c.  *Zappin v. NYP Holdings, Inc.*, 769 Fed. Appx. 5 (2d. Cir. 2019) (also referred to as "*Zappin III*")

Zappin sued The New York Post and one of its reporters, claiming a story they published about a day of court proceedings in Zappin's divorce and child custody action was defamatory. *Zappin III* at 7. The article discussed allegations by Zappin's estranged wife that Zappin was abusive; allegations that Zappin denied. *Id.* at 9. The Southern District dismissed the complaint, in part, on the basis of collateral estoppel, determining that the matrimonial judge had made a factual finding that Zappin had been abusive to his wife, and that finding was affirmed on appeal. Consequently, Zappin was precluded from contesting the truth of the finding. Zappin appealed to the Second Circuit, challenging the District Court's dismissal on the ground of collateral estoppel. *Id.* at 10.

Acknowledging that "a federal court must apply New York collateral estoppel law to New York state court judgments," the Second Circuit stated: '[i]n New York, 'issue preclusion occurs if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" *Id.* (citation omitted). In addition, the Court noted that collateral estoppel could be invoked "either defensively or offensively" by "a nonparty to the prior litigation." *Zappin III* at 10. (citation omitted). The Second Circuit thus rejected Zappin's appeal, holding that his challenge to the truth

of the abuse allegation was barred by collateral estoppel because the allegation was actually litigated; Zappin was found to be abusive; he had a full and fair opportunity to litigate the issue; and the matrimonial judge's finding was affirmed on appeal, giving it preclusive effect. *Zappin III* at 11. Therefore, the District Court's judgment was affirmed.

### d. *Zappin v. Cooper, Doyle, et. al,* 20 Civ 2669(ER), 2020 WL 4753036 (S.D.N.Y Aug. 17, 2020) (also referred to as "*Zappin IV*")

Zappin sued several individuals, including Doyle, for violations of procedural due process, First Amendment retaliation, conspiracy to engage in First Amendment retaliation, conspiracy to commit abuse of process, and abuse of process—arising out of his divorce, New York disbarment, and out of an alleged "bogus" criminal action filed against Zappin concerning his unsubstantiated claim that Justice Cooper spit on him. *Zappin IV,* at *1-*2. On August 17, 2020, the Southern District dismissed the complaint against Doyle on the basis of claim preclusion. The Southern District explained that Zappin had previously sued Doyle in the Southern District of New York, asserting claims arising from Zappin's contentious divorce proceedings, the collateral estoppel disciplinary action, and the criminal case, and that civil action had been dismissed with prejudice pursuant to Fed. R. Civ. P. 41(b). *Id*., at *2. The Court held that the Rule 41(b) dismissal operated as an adjudication on the merits and, as the "facts and connected series of transactions essential to this action … were all present in the previous action," Zappin was barred by res judicata from bringing claims against Doyle that "were or could have been raised in the earlier case." *Id.,* at *4. Zappin did not appeal the Court's judgment.

### e. *Zappin v. Collazo,* 19 Civ. 3781 (LGS), 19 Civ. 10573 (LGS), 2020 WL 5646496 (S.D.N.Y Sept. 22, 2020) (also referred to as "*Zappin V*")

Zappin separately sued Ernest Collazo, the former volunteer chairman of the

Attorney Grievance Committee that considered Zappin's disbarment in New York, and Defendant Dopico. The cases were consolidated in the opinion, which considered the defendants' motions to dismiss. The Southern District noted that Zappin had initiated other lawsuits in the district regarding his divorce and collateral estoppel disbarment proceedings and had made similar allegations that the findings in those proceedings were fabricated and denied him due process. *Zappin V,* at *1. In addition, the Southern District related that Zappin was now the subject of a reciprocal disciplinary proceeding in West Virginia, which was instituted when West Virginia's Office of Disciplinary Counsel became aware of the New York disbarment. Zappin complained that Doyle and Dopico had been communicating with West Virginia to ensure that Zappin would be disbarred in that State as well, and that these actions were taken for the purpose of retaliating against him. Zappin asserted claims of abuse of process and conspiracy to abuse process against Dopico for his alleged role in the West Virginia disciplinary proceeding. *Id.*, at *3.

The Southern District dismissed Zappin's claims for abuse of process and conspiracy to abuse process, holding that Zappin had brought them under 42 U.S.C. § 1983, and "[s]ection 1983 liability ... may not be predicated on a claim of malicious abuse of ... civil process." *Id.,* at *10 (quoting *Green v. Mattingly,* 585 F.3d 97, 104 (2d Cir. 2009)). Consequently, Zappin failed to state a cognizable claim. The Southern District added that, to the extent Zappin attempted to allege a First Amendment retaliation claim, he failed to successfully do so, because he provided only general conclusory allegations that were insufficient to raise his claim above the speculative level. *Id.* Zappin filed a Notice of Appeal with the Second Circuit challenging the District Court's judgment of dismissal. However, on March 18, 2021, the Second Circuit denied a motion by Zappin for *in forma pauperis* status, or for an extension of time to pay the filing fee, and dismissed

the appeal on the ground that it lacked "an arguable basis either in law or in fact." *Zappin v. Dopico,* No. 20-3625 (2d Cir. Mar. 18, 2021).

### f.  *Zappin v. Cooper,* 20 Civ. 2669 (ER), 2022 WL 985634 (S.D.N.Y. Mar. 31, 2022) (also referred to as "*Zappin VI*")

Zappin filed yet another lawsuit against Justice Cooper and Doyle; this time, alleging abuse of process and retaliation. *Zappin VI,* at \*1. According to the District Court, this suit was one of sixteen filed by Zappin in state and federal courts arising out of his divorce, disbarment, and the alleged spitting incident that led to criminal charges against Zappin. Pending before the Southern District was a motion to amend the complaint filed by Zappin, and a motion for a prefiling injunction filed by Justice Cooper. The Southern District reviewed the previous cases filed by Zappin, their outcomes, and the subsequent appeals before considering the standard for granting a prefiling injunction. Ultimately, the Southern District decided that granting such an injunction was merited given Zappin's history of repeatedly filing meritless and vexatious actions, his lack of good faith in pursuing his claims, and lack of representation by counsel; the needless expense caused to the defendants and burden on the courts; and the lack of effective alternative sanctions. *Id.,* at \*7-\*11. Furthermore, the Southern District denied Zappin's motion to amend his complaint, finding the proposed amendment to be futile. *Id.,* at \*12.

### g. Litigation in this District

In addition to the cases filed in New York,  Zappin has filed five cases in this judicial district relating to his divorce, custody, and disbarment proceedings, three of which have been dismissed by this Court. To begin, in two separate suits filed on March 23, 2020, Zappin sued several lawyers, all of whom represented him in the New York disbarment proceedings, for malpractice. *Zappin v. Hamilton, et. al.,* Case No. 3:20-cv-

00209 (S.D.W. Va. Mar. 23, 2020); *and Zappin v. Supple,* Case No. 3:20-cv-00210 (S.D.W. Va. Mar. 23, 2020). These case were dismissed on February 5, 2021 and August 24, 2020, respectively. Next, Zappin sued all of the WVSC justices and clerk of court, Cipoletti, and two members of the West Virginia Lawyer Disciplinary Board, alleging that he was improperly disbarred in West Virginia. *Zappin v. Cipoletti*, No. 2:21-CV-00119, 2021 WL 4392043, at *1 (S.D.W. Va. Sept. 24, 2021), *reconsideration denied,* 2021 WL 5989067 (S.D.W. Va. Dec. 17, 2021), *aff'd,* No. 22-1065, 2022 WL 2914729 (4th Cir. July 25, 2022). Defendants herein, Ancil Ramey and Steptoe & Johnson, represented the defendants in that action. As indicated, the Court dismissed the case, and Zappin unsuccessfully appealed the dismissal. *Id.*

While his appeal was pending, Zappin filed two more civil actions in this Court arising from his West Virginia reciprocal disciplinary proceeding and disbarment. On February 16, 2022, Zappin filed the instant matter, and on July 19, 2022, Zappin sued the attorneys who represented him in the West Virginia reciprocal disciplinary matter. *Zappin v. Carey Douglas Kessler & Ruby PLLC et al.*, No. 2:22-cv-00292 (S.D.W. Va. July 19, 2022). These cases remain pending.

### B. Instant Action

#### 1. Amended Complaint

As stated, Zappin initiated this civil action on February 16, 2022. (ECF No. 1). On June 14, 2022, he filed an amended complaint, including a jury demand. (ECF No. 14). In his amended complaint, Zappin provides a lengthy recitation of his version of the events surrounding his divorce and child custody dispute, as well as irrelevant and disparaging information about the presiding judges in those proceedings. (*Id.* at 3–13). Many of the factual allegations set forth by Zappin are the same as, or similar to, those included in his

other civil actions.

His first allegations directly involving any of the named defendants pertain to the New York collateral estoppel disciplinary action. (ECF No. 14 at 13). Zappin claims that Doyle and Dopico designed the proceeding to "deliberately skirt" the rules for attorney disciplinary matters in New York. He claims that he was never provided with a formal charging document and was denied a hearing on the merits. Zappin states that Doyle conceded that the disciplinary charges were based on factual findings that were "fabricated" by Justice Cooper and that Zappin was denied a meaningful opportunity to refute them. He accuses Doyle of retaliating against him in New York and engaging in egregious attorney and prosecutorial misconduct. (*Id.* at 14). Zappin alleges that Doyle continued to harass, stalk, and bully Zappin after the conclusion of the New York disciplinary proceeding, accusing Zappin of improperly practicing law, sending him "rude and inappropriate emails," attacking Zappin's appearance, and physically chest-bumping him. (*Id.* at 16-17). Around this time, Zappin apparently moved to West Virginia. According to Zappin, Doyle's continued harassment prompted Zappin to seek a temporary personal safety order against Doyle in Cabell County, West Virginia. (*Id.* at 17). Cipoletti suggested that Doyle hire Ramey and Steptoe to represent him in that action. (*Id.* at 18). Zappin accuses Ramey of being unprofessional from the outset, threatening Zappin with disciplinary and criminal charges in West Virginia if he did not withdraw the request for a personal safety order. Zappin claims that, based on these threats, he voluntarily dismissed his case for the safety order. (*Id.*).

Zappin next claims that Cipoletti filed a reciprocal disciplinary action in the WVSC based upon Zappin's New York disbarment. (*Id.*). He asserts that Cipoletti failed to conduct any investigation, although required to do so; she simply filed the action on the

same day that Zappin notified the Office of Disciplinary Counsel about his disbarment in New York. (ECF No. 14 at 19). Zappin alleges that Cipoletti later learned that the New York disbarment was unsupported, but she proceeded to prosecute him anyway, using lies and deceit to impose reciprocal discipline on him. (*Id.* at 20-21). Zappin claims that Ramey, Doyle, and Dopico improperly influenced Cipoletti to pursue the reciprocal discipline and then later unlawfully concealed their wrongful communications when Zappin sought them through a FOIA request. (*Id.* at 21-22). He states that Ramey represented Cipoletti on the FOIA request and asserted a "bogus work-product defense." (*Id.* at 22).

Zappin includes the following eight counts in his amended complaint:

1. <u>Count I</u>—Zappin asserts a claim against Doyle and Dopico under 42 U.S.C. § 1983 for "abuse of process." (*Id.* at 23). He alleges that Doyle and Dopico infringed on his Fifth and Fourteenth Amendment rights by participating in and employing "regularly issued attorney disciplinary process in West Virginia against Plaintiff." (*Id*). Zappin contends that Doyle and Dopico provided Cipoletti with "patently false information that influenced Cipoletti to pursue reciprocal discipline;" had continuous and repeated contact with Cipoletti; and exerted undue influence on her to continue the unwarranted disciplinary proceeding for the purpose of retaliating against Zappin, to conceal their misconduct in the New York disbarment proceedings, and to cause permanent and irreparable harm to him. (*Id.* at 24-25).

2. <u>Count II</u>—Zappin asserts a claim against Doyle, Dopico, and Cipoletti under  § 1983 for "conspiracy to abuse of process." (ECF No. 14 at 25). He claims the defendants entered into an agreement to pursue a baseless and unwarranted disciplinary action against Zappin in West Virginia and conspired to conceal their communications despite

his requests for those communications. He reiterates that Doyle and Dopico provided Cipoletti with patently false information and that Cipoletti "engaged in acts outside the scope of her duties as 'Chief Disciplinary Counsel' in furtherance of the conspiracy," including "harassing" him on Twitter and asking the West Virginia Reporter to write an article about his reciprocal disciplinary matter. (ECF No. 14 at 25–27). Zappin claims that Doyle, Dopico, and Cipoletti were in frequent contact and repeats that the three refused to provide him with the communications "in furtherance of the conspiracy" even though the information was discoverable. (*Id.* at 27). Zappin posits that Doyle and Dopico influenced Cipoletti in order to retaliate against Zappin for exercising his First Amendment rights, for contesting the disciplinary proceedings against him, and for filing actions challenging the disciplinary proceedings, as well as to conceal their misconduct in Zappin's divorce and disciplinary proceedings and to retaliate against Zappin for seeking a restraining order against Doyle in 2018. (*Id.* at 28).

3. <u>Count III</u>—Zappin asserts a state law claim of abuse of process against Ramey, Steptoe, Doyle, and Dopico. (*Id.*). He bases this claim on his allegations that the defendants unlawfully "participated in and employed regularly issued attorney disciplinary process in West Virginia" against Zappin despite the "substantial and overwhelming evidence" of his "innocence with respect to the underlying New York findings," improperly influencing Cipoletti, and refusing to disclose their communications to Zappin. (*Id.* at 29–31). He claims that the defendants exerted undue influence over Cipoletti and provided her with patently false information with the specific intent of retaliating against Zappin, concealing their misconduct in other proceedings, and causing him harm.

4. <u>Count IV</u>—Zappin asserts a state law claim of conspiracy to abuse of process

19

against all of the defendants, which essentially relies upon the same allegations as the first three counts. (ECF No. 14 at 31–34).

5. Count V—Zappin asserts a claim against Cipoletti, Ramey, and Steptoe under  § 1983 for abuse of process. (*Id.* at 34). He alleges that Ramey and Steptoe were agents of Cipoletti with respect to a FOIA request made by Zappin to the Office of Disciplinary Counsel on November 29, 2021, and claims they issued an improper denial letter on December 3, 2021. Zappin contends that the denial letter constituted process that was issued for the collateral purpose of concealing communications exculpatory to Zappin, concealing misconduct on the defendants' part, and concealing communications intended to improperly influence Cipoletti. (*Id.* at 34–36). He states that these actions were retaliatory in nature and intended to cause him harm.

6. Count VI—Zappin asserts a claim against all defendants under § 1983 for conspiracy to abuse process related to the FOIA request. (*Id.* at 36). He adds in this count that Doyle and Dopico were also involved in generating the improper response to the FOIA request and did so with the intent to conceal their misdeeds and harm Zappin.

7. Count VII—Zappin asserts a claim against Cipoletti, Ramey, and Steptoe under state law for abuse of process related to the FOIA request essentially relying on the same allegations previously stated. (*Id.* at 38-40).

8. Count VIII—Zappin asserts a claim against all of the defendants under state law for conspiracy to abuse process. Once again, he bases this claim on the same allegations as the three other FOIA claims. (*Id.* at 40–42).

Zappin seeks monetary damages in this lawsuit. (*Id.* at 42).

## 2. Defendants' Motions

On June 27, 2022, Defendants filed a motion to dismiss Zappin's amended

complaint with prejudice and sought a prefiling injunction. (ECF No. 15). In their accompanying memorandum of law, Defendants contend that the Court lacks subject matter jurisdiction or is barred by 28 U.S.C. § 1257, the *Rooker-Feldman* doctrine, and the principles of *res judicata*. (ECF No. 16 at 7). They argue that Zappin's amended complaint is an attempt to relitigate his New York domestic relations proceedings and state disciplinary actions, and thus, the complaint is not reviewable by this Court. (*Id*. at 7–9). Further, the defendants assert that the issues Zappin raises in his amended complaint have already been litigated in various state and federal court proceedings and are barred by res judicata. (*Id*. at 9–13).

Defendants additionally argue that Zappin's claims are barred by the litigation privilege under West Virginia law; Zappin does not state a cause of action for abuse of civil process under § 1983 or state law; and such a claim would be prohibited by the relevant statutes of limitations. (*Id*. at 14–16). As to Zappin's claims concerning the issuance of a response letter to his FOIA request, Defendants assert that the letter cannot give rise to liability under § 1983 because: (1) federal FOIA laws do not apply to state actors; (2) Zappin had an available remedy under state law for his West Virginia FOIA request and did not pursue it, barring relief under § 1983; (3) Zappin has no constitutional right to relief under FOIA; (4) his claim is barred by *Rooker-Feldman*; (5) the state disciplinary agency is prosecutorial and Defendants Cipoletti and Ramey's communications are protected by attorney-client privilege and the work product doctrine and explicit language in the West Virginia FOIA statute; and (6) a FOIA response letter is not regularly issued process subject to a claim of abuse. (*Id*. at 17–18).

Defendants also seek a prefiling injunction to prevent Zappin from filing suits against any current or former state officers or their counsel based on litigation involving

Zappin's divorce or state disciplinary proceedings in West Virginia or New York without first obtaining leave of the Court. (*Id.* at 19–20). They note that the Southern District of New York has already entered such an injunction based on Zappin's repeated filings, and Zappin served process on the defendants in this suit after he was already enjoined in New York. (ECF No. 16 at 19).

### 3. Zappin's Response

After some delay, Zappin filed his response opposing Defendants' motion on July 22, 2022. (ECF No. 27). In his first few paragraphs, Zappin proclaims that his case "highlights the corruption that permeates the legal profession," and asserts that "the undisputed facts of this case show ... that Cipoletti is in actuality a paragon of dishonesty, overt misconduct and venality" who "admittedly" was influenced by "two corrupt Cuomo-cronies from New York." (*Id.* at 2). He further alleges that Doyle "was so unethical" because he authored an article insulting former President Donald Trump and subsequently pursued disciplinary proceedings against Trump's attorney, Rudy Giuliani. (ECF No. 27 at 2.). He characterizes the facts of this case as "terrifying," and restates his position that Defendants "deliberately abused and perverted the reciprocal disciplinary proceeding" filed in West Virginia. (*Id.*). Zappin asserts that Defendants did not deny his version of events and instead ask the Court to dismiss this action without addressing the merits of his claims. (*Id.* at 4). Zappin insists that his claims are not barred by *Rooker-Feldman* because they are independent claims against the defendants for "their repeated and unlawful tortious actions [...] during the reciprocal disciplinary proceeding itself," rather than the ultimate outcome of the disciplinary proceeding. (*Id.* at 5).

According to Zappin, the injuries for which he seeks damages are "severe anxiety and emotional distress (which include physical manifestations of such distress) and

reputational damage" because of Defendants' pursuit of reciprocal discipline against him in West Virginia and "engaging in deliberate actions to drag out" the proceedings, which were required to take a maximum of 90 days and instead lasted over two years. (ECF No. 27 at 7). He describes several other supposed injuries caused by the defendants. Zappin claims that Cipoletti deliberately caused him anxiety and emotional distress by: (1) contacting him on social media and taunting him in violation of the Rules of Professional Conduct; (2) taunting him and "making unprompted and unfounded attacks on his mental health" in an email he attaches as an exhibit; (3) threatening him with additional disciplinary charges at a hearing; and (4) threatening him with additional disciplinary charges through "her proxy Ramey." (*Id.*). Zappin further claims that Cipoletti contacted the West Virginia Record to instigate "multiple smear pieces" against him during his disciplinary proceedings, preventing him from finding employment. (*Id.*). He contends that he suffers anxiety, emotional distress, and reputational damage because Cipoletti asserted "uncharged, unlitigated and false allegations of misconduct" in the course of the disciplinary proceedings. (*Id.* at 8). Zappin asserts that he suffered "unnecessary financial loss by incurring counsel fees" to defend himself in the disciplinary proceedings despite Cipoletti's supposed acknowledgment that Zappin had done no wrong. (*Id.*). Thus, Zappin reasons that his claims are independent of the disciplinary findings. (*Id.* at 8–10).

Zappin maintains that his claim is not barred by the statute of limitations because he filed his abuse of process claim within a year of the date that the reciprocal disciplinary proceeding terminated. (ECF No. 27 at 10). He asserts that Defendants' abusive practices continued throughout the pendency of the disciplinary process, and his position is supported by the relevant caselaw. (*Id.* at 11–14). Zappin next argues that the litigation privilege is not applicable. (*Id.* at 14). He emphasizes that Ramey, Steptoe, Doyle, and

Dopico were not opposing counsel in the reciprocal disciplinary action and Ramey, Doyle, and Dopico were in fact on Cipoletti's list of witnesses, which, according to Zappin, "absolutely precludes the litigation privilege precluding" his claims. (ECF No. 27 at 14–15). He elaborates that, although Doyle and Dopico "may have been opposing counsel…in the New York collateral estoppel disciplinary proceeding," they were not opposing counsel in his reciprocal disciplinary proceedings and no longer represent the disciplinary board. (*Id.* at 15). As to Ramey and Steptoe, Zappin contends that their representation of Doyle against Zappin's attempts to secure a protection order was not related to the West Virginia reciprocal disciplinary proceeding and "there is simply no set of facts in this case whereby Defendants Ramey and Steptoe could avail themselves to the litigation privilege." (*Id.* at 15–16).

Zappin also argues that the litigation privilege fails because "the vast majority of Defendants' conduct took place outside of the litigation itself" because Ramey, Steptoe, Doyle, and Dopico pressured Cipoletti to maintain the disciplinary action despite having no formal role in the proceedings. (*Id.* at 16). He states that Defendants' communications are the crux of his abuse of process claims. (*Id.* at 16–17). In addition, Zappin insists that the litigation privilege does not apply because Cipoletti made supposedly false allegations of misconduct not found in the New York proceedings. (*Id.* at 17–18). He maintains that, under the procedural rules for attorney discipline, the court may only consider the "four (4) corners of the foreign jurisdiction's decision and the foreign jurisdiction's procedures." (ECF No. 27 at 18). Further, Zappin contends that Cipoletti's actions were taken "outside of the reciprocal disciplinary litigation" and were "in furtherance of [the defendants'] conspiracy to abuse process," based on her supposed taunting of him on social media, solicitation of "smear pieces" designed to damage his reputation, contacting

him via e-mail and taking "jabs at his mental health." (*Id.* at 18–19).

Finally, Zappin argues that his claims are not barred by res judicata. (ECF No. 27 at 19). He advances his position that the doctrine does not apply because the West Virginia reciprocal discipline action was "a special quasi-criminal proceeding," and, within that litigation, he could not have raised counterclaims against Cipoletti, third-party claims against the other defendants, or an abuse of process claim. (*Id.* at 19–20). It is Zappin's contention that his previous claims against Defendants were in their official, rather than individual, capacities, and Defendants are not "in privity" of their official capacity selves such that individual capacity claims are barred. (*Id.* at 20). Zappin asserts that he never sued Defendants Ramey and Steptoe prior to this action, never sued Doyle about these precise issues, and is not barred from suing Dopico because his claims are protected by the "continuous tort doctrine." (*Id.* at 21–22). Zappin further contends that Ramey, Dopico, and Doyle continued to engage in acts constituting conspiracy to abuse process after Zappin filed suit against them in New York on November 14, 2019, so the claims are not barred for that additional reason. (*Id.* at 22–23).

Zappin insists that his claims are cognizable under § 1983 because the Fourth Circuit has not specifically held that plaintiffs cannot obtain relief under the statute for abuse of civil process. (ECF No. 27 at 23). While he acknowledges that the Southern District of New York previously held that abuse of civil process is not cognizable under § 1983, he simply asserts that the Court's decision was wrong, citing to a case in which the Supreme Court remarked that attorney disciplinary proceedings are "quasi-criminal." (*Id.*). Finally, Zappin claims that a prefiling injunction is not warranted in this matter because the Court must first determine the merits, he "has filed only one other action related to the West Virginia reciprocal disciplinary action in this Court," and the prefiling

injunction instituted against him by the Southern District of New York is "unconstitutional." (ECF No. 27 at 26).

### 4. Defendants' Reply

Defendants assert that Zappin's response to their motion to dismiss "is best characterized by irrational, inconsistent, irrelevant, and delusional invective." (ECF No. 28 at 3). They reassert that the Court lacks subject matter jurisdiction in this action under 28 U.S.C. § 1257, *Rooker-Feldman*, and res judicata. (*Id*. at 3-11). They also maintain that the claims are barred by the litigation privilege and statute of limitations, and Zappin fails to state a claim upon which relief can be granted. (*Id*. at 11-19). Defendants implore the Court to issue a prefiling injunction to thwart Zappin from filing further vexatious litigation on the same topics. (*Id*. at 19-20).

## II. **Standard of Review**

### A. *Motion to Dismiss*

A motion under Rule 12(b)(6) tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). The Court also considers any exhibits attached to the complaint and documents explicitly incorporated by reference. Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (stating that the Court's review is generally limited to a review of the allegations of the complaint itself, but the Court also considers documents that are explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits).

In resolving a motion to dismiss, the Court generally will assume that the well-

pleaded facts alleged in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "Furthermore, when as here, a Rule 12(b)(6) motion is testing the sufficiency of a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)).

While the Court "take[s] the facts in the light most favorable to the plaintiff, … [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

### B.  Motion for Prefiling Injunction

The Fourth Circuit has cautioned that prefiling injunctions are a remedy that should be used sparingly consistent with constitutional guarantees of due process of law and access to the courts. *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004). However, "exigent circumstances, such as a litigant's continuous abuse of the judicial process by filing meritless and repetitive actions" can justify the issuance of a prefiling injunction. *Id.* at 818. "In determining whether a prefiling injunction is substantively warranted, a court must weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Id.*

### III.  <u>Discussion</u>

Defendants move for dismissal of Zappin's claims and a prefiling injunction to

prevent Zappin from filing further cases on the same topics without leave of Court. Each motion is considered separately.

### A.  Motion to Dismiss

Zappin seeks relief pursuant to § 1983 and state law. Section 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any State "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172 (1961). In order to state a viable claim under § 1983, a plaintiff must show that: (1) a person deprived him or her of a federally protected civil right, privilege, or immunity and (2) that the person did so under color of State law. *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999).

Defendants argue that Zappin's amended complaint should be dismissed for multiple reasons. These arguments are discussed below, in turn, with the exception of the statute of limitations defense. Given the other grounds for dismissal, and the parties' dispute as to which alleged act could and did constitute the final "abuse of process," such an analysis would be unproductive at this stage of the litigation.

### 1.  *Rooker-Feldman* Doctrine

Defendants contend that the *Rooker-Feldman* doctrine divests this Court of subject matter jurisdiction over Zappin's complaint because he seeks to relitigate state court domestic relations and attorney disciplinary proceedings. (ECF No. 12 at 7). In response, Zappin insists that he does not challenge the outcome of the prior proceedings and does not ask this Court to review the WVSC's disciplinary decision or judgment.

Rather, Zappin challenges Defendants' "repeated and unlawful tortious actions" *during* and *attendant to* the reciprocal disciplinary proceeding and the injuries that he suffered as a result of their actions. (ECF No. 27 at 5). Thus, he posits that his claim is not barred by § 1257 or the *Rooker-Feldman* doctrine.

Defendants are correct that the *Rooker-Feldman* doctrine "strips federal courts of subject matter jurisdiction when 'state court losers complain[] of injuries caused by state-court judgments' in district courts." *Jonathan R. v. Justice,* 41 F.4th 316, 339 (4th Cir. 2022) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp. ,* 544 U.S. 280, 284 (2005)). "Among federal courts, only the Supreme Court possesses the authority to exercise appellate jurisdiction over state-court judgments." *Hulsey v. Cisa,* 947 F.3d 246 (4th Cir. 2020) (noting that "Congress vested such authority in the Supreme Court in 28 U.S.C. § 1257(a). However, the *Rooker-Feldman* doctrine is narrow in scope, going no "further than necessary to effectuate Congress' allocation of subject matter jurisdiction between the district courts and the Supreme Court." *Id.* at 250 (quoting *Thana v. Bd. Of License Comm'rs,* 827 F.3d 314,319 (4th Cir. 2016)).

Defendants argue that the *Rooker-Feldman* doctrine applies to Zappin's complaint because he relies on "issues actually presented to or decided by a state court" or on "constitutional claims that are inextricably intertwined with questions ruled upon by a state court." (ECF No. 28 at 5). But as the Fourth Circuit points out in *Jonathan R.,* since the Supreme Court's decision in *Exxon Mobil,* those circumstances are no longer determinative of the jurisdictional question under the *Rooker-Feldman* analysis. In *Davani v. Virginia Dept. of Tranp.,* the Fourth Circuit explained that *Exxon Mobil* significantly altered the circuit's interpretation of the *Rooker-Feldman* doctrine by instructing that the doctrine applied only "when the loser in state court files suit in federal

district court seeking redress for an injury allegedly caused by the state court's decision itself." 434 F.3d 712, 713 (4th Cir. 2006). The *Rooker-Feldman* doctrine does not, however, "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," as long as the plaintiff "presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case in which he was a party." *Id.* at 718 (citation omitted). The "inextricably intertwined" language does not create a separate legal test for determining when claims are jurisdictionally barred: "*Rooker-Feldman* bars a federal claim, whether or not raised in state court, that asserts injury based on a state judgment and seeks review and reversal of that judgment; such a claim is 'inextricably intertwined' with the state judgment." *Id.* at 719 (citation omitted). In contrast, when the plaintiff's complaint states an independent claim that does not invite the court to review and reject the state court judgment, the *Rooker-Feldman* doctrine does not apply. Jurisdiction exists, and "state law determines whether the defendant prevails under principles of preclusion." *Jonathan R.,* 41 F.4th at 340. In other words, in the presence of an independent claim that touches on or includes issues determined by the state court, the query shifts from whether there is a jurisdictional bar to whether there is claim or issue preclusion.

As the Southern District of New York aptly observed in *Zappin I*, Zappin has a habit of blurring the lines between the injuries associated with his divorce and disbarments and the injures he claims from his various defendants in civil litigation. It is no different in this case. Nonetheless, he states in opposition to the motions to dismiss that he suffered a variety of injuries as a result of the defendants' "tortious abuse of process in unethically targeting Plaintiff and maintaining a knowingly bad faith reciprocal disciplinary action

based on falsified evidence and findings from New York for ulterior purposes (namely, retaliating against Plaintiff and concealing the misconduct of Justice Cooper and Defendants Dopico and Doyle.)" (ECF No. 27). He explicitly denies that he is requesting review of the disbarment order, and he does not ask to have his law license reinstated. Nor does he ask for money damages related to the loss of his West Virginia practice. The undersigned must accept Zappin's representation at this stage of the litigation that he is not seeking to challenge the West Virginia disbarment order and is not seeking redress for injuries related to the loss of his license to practice law. Accordingly, the undersigned **FINDS** that the *Rooker-Feldman* doctrine does not apply to Zappin's amended complaint, and this Court has subject matter jurisdiction over the case.

### 2. Claim and Issue Preclusion

Defendants argue that res judicata bars the amended complaint in its entirety. It is well established that affirmative defenses are only considered at this stage of the litigation when facts sufficient to rule on the defenses are apparent on the face of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Witthohn v. Federal Insur. Co.*, 164 Fed. Appx. 395, 396 (4th Cir. 2006) (citing *Alternative Energy Inc., v. St. Paul Fire and Marine Insur. Co.,* 267 F.3d 30, 33 (1st Cir 2001)). However, exceptions to this rule exist; including, that the court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint, as long as the authenticity of the documents is not disputed. *Id.*

In this case, the amended complaint provides an extensive discussion of Zappin's

divorce, child custody, and disbarments proceedings. (ECF No. 14). Indeed, his claims are based almost entirely upon his perceptions and experiences related to those matters. He refers to judicial findings and opinions, some of which he incorporates as exhibits, including the Sanctions Order; he cites to numerous articles from the press and YouTube publications; he relates portions of trial testimony and describes events that occurred in court hearings. Accordingly, the undersigned **FINDS** that the history of Zappin's divorce, custody, and disciplinary proceedings and all of the related litigation are integral to the amended complaint, and the Court may therefore take judicial notice of the prior court findings and opinions arising from that litigation in order to resolve the motions to dismiss, including the affirmative defenses of claim and issue preclusion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) ("A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice.").

As set forth in more detail below, the undesigned has considered the arguments of the parties, the relevant law and documents, and **FINDS** that a combination of claim and issue preclusion bars Counts I, II, V, and VI in their entirety, and these Counts should be dismissed, with prejudice, on that ground. The undersigned further **FINDS** that issue preclusion bars Zappin from relitigating a significant portion of the matters alleged in his amended complaint and which form the basis of Counts III, IV, VII, and VIII.

### a. Requirements

As explained by the Supreme Court:

The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as res judicata. Under the doctrine of claim preclusion, a final judgment forecloses successive

litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim. By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citations and markings omitted). Courts and litigants have not used consistent terminology over the years when addressing claim and issue preclusion. As indicated in *Taylor,* the terms have been collectively referred to as res judicata. However, some  have used the term res judicata to refer primarily to claim preclusion, while collateral estoppel has been used largely to refer to issue preclusion. Given that different tests are applied in determining whether claim or issue preclusion applies, the undersigned hereinafter uses the term res judicata when referring to claim preclusion and collateral estoppel when referring to issue preclusion.

In considering the preclusive effect of a prior state court judgment, the federal court applies the "preclusion law of the State in which judgment was rendered." *Bennett v. Garner*, 913 F.3d 436, 440 (4th Cir. 2019) (quoting *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000)). When the prior judgment was issued by a federal court sitting in diversity, the preclusion law of the forum state applies, while federal law applies to judgments issued by federal courts in federal-question cases. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–09 (2001). Here, Zappin has litigated his divorce, child custody, disbarment, and related matters in federal and state courts of both New York and West Virginia, raising some state law claims and some federal-question claims. Accordingly, the relevant preclusion law of New York and West Virginia, as well as the federal common law is examined. As indicated below, all three jurisdictions have

34

similar requirements, which simplifies the analysis in this case.

"In New York, res judicata, or claim preclusion, bars successive litigation based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action [or proceeding], or in privity with a party who was." *Matter of People v. Applied Card Sys., Inc.,* 11 N.Y.3d 105, 122 (2008). On the other hand, "[t]o invoke the issue preclusion doctrine of collateral estoppel, the following four conditions must be satisfied: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Lax v. City Univ. of New York*, No. 508042/2021, 2022 WL 3724479, at *7 (N.Y. Sup. Ct. Aug. 25, 2022) (internal markings and citations omitted).

Similarly, under West Virginia law: "[b]efore the prosecution of a lawsuit may be barred on the basis of *res judicata,* three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action." Syl. Pt. 1, *Antolini v. W. Virginia Div. of Nat. Res.*, 647 S.E.2d 535, 536 (W. Va. 2007) (quoting Syl Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.,* 498 S.E.2d 41 (W. Va. 1997)). In contrast, collateral estoppel will bar a claim if four conditions are met: (1) the issue previously decided is identical to the one presented in

the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. Syl. Pt. 1, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). "A claim is barred by res judicata when the prior action involves identical claims and the same parties or their privies. Collateral estoppel, however, does not always require that the parties be the same. Instead, collateral estoppel requires identical issues raised in successive proceedings and requires a determination of the issues by a valid judgment to which such determination was essential to the judgment." *Medley v. Ames*, No. 21-0113, 2022 WL 856611, at *4 (W. Va. Mar. 23, 2022) (citations omitted).

For the doctrine of res judicata to apply in the case of a federal-question judgment, there must be (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits. *Pueschel v. United States*, 369 F.3d 345, 354–55 (4th Cir. 2004). Under federal preclusion law, "[c]ollateral estoppel bars relitigation of an issue determined in an earlier proceeding when: (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue ... ha[s] been actually determined in the prior proceeding; (3) determination of the issue [was] a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment [is] final and valid; and (5) the party against whom estoppel is asserted ... had a full and fair opportunity to litigate the issue in the previous forum." *Sedlack v. Braswell Svc's Group, Inc.,* 134 F.3d 219, 224 (4th Cir.1998).

### b. *Count I—Abuse of Process Under §1983 (Doyle and Dopico)*

Zappin accuses Doyle and Dopico of abuse of process relating to the West Virginia

disciplinary proceedings. In *Zappin V,* Zappin asserted this same claim against Dopico based upon the actions of his subordinate, Doyle, whom Zappin accused of being "in communication with the WV Board, exchanging information and working together to ensure [Zappin's] disbarment in West Virginia," allegedly for the purpose of retaliating against Zappin for "exercising his First Amendment rights." *Zappin V,* 2020 WL 5646496, at *2. The Southern District of New York dismissed the claim against Dopico on the ground that Zappin failed to state a claim, finding that "section 1983 liability … may not be predicated on a claim of malicious abuse of civil process." *Id.,* at *10 (quoting *Green v. Mattingly,* 585 F.3d 97, 104 (2d. Cir. 2009)). In view of this judgment, the undersigned **FINDS** that Count I of the amended complaint is barred by the doctrine of res judicata as explained below.

The preclusive effect of *Zappin V* in regard to its ruling on the availability of a § 1983 claim is reviewed under federal common law. Reviewing the requirements of *Pueschel,* the undersigned **FINDS** the following: Zappin filed a Notice of Appeal in *Zappin V*, but it was dismissed by the Second Circuit, and no further action was taken by Zappin. Therefore, the judgment is final. The Southern District in *Zappin V* resolved the claim on its merits, determining that no cause of action for abuse of civil process is cognizable under § 1983. The issue in *Zappin V* and in Count I of the instant action are identical, and Dopico was named as a defendant in both cases. Although Doyle was not named as a defendant in *Zappin V,* the allegations against Dopico were based upon Doyle's work with and for Dopico in the course of their relationship as employees of the Attorney Grievance Committee for the First Judicial Department of the Supreme Court of the State of New York. The factual allegations upon which Zappin asserted abuse of process against Dopico arose from communications Doyle had with Cipoletti, allegedly on

behalf of Dopico, in which Doyle shared information and strategy with his West Virginia counterpart to ensure Zappin's disbarment in West Virginia. Indeed, in *Zappin V,* the Southern District found that Doyle and Dopico were in privity when ruling on another claim related to their work on Zappin's disciplinary proceedings. *Zappin V,* 2020 WL 5646496, at *8. As all of the requirements of *Pueschel* are satisfied, Count I should be dismissed under the doctrine of claim preclusion.

### c.   Count II—Conspiracy to Abuse of Process Under §1983 (Doyle, Dopico, and Cipoletti)

For the same reasons set forth above, the undersigned **FINDS** that res judicata bars Count II as to Doyle and Dopico. In *Zappin V,* Zappin included a count of conspiracy to abuse process against Dopico, asserting that Dopico personally and through his subordinates, conspired with West Virginia Disciplinary Counsel to unjustly seek reciprocal disciplinary action in West Virginia. *Zappin V,* 2020 WL 5646496, at *2, *10; *also Zappin v. Dopico,* Case No. 1:19-cv-10573-LGS (S.D.N.Y. Jan. 31, 2020) at ECF No. 24. The Southern District resolved the same claim against Dopico and his privy, on the merits, in a final judgment against Zappin.

As to Cipoletti, the undersigned **FINDS** that Count II is barred by the doctrine of defensive non-mutual collateral estoppel. In *Zappin I,* the Southern District explained to Zappin the concept of non-mutual collateral estoppel as follows:

> Collateral estoppel, also known as issue preclusion, "prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc.* v. *Simon*, 310 F.3d 280, 288 (2d Cir. 2002); *see generally Proctor* v. *LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013). ... Non-mutual collateral estoppel allows a defendant who was not party to the previous litigation to bar issues raised in subsequent litigation. *See Ranasinghe* v. *Kennell*, No. 16 Civ. 2170 (JMF), 2017 WL 384357, at *3 (S.D.N.Y. Jan. 25, 2017); *see also Blonder-Tongue Labs., Inc.* v. *Univ. of Illinois Found.*, 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) ("Permitting repeated litigation of

> the same issues as long as the supply of unrelated defendants holds out
> reflects either the aura of the gaming table or a lack of discipline and of
> disinterestedness on the part of the lower courts." (internal quotation marks
> omitted)). Collateral estoppel can be "offensive" or "defensive," and as
> relevant here, defensive use "occurs when a defendant seeks to prevent a
> plaintiff from asserting a claim the plaintiff has previously litigated and lost
> against another defendant." *Parklane Hosiery Co., Inc.* v. *Shore*, 439 U.S.
> 322, 326 n.4, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Thus, "once an issue is
> actually and necessarily determined by a court of competent jurisdiction,
> that determination is conclusive in subsequent suits based on a different
> cause of action involving a party to the prior litigation." *Montana* v. *United
> States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979); *see also Ryan*
> v. *New York Tel. Co.*, 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d
> 487 (1984) (recognizing that preclusion can apply "whether or not the
> tribunals or causes of action are the same").

*Zappin v. Cooper*, No. 16 CIV. 5985 (KPF), 2018 WL 708369, at *15 (S.D.N.Y. Feb. 2, 2018), *aff'd,* 768 Fed. Appx. 51 (2d Cir. 2019). Non-mutual collateral estoppel may be applied under federal common law when all five of the requirements in *Sedlack* are satisfied.

As mentioned above, in *Zappin V,* the Southern District held as a matter of law that Zappin's cause of action for conspiracy to abuse civil process under 42 U.S.C. § 1983 was not cognizable, because "[S]ection 1983 liability ... may not be predicated on a claim of malicious abuse of ... civil process." *Id.*, at *10 (quoting *Green,* 585 F.3d at 104). That judgment is final, and there is no law to the contrary in this circuit. As such, the issue of law sought to be precluded against Zappin in this case is identical to the one previously decided by the Southern District. The determination of the Southern District was critical and necessary to its dismissal of the conspiracy claim asserted by Zappin, and he had a full and fair opportunity to litigate the issue, including the right to file an appeal. Accordingly, as all of the requirements set forth in *Sedlack* have been met, Zappin is collaterally estopped from asserting the claim in Count II against Cipolletti.

### d. Counts V and VI—Abuse of Process and Conspiracy to Abuse of Process Under §1983 (All Defendants)

For the same reasons supporting dismissal of Counts I and II, the undersigned **FINDS** that Counts V and VI should be dismissed pursuant to the doctrine of res judicata and non-mutual collateral estoppel.

### e. Count III, Count IV, Count VII, Count VIII

In these four Counts, Zappin alleges state-based claims of abuse of process and conspiracy to abuse process. In West Virginia, abuse of process "consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *Preiser v. MacQueen,* 352 S.E.2d 22, 28 (W. Va. 1985). "The elements of an abuse of process claim include "first, an ulterior purpose, and second, *a wilfull act in the use of the process* not proper in the regular conduct of the proceeding."" *Ballock v. Costlow,* 430 F.Supp.3d 146, 158 (N.D.W. Va. 2019) (quoting *Preiser,* 352 S.E.2d at 28, n. 8) (emphasis in original). "Notably, 'there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even with bad intentions.'" *Id.*

In Counts III and IV, Zappin claims that all of the defendants unlawfully participated in and employed regularly issued attorney disciplinary process in West Virginia against Zappin, which subjected him to a deliberately prolonged disciplinary proceeding "in which his rights were repeatedly violated throughout the proceeding" until he was disciplined by the WVSC. (ECF No. 14 at 29). He describes the following willful acts by the defendants:

1. Ramey, Steptoe, Doyle, and Dopico provided Cipoletti with "patently false information" to influence her to pursue discipline in West Virginia (*Id.*);

40

2. Cipoletti failed to fulfill her obligation to withdraw the reciprocal disciplinary proceeding or advise the WVSC that there was "substantial and overwhelming evidence of [Zappin's] innocence with respect to the underlying New York findings." (*Id.* at 29, 32);

3. Doyle and Dopico exerted improper influence over Cipoletti through their positions as state officials despite being aware of Zappin's innocence of attorney misconduct. (*Id.* at 29-30, 32);

4. Ramey, Steptoe, Doyle, and Dopico repeatedly contacted Cipoletti exerting undue influence to pursue unwarranted discipline against Zappin. (*Id.* 29-30, 33); and

5. Cipoletti, Steptoe, and Ramey wrongfully refused to provide documents requested by Zappin in a FOIA request. (*Id.* at 30-31, 33).

According to Zappin, the ulterior purpose behind these acts was to retaliate against him for contesting the disciplinary proceedings, to conceal misconduct by knowingly bringing a disciplinary action in New York based on findings rendered in Zappin's divorce that were "unsubstantiated, fabricated and manufactured," to conceal misconduct in pursuing discipline in New York that deliberately violated due process protections and attorney disciplinary rules, and to retaliate for Zappin obtaining a restraining order against Doyle in West Virginia. (*Id.* at 30-31, 33-34).

In Counts VII and VIII, Zappin alleges that Cipoletti, Ramey, and Steptoe committed the following willful act:

They unlawfully denied his FOIA request. (ECF No. 14 at 39).

Zappin claims the ulterior purpose behind the denial was to conceal communications between them and others that were exculpatory to Zappin; to conceal their misconduct with the other defendants; to conceal evidence of the defendants' improper influence over Cipoletti; to retaliate against Zappin for speaking out against

New York and West Virginia officials and the defendants; to retaliate for Zappin contesting the disciplinary procedures; to retaliate for Zappin filing lawsuits; to conceal their misconduct for bringing proceedings based on unsubstantiated, fabricated, and manufactured findings; to conceal that Zappin had been subject to discipline in New York that failed to comply with due process or the rules on disciplinary matters; and to retaliate for the restraining order Zappin obtained against Doyle. (ECF No. 14 at 39-42).

Under the doctrines of collateral estoppel and non-mutual collateral estoppel, the undersigned **FINDS** that Zappin is precluded from relitigating any factual or legal issues that have already been determined in the Sanctions Order, Divorce Judgment, and New York and West Virginia disbarment proceedings. Zappin has repeatedly challenged the validity of the factual findings made by Justice Cooper in Zappin's Sanctions Order, divorce and custody proceedings, and those findings have been uniformly affirmed. *See Zappin v. Comfort,* 146 A.D.3d 575, 49 N.Y.S.3d 6 (2017) *appeal dismissed by* 31 N.Y.3d 1077, 102 N.E.3d 1056 (2018); *Zappin v. Comfort,* 155 A.D.3d 497, 65 N.Y.S.3d 30-31 (2017) *appeal dismissed* 31 N.Y.3d 1077, 102 N.E.3d 1056 (2018); *Matter of Zappin*, 160 A.D.3d 1, 73 N.Y.S.3d 182 (N.Y. App. Div. 2018); *Zappin I aff'd. Zappin v. Cooper,* 768 Fed. Appx. 51 (2d Cir. 2019); *Zappin II aff'd Zappin v. Doyle,* 756 Fed. Appx. 110 (2d. Cir 2019); *Zappin III*. Consequently, Zappin is precluded from contending that the findings are "unsubstantiated, fabricated and manufactured." Similarly, his claims of "innocence" in the New York disciplinary action were rejected both during the hearing and on appeal. *Matter of Zappin,* 32 N.Y.3d 946, 108 N.E.3d 946 (2018). As such, Zappin is precluded from alleging in support of his claims herein that he was "innocent" of the charges underlying his New York disbarment, that there was overwhelming evidence of his innocence, and that the defendants knew that he was innocent. Moreover, all of Zappin's

42

procedural arguments related to purported infirmities in the New York disbarment procedure have been refuted by the courts, and those judgments are now final. *Id.; Lawyer Disciplinary Board v. Zappin,* No. 18-0250, 2021 WL 595869, at *4 (W. Va. Feb. 16, 2021). In each of these cases, the validity of the factual findings and the adequacy of procedural protections were critical to the decisions. The factual issues have been the same; Zappin's challenges to the facts have been largely the same; he has appeared in all of the cases; he has lost all of the challenges; the judgments are final; and the resolved issues of fact and law are being applied defensively to his claims in this action. Accordingly, he is precluded from relitigating those matters or applying the issues as otherwise determined.

### 3. Failure to State a Claim of Abuse of Process

#### a. *West Virginia Disciplinary Action—Counts I, II, III, IV,*

Defendants argue that Zappin does not assert a plausible claim of abuse of process. The undersigned agrees. As a preliminary matter, it is clear that Zappin loses track of his causes of action, which are all based on the tort of abuse of civil process. Zappin never explains how Doyle and Dopico can be held liable for abuse of process in West Virginia when there are no factual allegations demonstrating that they issued process in this State. His allegations that they "participated in and employed" process lack any factual basis and are merely conclusory. The same is true for Ramey and Steptoe, at least with respect to the disciplinary proceeding. Furthermore, Zappin contends that many of the tortious acts committed by Cipoletti did not actually involve process, but instead involved email communications, newspaper articles, and non-litigation related oral communications. At points in the amended complaint, it appears that Zappin is asserting a malicious prosecution claim, and at other points, it appears that he is making a claim for

defamation. He never actually includes any allegations sufficient to state a prima facie case of abuse of process.

The undersigned **FINDS** that, as to all of the defendants, the amended complaint should be dismissed for failure to state a claim, because once the extraneous, irrelevant, implausible, conclusory, and precluded allegations are removed from the pleading, all that remains is Zappin's conjecture that his disbarment by the State of West Virginia was due—not to the obvious reason that it was reciprocal to his New York disbarment—but rather was the result of some unlikely and fantastical retaliatory scheme conjured up by a group of lawyers who barely knew him.

Abuse of process "lies for the improper use of a regularly issued process, not for maliciously causing process to issue, or for an unlawful detention of the person. ... The authorities are practically unanimous in holding that to maintain the action [for abuse of process] there must be proof of a willful and intentional abuse or misuse of the process for the accomplishment of some wrongful object—an intentional and willful perversion of it to the unlawful injury of another." *Preiser,* 352 S.E.2d at 28 (*quoting Glidewell v. Murray–Lacy and Company,* 98 S.E. 665, 667, 668 (W. Va. 1919)). Put simply, the key distinction between abuse of process and malicious prosecution is that, in the former, the process is lawfully issued, but is misused or misapplied "to accomplish some purpose not intended or warranted by that process," *id.,* while in the latter, the commencement of the action itself is without justification. *Miller v. Ashton*, No. 5:19CV212, 2019 WL 5342529, at *7–8 (N.D.W. Va. Oct. 21, 2019) ("Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish. The purpose for which the process is used, once

44

it is issued, is the only thing of importance."). As the Court explained in *Miller:*

> Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. **The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, but the use of the process as the threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.**

*Miller,* 2019 WL 5342529, at *8 (quoting *Preiser*, 177 W. Va. at 278, n. 8) (emphasis added). Here, Zappin includes no allegations in his amended complaint to indicate that the defendants willfully abused the process after it was initiated; that they used the disciplinary action as a club to extort or coerce some collateral advantage from him; or that they did anything other than carry out the process to its authorized conclusion. Zappin cannot rely on his allegations that the defendants used fraudulent information to initiate the action, or that they continued to prosecute the West Virginia disciplinary matter even though they knew that he was innocent of misconduct in New York, or that they knew that he had not received due process in New York, or that there was substantial evidence of his innocence in New York, because he is precluded from relitigating those issues in this Court. *See Zappin I,* at *17. Zappin's amended complaint contains nothing more than speculative and conclusory allegations concerning the defendants' alleged motives in pursuing attorney discipline against him in West Virginia. The amended complaint includes no factual allegations demonstrating any advantage sought by the defendants through the disciplinary proceeding. His amended complaint plainly fails to contain enough facts to raise the defendants' alleged wrongdoing above the speculative level. Therefore, the undersigned **FINDS** that Zappin fails to state a plausible claim for

abuse of process against any of the defendants related to the West Virginia disciplinary proceeding.

### b. FOIA Request—Counts V, VI, VII, VIII

Zappin also alleges abuse of process related to a FOIA request he made to the West Virginia Office of Disciplinary Counsel in November 2021, nine months after his West Virginia disbarment. The only support he provides in the amended complaint for these claims is his legal conclusion that the denial of the request was based on "a bogus work-product defense." (ECF No. 14 at 22). Even assuming that the denial of a FOIA request constitutes "process," an unsupported legal opinion is not sufficient to state a *factual* basis for a plausible abuse of process claim. Particularly, when it appears that no legal challenge was raised to the refusal of the Office of Disciplinary Counsel to provide the requested documents. Moreover, Zappin attempts to rope Doyle and Dopico into these claims as co-conspirators, although he provides absolutely no facts to establish their involvement in the response to the FOIA request. As with his claims related to the disciplinary process, Zappin's amended complaint regarding the FOIA request is speculative and conclusory and is devoid of facts sufficient to state a plausible claim.

The Federal Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), "requires federal agencies to make their internal records available to the public upon request." *Hamilton v. Newby*, No. 3:19-CV-372, 2020 WL 972752, at *5 (E.D. Va. Feb. 28, 2020), *aff'd sub nom. Hamilton v. Azzarone*, 826 Fed. Appx. 304 (4th Cir. 2020) (citing *Coleman v. DEA*, 714 F.3d 816, 818 (4th Cir. 2013)). FOIA "does not apply to state or local entities." *Id.*; *see also Ladeairous v. Goldsmith*, No. 3:13CV673, 2015 WL 1787297, at *3 (E.D. Va. Apr. 15, 2015), *aff'd,* 610 Fed. Appx. 315 (4th Cir. 2015). Consequently, it would not apply to any of the defendants.

46

The West Virginia Freedom of Information Act, W. Va. Code §29B-1-1 *et seq*. does apply to the Office of Disciplinary Counsel, and it provides very clear enforcement procedures. W. Va. Code §29B-1-5. Part of that procedure is for the circuit court of the appropriate county to determine if the public body is properly withholding records subject to a request. To the extent Zappin believes the records he requested should have been produced, he may pursue the state law procedure available to him. *See, e.g., Hamilton*, 2020 WL 972752, at *5 n.5. However, the undersigned **FINDS** that Zappin fails to state a claim for abuse of process concerning his FOIA request.

### 4. Litigation Privilege

Defendants argue that Zappin's claims are barred by the litigation privilege. "[T]he litigation privilege is generally applicable to bar a civil litigant's claim for civil damages against an opposing party's attorney if the alleged act of the attorney occurs in the course of the attorney's representation of an opposing party and is conduct related to the civil action." *Clark v. Druckman*, 218 W. Va. 427, 434 (2005); *see also Nestor v. Antolini*, No. 1:20-CV-217, 2021 WL 4963544, at *21 (N.D.W. Va. May 19, 2021), *report and recommendation adopted,* 2021 WL 4313084 (N.D.W. Va. Sept. 22, 2021). The litigation privilege attaches to judicial and quasi-judicial proceedings. *Smith v. Chestnut Ridge Storage, LLC*, 855 S.E.2d 332, 340 (2021); *Day v. Johns Hopkins Health Sys. Corp.*, 907 F.3d 766, 774 (4th Cir. 2018). The litigation privilege protects not only attorneys, but also parties and expert and fact witnesses from civil liability for their actions and communications related to the proceeding. *Nestor*, 2021 WL 4963544, at *21 ("It is also well-established that witnesses benefit from litigation privilege and enjoy immunity for their statements or communications within judicial proceedings."); *Barefield v. DPIC Companies, Inc.*, 600 S.E.2d 256, 272 (W. Va. 2004) (stating that the litigation privilege

47

"extends to any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case."). The litigation privilege extends to "preliminary conversations and interviews between prospective witnesses and an attorney as long as the communications are related to the prospective judicial action." *BriovaRx, LLC v. Johnson*, No. CV 3:13-12049, 2014 WL 12744704, at *4 (S.D.W. Va. July 2, 2014) (citation omitted); *Collins v. Red Roof Inns, Inc.,* 566 S.E.2d 595, 599 (W. Va. 2002). The only torts excepted from the litigation privilege are malicious prosecution and fraud. *BriovaRx*, 2014 WL 12744704, at *2; *Clark*, 624 S.E.2d at 872.

Zappin asserts that Defendants Ramey, Steptoe, Doyle, and Dopico cannot assert the litigation privilege because they were not opposing counsel in the West Virginia reciprocal disciplinary action, which is the focus of this lawsuit. (ECF No. 27 at 14). He states that, although the defendants acted as opposing counsel in other matters, they were only listed as witnesses in the reciprocal disciplinary action, which precludes them from availing themselves of the litigation privilege. (*Id.* at 15). That assertion is plainly incorrect because the privilege extends to witnesses in addition to attorneys. *See Nestor*, 2021 WL 4963544; *Barefield*, 600 S.E.2d at 272.

Zappin also declares that the "vast majority" of Defendants' conduct occurred outside of the litigation itself, so Defendants are not protected by the litigation privilege. (ECF No. 27 at 16). He notes that Ramey, Steptoe, Doyle, and Dopico had no formal role as counsel in the West Virginia reciprocal disciplinary proceeding, but they allegedly "urged, pressured, strategized and instigated Defendant Cipoletti" to maintain the action against him despite her obligation to withdraw the proceeding and/or notify the Court of

48

the falsified evidence in New York. *Id.* According to Zappin, those communications are the crux of his abuse of process claims. *Id.* He also contends that his abuse of process claims against Cipoletti hinge on Cipoletti's "uncharged, unlitigated and false assertions of attorney misconduct against [Zappin] as a basis for requesting the imposition of reciprocal discipline" and the fact that she supposedly taunted him on social media, solicited two "smear" articles about him, and contacted him directly via e-mail to harass and attack him in furtherance of her conspiracy to abuse process. (*Id.* at 18).

These arguments are likewise without merit. To begin, as indicated above, Zappin is precluded from relying on factual assertions that contradict the factual findings of his divorce, custody, and disbarment proceedings. He has previously challenged the integrity of the factual findings made in those proceedings, and his misconduct has been determined and affirmed through final judgments of various courts, giving them preclusive effect. Furthermore, Zappin cannot have it both ways. If the actions and communications about which he complains were entirely unrelated to the attorney disciplinary proceeding, then they cannot form the basis of an abuse of process claim. On the other hand, if all of the actions and communications about which Zappin complains were taken by the defendants in furtherance of their roles in the West Virginia disciplinary proceeding, then they fall squarely within the litigation privilege.

Zappin does not assert claims of fraud or malicious prosecution, which are the only exceptions to the privilege. Undoubtedly, Zappin cannot successfully claim that he was maliciously prosecuted because the proceeding did not terminate in his favor. *Marietta Area Healthcare*, 2021 WL 1680445, at *4 ("With respect to malicious prosecution, to successfully state a claim for malicious prosecution at the pleading stage, a plaintiff must allege that (1) that the prosecution was malicious, (2) that it was without reasonable or

probable cause, and (3) *that it terminated favorably to plaintiff.*") (internal markings omitted and emphasis added). For those reasons, the undersigned **FINDS** that Zappin's amended complaint is barred by the litigation privilege.

### B.  Motion for Prefiling Injunction

Upon finding that Zappin's amended complaint should be dismissed, the undersigned next addresses Defendants' motion for a prefiling injunction. As stated above, the Court must consider: (1) Zappin's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether Zappin had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from Zappin's filings; and (4) the adequacy of alternative sanctions. *Cromer*, 390 F.3d at 818. Having considered the factors, the undersigned **FINDS** that they weigh in favor of granting a prefiling injunction as follows:

### 1.  History of litigation

Zappin has a lengthy history of litigation in both state and federal court challenging his state-court divorce, child custody, and attorney disciplinary proceedings. *See Zappin VI*, 2022 WL 985634, at *1. Zappin repeatedly raises the same issues. *Id.* Indeed, for that very reason, the Southern District enjoined Zappin from filing in that district any new actions regarding such matters without express leave of court. *Id.* at *11. In reaching that decision, the Southern District considered essentially the same factors that the Court considers herein and determined that an injunction was warranted.[2] Concerning Zappin's

---

[2] The Southern District considered: "(1) The litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative lawsuits; (2) The litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing? (3) Whether the litigant is represented by counsel; (4) Whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) Whether other sanctions would be adequate to protect the courts and other parties." *Zappin I*, 2022 WL 985634, at *7.

litigation history, the Southern District fittingly described that Zappin's lawsuits have been vexatious, harassing, meritless, burdensome, dilatory, and duplicative. *Id*. at *7-8. The Court explained, "[a]t bottom, Zappin's years-long history of filing suit again and again against the same set of actors for the same series of events—and, in so doing, displaying little respect for courts and their orders and deadlines—counsels in favor of a filing injunction." *Id*. at *8.

Likewise, the undersigned considers that Zappin has filed more than 16 *pro se* lawsuits, including other cases in this Court, challenging nearly every conceivable aspect of his divorce and custody proceeding and subsequent disbarments. *Id*. at *3. The cases have been uniformly dismissed. As he did in the instant action, Zappin continues to assert allegations in some of these cases that are contradictory to findings already made final in other proceedings and that are contrary to his claims. Zappin is the perfect example of a vexatious litigant. Accordingly, the undersigned **FINDS** that this factor weighs toward granting an injunction.

### 2. Good faith basis

As in his previous lawsuits, the claims that Zappin presents in the instant action are devoid of merit. The law on these matters has been explained to Zappin on multiple occasions. It is simply not possible that Zappin, who holds a law degree and practiced law for years, believes that he has a good faith basis to pursue this litigation, especially when the claims that he raises have already been litigated. As the Southern District noted, "it is clear that Zappin does not have any intention on molding his litigation strategy so that he has some chance of success." *Zappin VI*, 2022 WL 985634, at *8. Zappin has abandoned actions when they did not serve him, flouted court-imposed deadlines, and failed to abide by court orders. *Id*. (citations omitted). Indeed, "Zappin's favored method of pushing

forward litigation—filing new lawsuits—does not evince any ability to adopt his strategy to account for rulings of other courts." *Id.* Furthermore, "Zappin's prior federal actions were dismissed with prejudice, including on grounds of res judicata and collateral estoppel and for lack of subject matter jurisdiction." *Id.* at *9. "In other words, other courts have dismissed with prejudice Zappin's prior actions, all of which arise out of the same set of facts." *Id.* The undersigned **FINDS** that this factor also weighs in favor of granting Defendants' motion for a prefiling injunction.

### 3. Burden on courts and other parties

Zappin's repeated filing of frivolous lawsuits has no doubt presented a burden to both state and federal courts. The actions have required, *inter alia*, administrative processing by the relevant clerks' offices; thoughtful evaluation by the presiding judges and their staff of voluminous pleadings, motions, and exhibits; and careful drafting of detailed judicial opinions. Defendants have also incurred great expense, time, and resources defending against Zappin's claims. The sheer number of lawsuits has imposed a substantial burden on the courts and other parties, not to mention the added burden of Zappin's dilatory and disrespectful conduct in the lawsuits. The undersigned **FINDS** that this factor weighs in favor of granting Defendants' motion.

### 4. Adequacy of alternative sanctions

As to the final factor, the undersigned concludes that no other sanction would adequately protect the Court and other parties. Zappin has previously been monetarily sanctioned to no avail. *Id.* at *10. Zappin has also proceeded with lawsuits even after being enjoined from doing so in the Southern District of New York. (ECF Nos. 14, 28-1). The undersigned **FINDS** that this factor weighs in favor of granting the defendants' motion.

Drawing upon the wise counsel of the Southern District of New York, the

undersigned **RECOMMENDS** that this Court enjoin Zappin from filing, without leave of Court, any new actions in this district arising out of his divorce and custody proceedings or disciplinary proceedings and disbarment. *See Brumfield*, 2016 WL 1254627, at *11.

## IV.    <u>Proposal and Recommendation</u>

For those reasons, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings herein and **RECOMMENDS** that Defendants' motions, (ECF Nos. 11, 15), be **GRANTED**; the amended complaint, (ECF No. 14), be **DISMISSED**, with prejudice; the action be **CLOSED** and **REMOVED** from the docket of the Court; and a prefiling injunction be **IMPOSED** prohibiting Plaintiff from instituting any further civil action in this district against the named defendants or any other individual concerning Plaintiff's divorce, custody, or attorney disciplinary proceedings; disbarments; or prosecution for a tangentially related criminal matter without first obtaining leave to do so from this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure. The parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de*

*novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, counsel of record, and any unrepresented party.

**FILED:** October 27, 2022

Cheryl A. Eifert
United States Magistrate Judge