## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

ANTHONY ZAPPIN,

                Plaintiff,

v.                                   CIVIL ACTION NO.   3:22-0080

ANCIL G. RAMEY,
STEPTOE & JOHNSON PLLC,
KEVIN M. DOYLE,
JORGE DOPICO,
RACHAEL FLETCHER CIPOLETTI,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Anthony Zappin's Objections to Magistrate Judge Eifert's Proposed Findings and Recommendations. ECF No. 30. For the following reasons, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS AND INCORPORATES HEREIN** the Proposed Findings and Recommendations. The Court **GRANTS** Defendants' Motions to Dismiss with Prejudice and for a Pre-filing Injunction (ECF Nos. 11 & 15), and **ORDERS** this case stricken from its docket.

Furthermore, Mr. Zappin is **ENJOINED** from further filings in this Court against any current or former New York or West Virginia judge, official, employee, or counsel representing such persons in previous litigation involving the Plaintiff arising out of the New York divorce proceeding, the New York disciplinary proceeding, or the West Virginia reciprocal disciplinary proceeding without first seeking leave from this Court.

## I. BACKGROUND

Mr. Zappin is a frequent pro se litigant. While relevant litigation by Plaintiff is summarized below, it would be inordinately burdensome on the Court to provide a full accounting of Mr. Zappin's repetitious filings concerning his ex-wife, child, disbarments, divorce, custody proceedings, and media coverage of the above. Formerly licensed to practice law in West Virginia, the District of Columbia, and New York, Mr. Zappin was uniformly disbarred following his "offensive and patently improper" behavior in a series of divorce and custody proceedings with his ex-wife, Claire Comfort, in New York and the District of Columbia. *See Zappin v. Comfort*, 26 N.Y.S.3d 217 (N.Y. Sup. Ct. 2015), *aff'd* 49 N.Y.S.3d 6 (2017) ("Sanctions Order"). The relationship between Mr. Zappin and the Defendants is explained at length below.

### A. Initial Family Law Proceedings and Disbarments

In the Sanctions Order issued during Mr. Zappin's divorce proceedings, Justice Matthew F. Cooper found that Plaintiff had used "his law license as a tool to threaten, bully, and intimidate," and that he had made "deeply personal, and frankly outrageous, verbal attacks" against Justice Cooper's predecessor in the case, Justice Deborah A. Kaplan. *Id*. at *1-3. Sanctions were imposed on Mr. Zappin in the amount of $10,000. *Id*. at *11. Mr. Zappin appealed the Sanctions Order, and the New York Appellate Court found the sanctions and the procedure by which they were imposed to be proper. *Zappin v. Comfort*, 49 N.Y.S.3d 6 (2017) *appeal dismissed by* 102 N.E.3d 1056 (N.Y. 2018).

On August 16, 2016, Justice Cooper entered a judgment of divorce, incorporating an earlier order from March 2016, awarding Ms. Comfort sole physical and legal custody of the parties' child, granting Mr. Zappin supervised visitation, and issuing a five-year stay-away order of protection for Ms. Comfort. *Zappin v. Comfort*, 65 N.Y.S.3d 30 (2017) *appeal dismissed*

102 N.E.3d 1056 (N.Y. 2018) ("Divorce Judgment"). Mr. Zappin appealed, and the Appellate Court affirmed the judgment, finding *inter alia* that Justice Cooper's determination that Mr. Zappin's testimony was frequently "not truthful" to be supported by the record. *Id*. at 498. The Appellate Court decision found the evidence persuasive that Mr. Zappin harmed Ms. Comfort, engaged in abusive litigation tactics, made repeated false allegations of abuse, and committed numerous family offenses. *Id*.

Based on the findings of Justice Cooper, the Attorney Grievance Committee of the Appellate Division, First Department, New York charged Mr. Zappin with professional misconduct in a collateral disciplinary action. *Matter of Zappin*, 73 N.Y.S.3d 182 (N.Y. App. Div. 2018). Kevin M. Doyle prosecuted the action and was supervised by chief attorney Jorge Dopico; both Mr. Doyle and Mr. Dopico are Defendants in the instant case. On October 17, 2016, the Appellate Court found that Mr. Zappin had violated multiple rules of professional conduct. *Id*. at *3. After this determination, an assigned referee recommended disbarment. *Id*. at *5. On March 8, 2018, the Appellate Court accepted the recommendation and ordered Mr. Zappin disbarred. *Id*. at *9. Following a formal hearing, the West Virginia State Bar recommended reciprocal disbarment. *Law. Disciplinary Bd. v. Zappin*, No. 18-0250, 2021 WL 595869 at *4 (W. Va. Feb. 16, 2021). On appeal, the Supreme Court of Appeals of West Virginia upheld the disbarment, concluding that the New York divorce and custody proceedings established misconduct by Mr. Zappin involving "dishonesty, fraud, deceit, or misrepresentation, and abusive litigation tactics." *Id*. at *5.

**B. Additional Relevant Civil Litigation**

Mr. Zappin has challenged the above proceedings and collateral issues through a variety of civil litigation. Of relevance to the instant case are his federal actions brought against individuals

involved in the New York proceedings. Mr. Zappin first filed suit against Justice Cooper, alleging that the Justice gave "unauthorized recipients" copies of the Sanctions Order, which he asserted contained "false, malicious, or defamatory statements" about him. *Zappin v. Cooper*, 16 Civ. 5985 (KPF), 2018 WL 708369 at *1 (S.D.N.Y. Feb. 2, 2018) ("*Zappin I*"). Justice Cooper raised a variety of defenses, one of which the Southern District of New York found to be dispositive. *Id.* at *1, 15. Invoking the doctrine of non-mutual collateral estoppel, the Southern District found that the factual findings which formed the basis of Mr. Zappin's complaint were identical to those contained in the Sanctions Order, and, therefore, Plaintiff's claim was barred by the prior litigation. *Id.* at *17-18. Furthermore, the Southern District found that the factual findings in the Sanctions Order—upheld by the Appellate Court—were supported by the record, and could not serve as the basis for Plaintiff's claims against Justice Cooper. *Id.* at *19-21. Accordingly, Mr. Zappin's complaint was dismissed. On appeal, the United States Court of Appeals for the Second Circuit affirmed the judgment. *Zappin v. Cooper*, 768 Fed. App'x 51, 52 (2d Cir. 2019).

Mr. Zappin next filed a 375-page complaint against Mr. Doyle and others, broadly alleging a variety of constitutional violations and common-law tort claims stemming from the divorce proceedings and related disciplinary matters. *Zappin v. Doyle*, 17 Civ. 8837 (KPF), 2018 WL 2376502 at *1 (S.D.N.Y Apr. 10, 2018) ("*Zappin II*"). The court in *Zappin II* found that Mr. Zappin's complaint was "in substantial measure an attempt to relitigate . . . the proceedings before Justice Cooper." *Id.* at *2. The case was dismissed with prejudice, as the court found that Mr. Zappin had repeatedly violated court orders during the proceedings. *Id.* at *6-9. On appeal, the Second Circuit Court of Appeals affirmed the district court decision. *Zappin v. Doyle*, 756 Fed. App'x 110 (2d Cir. 2019).

The next target of Mr. Zappin's litigious ire was The New York Post ("the Post") and one of its reporters, Julia Marsh; Plaintiff claimed that a story the Post published concerning the court proceedings in Mr. Zappin's divorce and child custody action was defamatory. *Zappin v. NYP Holdings, Inc.*, 769 Fed. App'x 5 (2d Cir. 2019) ("*Zappin III*"). The district court dismissed Mr. Zappin's complaint, finding that "the Post article was privileged as it was a fair and true report of [Mr.] Zappin's custody hearing and that collateral estoppel barred [him] from challenging the truth of the abuse allegations." *Id*. at 7. On appeal, the Second Circuit affirmed both the district court's defamation analysis and its application of New York collateral estoppel law to the New York state court judgment. *Id*. at 10-11. In New York state, the Second Circuit detailed, "issue preclusion occurs if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *Id*. at 10 (quoting *Vargas v. N.Y.C.*, 377 F.3d 200, 205-06 (2d Cir. 2004)). Additionally, the Court noted that collateral estoppel could be invoked "either defensively or offensively" by "a nonparty to the prior litigation." *Id*. at 10 (quoting *Buechel v. Bain*, 766 N.E.2d 914 (2001)). Accordingly, Mr. Zappin's appeal was rejected.

In March 2020, Mr. Zappin again filed suit in the Southern District of New York, asserting claims of abuse of process in violation of his Fourteenth Amendment due process rights, First Amendment retaliation, and conspiracy to commit the above offenses, arising out of his divorce, disbarment, and an alleged false criminal action filed against Mr. Zappin concerning his contention that Justice Cooper spit on him. *Zappin v. Cooper*, 2020 WL 4753036 (S.D.N.Y. Aug. 17, 2020) ("*Zappin IV*"); *see Zappin III*, 769 Fed. App'x at 8 (detailing the spitting incident). Defendants in *Zappin IV* included Mr. Doyle, defendant in the instant action. In *Zappin IV*, the Court found that Rule 41(b) dismissal operated as an adjudication on the merits and, as the "facts and connected

series of transactions essential to this action ... were all present in the previous action," Mr. Zappin was barred by res judicata from bringing claims against Mr. Doyle that "were or could have been raised in [*Zappin II*]." *Id*. at *4.

Mr. Zappin has previously sued Defendant Dopico as well, bringing three counts under 42 U.S.C. § 1983 in the Southern District of New York. *Zappin v. Collazo*, 2020 WL 5646496 (S.D.N.Y. Sept. 22, 2020) ("*Zappin V*"). In *Zappin V*, after summarizing several of the cases Mr. Zappin had previously filed, the district court dismissed his claims. The court dismissed the various claims brought against Mr. Dopico due to *Rooker-Feldman* Doctrine,[1] lack of redressability sufficient for Article III standing, and res judicata. *Id*. at *5-8. To the extent such claims were not barred by res judicata, the court dismissed Mr. Zappin's claims of abuse of process, conspiracy to abuse process, and First Amendment retaliation, holding that he had failed to state a cognizable claim pursuant to 42 U.S.C. § 1983.[2] *Id*. at *10. The Second Circuit dismissed Mr. Zappin's appeal of *Zappin V* as lacking "an arguable basis either in law or in fact." *Zappin v. Dopico*, No. 20-3625 (2d Cir. Mar. 18, 2021), Dkt. No. 28.

Perhaps unsurprisingly, Mr. Zappin attempted to relitigate his divorce and disbarment proceedings anew, filing suit against Justice Cooper and Mr. Doyle yet again, alleging abuse of process and retaliation. *Zappin v. Cooper*, 2022 WL 985634 (S.D.N.Y. Mar. 31, 2022) ("*Zappin VI*"). The Court in *Zappin VI* granted a pre-filing injunction against Mr. Zappin, noting his history of repeatedly filing "vexatious and harassing" actions; the court counted sixteen actions in

---

[1] *Rooker-Feldman* Doctrine provides that federal courts lack jurisdiction over a case if the exercise of jurisdiction would result in reversal or modification of a state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005); *Jonathan R. by Dixon v. Justice*, 41 F.4th 316, 339-40 (4th Cir. 2022).
[2] This aspect of the holding is emphasized in the PF&R. This Opinion adopts that analysis while articulating other elements of the decision in *Zappin V*.

numerous courts. *Id*. at *7-8. The *Zappin VI* opinion characterizes Mr. Zappin's various lawsuits as "imposing substantial burdens on the courts," "duplicative," and pursued in a "dilatory and disrespectful manner." *Id*. "Rather than inching him closer to some relief," the court wrote, "[Mr.] Zappin's actions have only served to consume the time and resources of the named defendants and the courts." *Id*. at *10. Accordingly, the court issued an injunction barring Mr. Zappin from filing without leave of court any new actions in the Southern District of New York, against any New York State entity or agency, or any other current or former New York state judge, official, or employee arising out of the divorce proceeding, disciplinary proceeding, alleged spitting-incident, or resulting arrest and prosecution. *Id*. at *11. Furthermore, the *Zappin VI* Court denied Mr. Zappin's motion to amend his complaint, determining that the causes of action he sought to bring would be meritless. *Id*. at *12.

### C. Prior Litigation in the Southern District of West Virginia

Mr. Zappin has filed an additional five cases in this Court related to his divorce, custody, and disbarment proceedings, three of which have been dismissed. First, Mr. Zappin filed two malpractice lawsuits against the attorneys who represented him in the New York disbarment proceedings; both cases were dismissed. *Zappin v. Hamilton*, Case No. 3:20-cv-00209 (S.D.W. Va. Mar. 23, 2020); *Zappin v. Supple*, Case No. 3:20-cv-00210 (S.D.W. Va. Mar. 23, 2020). Next, Mr. Zappin sued all of the Justices of the Supreme Court of Appeals of West Virginia, the clerk of court (Ms. Rachel Fletcher Cipoletti, Defendant here), and two members of the West Virginia Lawyer Disciplinary Board, alleging that he was improperly disbarred in West Virginia. *Zappin v. Cipoletti*, No. 2:21-cv-00119, 2021 WL 4392043 at *1 (S.D.W. Va. Sept. 24, 2021), *reconsideration denied*, 2021 WL 5989067 (S.D.W. Va. Dec. 17, 2021), *aff'd*, No. 22-1065, 2022 WL 2914729 (4th Cir. July 25, 2022). Two of the Defendants in the instant case—Mr. Ancil

Ramey and Steptoe & Johnson PLLC ("Steptoe")—represented the defendants in that action (thus incurring Mr. Zappin's most recent rage).

### D. The Instant Action

Mr. Zappin initiated this action on February 16, 2022. ECF No. 1. He filed an amended complaint on June 14, 2022. ECF No. 14. The Amended Complaint contains a lengthy recitation of Mr. Zappin's version of the events of his divorce, custody dispute, disbarment, and subsequent litigious efforts. Am. Compl. ¶¶ 11-49. Much of this exposition concerns Mr. Zappin's grievances against Justice Cooper, who is not a defendant in this case. *Id*. Many of the allegations in the Amended Complaint are identical to those brought in earlier actions, again alleging, for example, that Justice Cooper spit on him. *Id*. ¶ 24.

The first allegations brought against the named Defendants in this suit concern the New York collateral disciplinary action. *Id*. ¶¶ 26-28. Mr. Zappin avers that Defendants Doyle and Dopico deliberately designed the disciplinary action in order to disadvantage him, such that he was never provided with a formal charging document and was denied a hearing on the merits. *Id*. The Amended Complaint asserts that Mr. Doyle behaved in a variety of inappropriate ways, including: "fabricating" the disciplinary charges brought against Mr. Zappin; harassing, stalking, and bullying Mr. Zappin; and physically assaulting Mr. Zappin via a "chest-bump." *Id*. ¶¶ 29-32. This alleged harassment reportedly led Mr. Zappin to seek a temporary personal safety ("TPS") order against Mr. Doyle in Cabell County, West Virginia. *Id*. ¶ 32. At this point in Mr. Zappin's account, Defendant Cipoletti emerges, instructing Mr. Doyle to hire Defendants Ramey and Steptoe to defend him in the TPS action. *Id*. ¶ 33. Mr. Zappin asserts that Mr. Ramey coerced him into voluntarily dismissing the TPS order, "inundat[ing]" Mr. Zappin with "harassment, threats, and insults," including a threat to bring criminal charges against Mr. Zappin. *Id*. ¶ 35.

Ms. Cipoletti is then accused of inappropriately filing a reciprocal disciplinary action in the Supreme Court of Appeals of West Virginia, based upon Mr. Zappin's New York disbarment. *Id*. ¶ 36. Mr. Zappin asserts that Ms. Cipoletti failed to properly investigate the New York disbarment, and, upon allegedly learning that the New York disbarment was unsupported, proceeded to prosecute Mr. Zappin, nonetheless. *Id*. ¶¶ 36-39. Mr. Zappin further asserts that Defendants Ramey, Doyle, and Dopico improperly influenced Ms. Cipoletti to continue to pursue reciprocal disbarment against Mr. Zappin, and that the Defendants then concealed these unlawful communications when Mr. Zappin filed a FOIA request. *Id*. ¶¶ 42-49.

The Amended Complaint brings eight counts against the Defendants: Count I – 42 U.S.C. § 1983 abuse of process, regarding the reciprocal disbarment proceeding (Doyle, Dopico); Count II - § 1983 conspiracy to abuse process, regarding the same proceeding (Doyle, Dopico, Cipoletti); Count III – state law abuse of process, regarding influencing Ms. Cipoletti in the same proceeding (Ramey, Steptoe, Doyle, Dopico); Count IV – state law conspiracy to abuse process, same allegations as above (all Defendants); Count V - § 1983 abuse of process, regarding the FOIA request (Cipoletti, Ramey, Steptoe); Count VI - § 1983 conspiracy to abuse process, regarding the FOIA request (all Defendants); Count VII – state law abuse of process, regarding the FOIA request (Ciploetti, Ramey, Steptoe); and Count VIII – state law conspiracy to abuse process, same allegations as above (all Defendants). Mr. Zappin is seeking monetary damages. *Id*. at 42.

On May 24, 2022, Defendants motioned to dismiss, and further motioned for a pre-filing injunction to be imposed on Mr. Zappin. ECF No. 11. After Mr. Zappin filed his Amended Complaint, Defendants again motioned to dismiss and for a pre-filing injunction. ECF No. 15. In their Motion and accompanying Memorandum of Law, Defendants raise, *inter alia*, the issues of subject matter jurisdiction, 28 U.S.C. § 1257, *Rooker-Feldman* Doctrine, *res judicata*, litigation

privilege, and failure to state a cause of action for abuse of process under either state or federal law. Mem. of Law in Supp. of Mot. to Dismiss Am. Compl. & for Pre-Filing Inj. at 5, ECF No. 16. Mr. Zappin's Response to this Motion is grounded in invective directed at Defendants, whom he variously believes are "paragon[s] of dishonesty" and "corrupt Cuomo-cronies from New York" exhibiting "overt misconduct and venality" as they make "frivolous contention[s]." Pl.'s Opp'n to Defs.' Mot. to Dismiss at 1, 4, ECF No. 27. The Response further delineates a variety of arguments as to why each of the doctrines invoked by Defendants is inapplicable to Plaintiff's claims. *Id.*

On October 27, 2022, Magistrate Judge Cheryl A. Eifert issued her Proposed Findings and Recommendations ("PF&R") (ECF No. 29), recommending that Defendants' Motions to Dismiss with Prejudice and for a Pre-filing Injunction (ECF Nos. 11 & 15) be granted. The Magistrate Judge determined that Mr. Zappin's Amended Complaint should be dismissed under theories of res judicata, collateral estoppel, and failure to state a claim on which relief can be granted. Accordingly, the Magistrate Judge recommended the case be closed and removed from the Court's docket, and that a pre-filing injunction be imposed prohibiting Mr. Zappin from any further civil action in this district against the named Defendants or any other individual concerning Plaintiff's divorce, custody, or attorney disciplinary proceedings; disbarments; or prosecution for a tangentially related criminal matter without first obtaining leave to do so from this Court. On November 14, 2022, Mr. Zappin filed his Objections to the PF&R (ECF No. 30), which this Memorandum Opinion now considers. While Defendants filed a Response to those Objections on November 28, 2022 (ECF No. 31), Plaintiff did not reply.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

To survive a motion to dismiss, a complaint must contain "a short and plain statement of

the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the facts

alleged in the complaint need not be probable, the statement must contain "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's

claim, the Court accepts all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Id*. (citation omitted).

Determining whether a complaint states a plausible claim is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. If

the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—

'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a

plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550

U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of those facts is improbable, and that a recovery is very remote and unlikely.").

**B.  Pre-filing Injunction**

Pre-filing injunctions are a remedy that should be used sparingly, consistent with

constitutional guarantees of due process of law and access to the courts. *Cromer v. Kraft Foods N.*

*Am., Inc.*, 390 F.3d 812, 817 (4th Cir. 2004) (citing U.S. Const. amend. XIV, § 1). However, courts

may issue pre-filing injunctions where there are "exigent circumstances, such as a litigant's

continuous abuse of the judicial process by filing meritless and repetitive actions." *Id*. at 818

(quoting *Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993)). In determining whether to grant a pre-filing injunction, the Fourth Circuit has instructed courts to "weigh all the relevant circumstances, including (1) the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits; (2) whether the party had a good faith basis for pursuing the litigation, or simply intended to harass; (3) the extent of the burden on the courts and other parties resulting from the party's filings; and (4) the adequacy of alternative sanctions." *Id*. Regardless, any pre-filing injunction issued by a court must be "narrowly tailored to the circumstances giving rise to the injunction." *Adkins v. Whole Foods Mkt. Grp., Inc.*, 795 Fed. App'x 217 (4th Cir. 2020).

### C.  Objections to PF&R

Where a party is proceeding pro se, the Court will liberally construe his pleadings and objections. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, courts will not always grant the same leniency to lawyers who file pro se.[3] *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010); *Murphy v. Dalton*, 2021 WL 4998684 at *2 (5th Cir. Oct. 27, 2021); *Cole v. Comm'r of Internal Revenue*, 637 F.3d 767, 773 (7th Cir. 2011); *Hale v. Fed. Bureau of Prisons*, 759 Fed. App'x 741, 746 (10th Cir. 2019); *Agarwal v. Morbark, LLC*, 2022 WL 2092774 at *2 (Fed. Cir. June 10, 2022). In reviewing objections to a PF&R, the Court must conduct a *de novo* review of those portions of the Magistrate Judge's findings "to which objection is made." 28 U.S.C. § 636(b)(1)(C). On the other hand, the Court is not obligated to conduct a review of factual and legal conclusions to which a party does *not* object. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Nor is the Court tasked with conducting *de novo* review of "general and

---

[3] While Mr. Zappin has been repeatedly disbarred, he remains a graduate of Columbia Law with a substantial legal resume. *See Zappin II*, 2018 WL 2376502 at *6 (discussing Mr. Zappin's legal background).

conclusory" objections; instead, objections must raise specific errors in the PF&R. *McPherson v. Astrue*, 605 F. Supp. 2d 744, 749 (S.D.W. Va. 2009) (citing *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982)) (reasoning that "vague objections to the magistrate judge's findings prevents the district court from focusing on disputed issues and thus renders the initial referral to the magistrate judge useless"). Finally, the Court possesses the wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations" of the Magistrate Judge. 28 U.S.C. § 636(b)(1)(C). With this framework in mind, the Court turns to a consideration of Mr. Zappin's pending objections.

### III. DISCUSSION

Per the legal standard, this Court need only provide a *de novo* review of the conclusions in the PF&R to which Mr. Zappin has objected. 28 U.S.C. § 636(b)(1)(C). However, upon consideration of Mr. Zappin's briefing, the Court finds it difficult to determine which precise objections Plaintiff is raising and which elements of the PF&R he accepts, if any. Many of Mr. Zappin's objections appear to be (yet another) recitation of his version of the events of his divorce, disbarments, custody dispute, and subsequent litigation. Pl.'s Objs. to PF&R ¶¶ 2-29. Accordingly, the Court has taken pains above to re-assess and reiterate the lengthy history of Mr. Zappin's various disputes.

Mr. Zappin brings three express objections to the PF&R: (1) that the Magistrate Judge erred in concluding Plaintiff's § 1983 claims were barred by res judicata, (2) that the Magistrate Judge erred in dismissing Counts III-IV of the complaint based on issue preclusion, and (3) that the Magistrate Judge "improperly dismissed Plaintiff [sic] allegations as conclusory substituting her judgment for that [of] a would-be jury." Pl.'s Objs. to PF&R at 13-15. While Plaintiff does not expressly object to the Magistrate Judge's recommendation that a pre-filing injunction be granted,

he broadly disputes the PF&R and concludes with the statement that the PF&R "should be rejected in its entirety."[4] *Id*. at 16. While the Court need not consider "general and conclusory" objections to a PF&R, it acknowledges the important constitutional issues raised in granting a pre-filing injunction. *See McPherson*, 605 F. Supp. 2d at 749; *Cromer*, 390 F.3d at 817. Accordingly, this Opinion reviews the Magistrate Judge's finding that the pre-filing injunction be granted.

### A. Res Judicata

In the PF&R, Magistrate Judge Eifert found that res judicata barred Counts I, II, V, and VI. PF&R at 33. Mr. Zappin has objected to this conclusion, arguing that the doctrine is inapplicable to the claims he has brought, which stem from events occurring post-prior litigation. Pl.'s Objs. to PF&R ¶¶ 31-35.

As articulated by the Supreme Court in *Taylor v. Stugell*, 553 U.S. 880, 892 (2008):

[C]laim preclusion and issue preclusion [] are collectively referred to as "res judicata." Under the doctrine of claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001). Issue preclusion, in contrast, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim. *Id*. at 748–749. By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," these two doctrines protect against "the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–154 (1979).

As noted in the PF&R, however, courts have not consistently used the term "res judicata" to encompass both claim and issue preclusion; some courts have distinguished res judicata as exclusively claim preclusion, while referring to issue preclusion as collateral estoppel. PF&R at

---

[4] The Court assumes that Mr. Zappin did not intend to imply that the areas of law in which the Magistrate Judge held for him—such as in her examination of *Rooker-Feldman* Doctrine's applicability—should be rejected by this Court. This Opinion will not, therefore, review findings in the PF&R which favor Mr. Zappin.

34. As the PF&R adopts this split terminology, this Opinion will concur with that taxonomic decision, and use res judicata when referring to claim prelusion and collateral estoppel when referring to issue preclusion. *See id*.

As discussed above, Mr. Zappin has litigated his divorce, child custody dispute, disbarment, and collateral matters in a variety of forums and under a variety of state and federal laws. "In considering the preclusive effect of an earlier state court judgment on a new claim, we apply the preclusion law of the State in which judgment was rendered." *Bennett v. Garner*, 913 F.3d 436, 440 (4th Cir. 2019) (quoting *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 127 (4th Cir. 2000)). When the prior decision was issued in federal court, federal law of preclusion applies only if the court was sitting in federal question jurisdiction; if the court was sitting in diversity jurisdiction, the preclusion law of the forum state applies. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-09 (2001). Mr. Zappin's cases have raised a litany of both state and federal claims. Accordingly, depending on which prior claim is at issue, this Court must consider the res judicata standards for federal law, New York law, and West Virginia law.

Fortunately, the three jurisdictions employ similar standards for the applicability of res judicata. In New York, res judicata bars successive litigation based on the same transaction or series of transactions if: "(i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action [or proceeding], or in privity with a party who was." *Matter of People v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008). Similarly, the Supreme Court of Appeals of West Virginia has held res judicata applicable where three elements are satisfied.

> First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause

of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Syl. Pt. 1, *Antolini v. W. Va. Div. of Nat. Res.*, 647 S.E.2d 535, 536 (W. Va. 2007) (quoting Syl Pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 498 S.E.2d 41 (W. Va. 1997)). Finally, federal common law applies res judicata where there is (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both suits; and (3) an identity of parties or privity between parties in the two suits. *Pueschel v. United States*, 369 F.3d 345, 354-55 (4th Cir. 2004) (citing *Nash Cnty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981)).

In his Objections, Mr. Zappin argues that res judicata is inapplicable to the counts which the Magistrate Judge found to have been barred by the doctrine, as each of the relevant counts involved continuing tortious actions which followed the earlier litigation. Pl.'s Objs. to PF&R ¶¶ 31-35. In forwarding this argument, Mr. Zappin emphasizes that as each alleged improper communication made to Ms. Cipoletti by Defendants Doyle and Dopico could serve as the basis for a separate cause of action, any such communications made after the actions litigated in *Zappin V* would not be subject to res judicata. *Id*. In Response to this objection, Defendants have argued that caselaw cited by Mr. Zappin is inapposite, and that the Magistrate Judge applied the correct standard in determining that "a plaintiff relying on allegedly different evidence is insufficient to avoid claim preclusion in a subsequent suit where the gravamen of the Plaintiff's allegations remain unchanged from his prior litigation." Defs.' Resp. to Pl.'s Objs. to the PF&R at 3 (internal quotation marks omitted).

### a. Count I - Abuse of Process Under § 1983 (Doyle and Dopico)

Mr. Zappin's allegations against Defendants Doyle and Dopico brought under Count I stem from the West Virginia disciplinary proceedings. Am. Compl. ¶¶ 50-57. The PF&R found that these claims were barred by res judicata, pursuant to the holding in *Zappin V*. PF&R at 37. As

discussed above, Mr. Zappin objects to this conclusion, arguing that his Amended Complaint alleges on-going tortious conduct which followed the events adjudicated in *Zappin V*. Pl.'s Objections to PF&R ¶¶ 31-35.

In *Zappin V*, Plaintiff asserted an abuse of process claim under § 1983 against Mr. Dopico based upon the actions of his subordinate, Mr. Doyle, with regards to the West Virginia disciplinary proceeding. *See Zappin V*, 2020 WL 5646496 at *2. In its holding, the Southern District of New York dismissed the claims against Mr. Dopico on the grounds that (1) they were at least partially barred by res judicata due to *Zappin II* and (2) to whatever extent they were not barred by that proceeding, they failed to state a claim under § 1983. *Id*. at *9. As in *Zappin V*, here Plaintiff is asserting an abuse of process claim predicated on Mr. Doyle's actions in communicating with the West Virginia Board of Law Examiners, allegedly for the purpose of retaliating against Mr. Zappin and ensuring his reciprocal disbarment. *Id*. at *1-2, 10; Am. Compl. ¶¶ 50-57.

As the claim at issue is brought under § 1983, it is subject to the federal common law standard for res judicata, as articulated by the Fourth Circuit in *Pueschel*. 369 F.3d at 354-55. Applying that standard, the Court agrees with the Magistrate Judge's analysis in the PF&R, and finds that Count I is fully barred by the holding in *Zappin V*. First, there was a final judgment on the merits in that suit: the Southern District of New York resolved Mr. Zappin's § 1983 claim against Defendants based on failure to state a claim. *Zappin V*, 2020 WL 5646496 at *9. Plaintiff's Notice of Appeal was dismissed by the Second Circuit, and he took no further action to pursue the matter, making the Southern District's judgment final. *See Zappin v. Dopico*, No. 20-3625 (2d Cir. Mar. 18, 2021). Second, there is an identity of the cause of action twixt the suits: both § 1983 abuse of process claims arise from the same set of incidents involving the same parties, and both suits

name Mr. Dopico as a defendant. *See Zappin V*, 2020 WL 5646496. Third—as the above analysis of Mr. Zappin's claims would suggest—there is an identity or privity of the parties between the suits. Both suits name Mr. Dopico as a defendant, and both rely on Mr. Zappin's underlying factual allegations that Mr. Doyle communicated with Ms. Cipoletti on behalf of Mr. Dopico for the purposes of ensuring Mr. Zappin's disbarment in West Virginia. In fact, the Southern District of New York previously found Mr. Doyle and Mr. Dopico to be in privity for the purposes of ruling on other claims concerning Mr. Zappin's disciplinary proceedings; this Court agrees with that analysis. *See id*. at *8. Accordingly, in concurrence with the Magistrate Judge, this Court finds no difficulty in holding that there is an identity or privity of the parties in both suits sufficient to satisfy *Pueschel*. Therefore, Count I is barred by res judicata.

Mr. Zappin's argument to the contrary is to no avail. In his Objections, Plaintiff asserts that continuing-tort doctrine[5] should allow his claim of abuse of process to proceed, despite the holding in *Zappin V*, as he is alleging independent tortious conduct which followed the

---

[5] This is apparently the doctrine which Mr. Zappin invokes in his Objections: Mr. Zappin argues that "Defendants engaged in a continuing series of tortious acts" after the filing of the prior suit which render res judicata inapplicable. Pl.'s Objs. to PF&R ¶ 33. Continuing-tort doctrine is usually invoked to argue that the statute of limitations for a cause of action has not run. *See, e.g.*, *Rhodes v. E.I. du Point de Nemours & Co.*, 657 F. Supp. 2d 751, 760 (S.D.W. Va. 2009). The doctrine applies "[w]here there is a repeated or continuous injury and where the damages do not occur all at once but increase as time progresses;" in such instances, "the tort is not completed, nor have all the damages been incurred, until the last injury is inflicted or the wrongdoing ceases." *Patrick v. Sharon Steel Corp.*, 549 F. Supp. 1259, 1264 (N.D.W. Va. 1982). Therefore, "where a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." *Graham v. Beverage*, 211 W.Va. 466, 566 S.E.2d 603, 614 (2002). Continuing-tort doctrine is not usually invoked to avoid res judicata. *But see Tomey v. Tomey*, 2015 WL 5921052 at *5 n.4 (D. Md. Oct. 7, 2015) (dealing with a very similar argument). Mr. Zappin may not be referencing the doctrine at all, given that his theory appears to be premised on the idea that Defendants committed *multiple* identical torts over a series of continuing actions, rather than one *singular* continuous tort. *See* Pl.'s Objections to PF&R ¶ 32. It is difficult to say what Mr. Zappin's theory is; this Opinion has attempted to cast his Objections in the most charitable light possible.

adjudication of that case. Pl.'s Objections to PF&R ¶¶ 31-35. In support of this argument, Mr. Zappin cites *Crowe v. Leeke*, 550 F.2d 184 (4th Cir. 1977), for the proposition that "res judicata has very little applicability to a fact situation involving a continuing series of acts, for generally each act gives rise to a new cause of action." However, upon consideration of *Crowe v. Leeke*, the Court finds that the Fourth Circuit merely found res judicata inapplicable where the prior suit did not state the same cause of action. *See id.* at 187-88 (finding that a different series of facts can give rise to a different cause of action, and "the precise issue sought to be litigated here . . . . was not raised and adjudicated in [the prior] suit."). As elucidated above, Mr. Zappin is bringing an identical cause of action to that which was found to have preclusive effect, premised on the same underlying conduct, and is merely arguing that evidence which he allegedly obtained[6] following *Zappin V* concerning that conduct could provide new and distinct causes of action. *See* Pl.'s Objs. to PF&R ¶¶ 31-35. As Defendants rightly surmise, assertions of new evidence of previously litigated incidents are insufficient to avoid res judicata. Defs.' Resp. to Pl.'s Objs. to PF&R at 3-4; *see, e.g.*, *Barth v. Town of Sanford*, 2001 WL 1356157 at *4 (D. Me. Nov. 5, 2001) (finding new evidence of an alleged continuing nuisance to be insufficient to avoid res judicata). While the Amended Complaint does allege conduct which occurred after the action in *Zappin V* was initiated, *see, e.g.*, Am. Compl. ¶ 42, that later alleged conduct serves merely to support the identical underlying claim from *Zappin V*. Even if that conduct could independently support a claim for abuse of process—which the Court remains skeptical of—that does not appear to be the claim Mr. Zappin makes in his Amended Complaint; rather, he is claiming, yet again, that Defendants abused

---

[6] In point of fact, much of Mr. Zappin's argument is more aptly characterized as being based on evidence which he allegedly did *not* obtain. While the Amended Complaint and the Objections aver that Mr. Zappin became aware of tortious communications between Defendants, they also assert that Mr. Zappin was unable to obtain evidence of said communications, due to a broader conspiracy by Defendants to shield relevant communications from Plaintiff's FOIA request.

process by maliciously participating in and employing regularly issued attorney disciplinary process in West Virginia. *See id.* ¶ 52. Accordingly, the holding on the merits in *Zappin V* precludes Count I; the Court **AFFIRMS** the Magistrate Judge's finding.

### b. Count II - Conspiracy to Abuse of Process Under § 1983 (Doyle, Dopico, and Cipoletti)

Mr. Zappin's allegations under Count II against Defendants Doyle, Dopico, and Cipoletti are grounded in his narrative that Mr. Doyle and Mr. Dopico communicated and conspired with Ms. Cipoletti for the purposes of unjustly obtaining reciprocal disciplinary action in West Virginia. *See id.* ¶¶ 60-65. These are nearly identical allegations to those brought by Mr. Zappin in his claim of conspiracy to abuse of process under § 1983 in *Zappin V*. 2020 WL 5646496 at *2-3, 9-10. The Southern District of New York therein resolved this claim on the merits against Mr. Dopico and his privy, finding that Mr. Zappin had failed to state a claim under § 1983. *Id.* (citing *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) for the proposition that § 1983 abuse of process may not be premised on a claim of malicious abuse of civil process).[7] Straightforward application of federal common law res judicata leads this Court to conclude that Count II is barred by the doctrine, as to Defendants Doyle and Dopico. *See Pueschel.* 369 F.3d at 354-55. However, the instant case additionally involves Ms. Cipoletti in the same array of allegations. Am. Compl. ¶¶ 60-65. These

---

[7] In his Objections, Mr. Zappin appears to argue that because the holding in *Zappin V*, brought in the Southern District of New York, was premised on Second Circuit caselaw, it cannot bar him from bringing the same claim again in a Circuit which does not have identical caselaw on the issue. Pl.'s Objs. to PF&R ¶ 35. This is not how res judicata operates; if a plaintiff were free to bring identical claims in differing forums based solely on the fact that caselaw differs from forum to forum, the doctrine of res judicata would be rendered almost meaningless. *See* PF&R at 39 (discussing *Zappin V*'s applicability to Count II). There is no requirement under any of the res judicata standards addressed above that the applicable law be identical in the two jurisdictions which decide the suits.

claims will be resolved in this Opinion's discussion of collateral estoppel and Mr. Zappin's objections to the PF&R's application of collateral estoppel, below.

### B.  Collateral Estoppel

Mr. Zappin has expressly objected to the Magistrate Judge's application of collateral estoppel to bar Counts III-IV[8] of his Amended Complaint. Pl.'s Objs. to PF&R ¶¶ 36-39; *see* PF&R at 40-43. In his Objections, Plaintiff argues that the Magistrate Judge failed to indicate where in the morass of prior *Zappin* opinions the issues raised in the Amended Complaint had been previously raised. *Id*. In Response, Defendants have pointed to the Magistrate Judge's analysis of prior litigation in holding collateral estoppel applicable to Plaintiff's instant allegations. Defs.' Resp. to Pl.'s Objs. to PF&R at 4-6.

Collateral estoppel, also known as issue preclusion, employs slightly different standards of applicability to res judicata. To reiterate, collateral estoppel bars successive litigation brought on an issue of fact or law actually litigated and resolved in a prior judgment by a court of competent jurisdiction, where that issue was essential to the prior judgment. *Taylor*, 553 U.S. at 892. New York state has announced a four-part test for the application of collateral estoppel; "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Lax v. City Univ. of N.Y.*, 175 N.Y.S.3d 691, 701 (N.Y. Sup. Ct. Aug. 25, 2022) (quoting *Conason v. Megan Holding, LLC*, 29 N.E.3d 215, 224 (N.Y. 2015)). West Virginia similarly requires four

---

[8] While Plaintiff's Objections only name Counts III-IV, the page numbers of the PF&R to which they cite discuss Counts III, IV, VII, and VIII together; furthermore, the arguments raised in the Objections do not appear to be limited to Counts III-IV. Accordingly, this Opinion considers Magistrate Judge Eifert's application of collateral estoppel to each claim.

conditions be met for collateral estoppel to bar a claim: "(1) [t]he issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." Syl. Pt. 1, *State v. Miller*, 459 S.E.2d 114 (W. Va. 1995). Finally, under federal common law, collateral estoppel is applicable when "(1) the issue sought to be precluded is identical to one previously litigated; (2) the issue ... ha[s] been actually determined in the prior proceeding; (3) determination of the issue [was] a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment [is] final and valid; and (5) the party against whom estoppel is asserted ... had a full and fair opportunity to litigate the issue in the previous forum." *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998) (citing *Ramsay v. INS*, 14 F.3d 206, 210 (4th Cir. 1994)).

Collateral estoppel can be mutual, involving the same parties from the previous litigation, or non-mutual, invoked by a defendant who was not a party to the previous litigation which serves to bar the subsequent litigation. *See Zappin I*, 2018 WL 708368 at *15 (explaining the concept of non-mutual collateral estoppel to Mr. Zappin in 2019). Collateral estoppel may also be "defensive" or "offensive"—non-mutual "defensive" collateral estoppel is invoked by defendants to prevent plaintiffs from asserting claims which they have previously litigated and lost against another defendant. *Id*. (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.4 (1979)). Accordingly, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana*, 440 U.S. at 153.

-22-

The PF&R found that collateral estoppel was applicable to Count II as brought against Ms. Cipoletti; Counts V and VI; and Counts III, IV, VII, and VIII in their entireties. PF&R at 38-43.

### a. Count II - Conspiracy to Abuse of Process Under § 1983 (Doyle, Dopico, and Cipoletti)

First, the Magistrate Judge applied the standard from *Sedlack* to Count II as brought against Ms. Cipoletti, and found that the decision in *Zappin V* precluded relitigation of the issue at hand due to non-mutual collateral estoppel. PF&R at 38-39. *Zappin V* held as a matter of law that Mr. Zappin's cause of action for conspiracy to abuse civil process under § 1983 was not cognizable as it was impermissibly "predicated on a claim of malicious abuse of … civil process." *Zappin V*, 2020 WL 5646496 at *10. Applying the *Sedlack* standard: this was a final judgment, on the merits, deciding the issue of law as an integral component of the holding. *See* 134 F.3d at 224. There is nothing to indicate that Mr. Zappin did not have a full and fair opportunity to litigate his claim in *Zappin V*. Accordingly, the Court **ADOPTS** the Magistrate Judge's finding.

### b. Counts V and VI – Abuse of Process (Cipoletti, Ramey, Steptoe) and Conspiracy to Abuse of Process under § 1983 (all Defendants)

Second, the Magistrate Judge found that Counts V and VI should be dismissed on the same grounds. PF&R at 40. Counts V and VI reiterate Mr. Zappin's claims against Defendants Doyle, Dopico, and Cipoletti concerning alleged illicit communications conspiring to improperly obtain Mr. Zappin's reciprocal disbarment, and expand those allegations to encompass alleged collusion in concealing the communications from a FOIA request by the remaining Defendants. Am. Compl. ¶¶ 84-98. Counts V and VI differ from Counts I and II only in their focus on Mr. Zappin's allegedly thwarted FOIA request. *See id.* Mr. Zappin cannot relitigate claims which would otherwise be barred by res judicata and collateral estoppel by virtue of filing a FOIA request concerning the

underlying allegations in those claims, and then implausibly claiming that a response which does not vindicate the underlying allegations constitutes a new tort. In accordance with the PF&R, the Court **DISMISSES** Counts V and VI pursuant to the doctrine of res judicata and non-mutual collateral estoppel.

### c. Counts III, IV, VII, and VIII – State Law Abuse of Process and Conspiracy to Abuse Process

Third, the Magistrate Judge found that Counts III, IV, VII, and VIII should be dismissed pursuant to the doctrine of res judicata and non-mutual collateral estoppel. PF&R at 40. These four counts allege state-based claims of abuse of process and conspiracy to abuse process, relying on the same underlying factual allegations as brought in Mr. Zappin's § 1983 claims. Am. Compl. ¶¶ 67-83, 99-111. Namely, as well-summarized in the PF&R, Counts III and IV allege that:

1. Ramey, Steptoe, Doyle, and Dopico provided Cipoletti with 'patently false information' to influence her to pursue discipline in West Virginia;
2. Cipoletti failed to fulfill her obligation to withdraw the reciprocal disciplinary proceeding or advise the [Supreme Court of Appeals of West Virginia] that there was 'substantial and overwhelming evidence of [Zappin's] innocence with respect to the underlying New York findings;'
3. Doyle and Dopico exerted improper influence over Cipoletti through their positions as state officials despite being aware of Zappin's innocence of attorney misconduct;
4. Ramey, Steptoe, Doyle, and Dopico repeatedly contacted Cipoletti exerting undue influence to pursue unwarranted discipline against Zappin; and
5. Cipoletti, Steptoe, and Ramey wrongfully refused to provide documents requested by Zappin in a FOIA request.

PF&R at 40-41 (internal citations omitted). Mr. Zappin alleges that the ulterior purposes underlying these acts was (1) a desire to retaliate against him for contesting the disciplinary proceedings, (2) to conceal misconduct by knowingly bringing a disciplinary action in New York based on findings rendered in Mr. Zappin's divorce that were "unsubstantiated, fabricated and manufactured," (3) to conceal misconduct in pursuing discipline in New York that deliberately

violated due process protections and attorney disciplinary rules, and (4) to retaliate for Mr. Zappin

obtaining a restraining order against Mr. Doyle in West Virginia. *Id*. at 41.

Counts VII and VIII accuse Defendants Cipoletti, Ramey, and Steptoe & Johnson of

unlawfully denying Mr. Zappin's FOIA request, and Defendants Dopico and Doyle of "exert[ing]

influence" over the other Defendants to achieve this denial. Am. Compl. ¶¶ 99-111. The Amended

Complaint alleges that the ulterior purpose behind these acts was

> "to conceal communications between them and others that were exculpatory to Zappin; to
> conceal their misconduct with the other defendants; to conceal evidence of the defendants'
> improper influence over Cipoletti; to retaliate against Zappin for speaking out against New
> York and West Virginia officials and the defendants; to retaliate for Zappin contesting the
> disciplinary procedures; to retaliate for Zappin filing lawsuits; to conceal their misconduct
> for bringing proceedings based on unsubstantiated, fabricated, and manufactured findings;
> to conceal that Zappin had been subject to discipline in New York that failed to comply
> with due process or the rules on disciplinary matters; and to retaliate for the restraining
> order Zappin obtained against Doyle."

PF&R at 41-42 (citing Am. Compl. at 39-42).

The PF&R correctly found that under the doctrines of res judicata and collateral estoppel, Mr.

Zappin is precluded from relitigating any factual or legal issues that have already been determined

in the Sanctions Order, Divorce Judgment, and disbarment proceedings. *See* PF&R at 42. Mr.

Zappin has repeatedly challenged the factual findings in the Sanctions Order and divorce and

custody proceedings; on each occasion, courts have affirmed the validity of those findings. *See*

*Zappin v. Comfort*, 146 A.D.3d 575, 49 N.Y.S.3d 6 (2017) (affirming Sanctions Order) appeal

dismissed by 31 N.Y.3d 1077, 102 N.E.3d 1056 (2018); *Divorce Judgment*, 65 N.Y.S.3d at 30-31;

*Matter of Zappin*, 160 A.D.3d 1; *Zappin v. Cooper*, 768 Fed. Appx. 51 (affirming *Zappin I*);

*Zappin v. Doyle*, 756 Fed. Appx. 110 (affirming *Zappin II*); *Zappin III*, 769 Fed. App'x at 7.

Accordingly, Mr. Zappin is precluded from contesting the validity of these factual findings.

Similarly, Mr. Zappin has already litigated his claims of "innocence" and of procedural infirmities

in the New York disciplinary proceedings; each of these actions resulted in final judgments on the merits affirming the validity of the New York proceedings. *Matter of Zappin*, 108 N.E.3d 946 (N.Y. 2018); *Law. Disciplinary Bd. v. Zappin*, 2021 WL 595869 at *4. Finally, Mr. Zappin's claims of ulterior motives in the reciprocal West Virginia disciplinary proceedings have been previously adjudicated as well and found to be conclusory in nature. *Zappin V*, 2020 WL 5646496 at *10 (rejecting Mr. Zappin's claim that the West Virginia proceeding was retaliatory).

The Court finds that these previously litigated allegations of improprieties in the New York proceedings underly Mr. Zappin's current claims for abuse of process and conspiracy to abuse process under West Virginia law, and that Mr. Zappin is therefore precluded from relitigating those issues via the instant suit. Under West Virginia law, abuse of process "consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *Preiser v. MacQueen*, 352 S.E.2d 22, 28 (W. Va. 1985). The elements of abuse of process are (1) an ulterior purpose and (2) "a willful act in the use of the process not proper in the regular conduct of the proceeding." *Ballock v. Costlow*, 430 F. Supp. 3d 146, 158 (N.D.W. Va. 2019) (quoting *Preiser*, 352 S.E.2d at 28 n.8). Applying the *Preiser* elements, Mr. Zappin must demonstrate an ulterior purpose in order to prevail on each of his claims. However, each of the ulterior motives alleged has been previously litigated by Mr. Zappin and decided on the merits as an integral part of the holdings of prior actions in which Mr. Zappin was granted a full and fair opportunity to make his case. For example, Counts III, IV, VII, and VIII all allege an ulterior motive of concealing misconduct in the New York action—misconduct which multiple courts have already determined did not occur. Am. Compl. ¶¶ 73, 82, 103, 110; *Matter of Zappin*, 108 N.E.3d 946 (N.Y. 2018); *Law. Disciplinary Bd. v. Zappin*, 2021 WL 595869

at *4. Therefore, Plaintiff is barred by non-mutual collateral estoppel from relitigating these findings. *See Montana*, 440 U.S. at 153.

In his Objections, Mr. Zappin argues that specific details in his litany of alleged ulterior motives have yet to be adjudicated by any court. Pl.'s Objections to PF&R ¶ 38. The Court finds that these elements of Mr. Zappin's alleged ulterior motives are subsumed by the broader allegations Plaintiff has made in prior actions which have been adjudicated against him. For example, Mr. Zappin argues that he has properly alleged an ulterior motive of retaliation "for releasing transcripts and videos about Justice Cooper," an asserted motive which was not evaluated in prior actions. *Id*. While no court has found that this specific detail Mr. Zappin alleges as a component of the ulterior motives of Defendants is unsubstantiated, multiple courts have adjudicated Plaintiff's claims of retaliation concerning the New York proceedings, Justice Cooper, and Mr. Zappin's behavior vis-à-vis those proceedings and the Justice. *See, e.g.*, *Zappin I*, 2018 WL 708369. Accordingly, the Court **AFFIRMS** the Magistrate Judge's finding that these Counts are barred by collateral estoppel. Furthermore, to whatever extent sparse elements of Mr. Zappin's ulterior motive allegations have not been addressed in earlier litigation, they are **DISMISSED** as implausible below.

## C. "Conclusory Allegations"

Finally, Mr. Zappin has objected to the Magistrate Judge's characterization of his allegations of conspiracies as "conclusory," due to the PF&R's failure to "provide any specific example." Pl.'s Objs. to PF&R ¶¶ 40-41. Defendants have responded to this argument as "puzzling," given the definition of the word "conclusory," and have noted that eleven prior opinions also have characterized Mr. Zappin's allegations as "conclusory" in nature. Defs.' Resp. to Pl.'s Objs. to PF&R at 7-8.

The heart of Mr. Zappin's inarticulate objection appears to be a belief that, in deeming his allegations as "conclusory," the Magistrate Judge abdicated her responsibility to "accept as true" claims raised in Plaintiff's Amended Complaint. *See* Pl.'s Objs. to PF&R ¶¶ 40-41. However, Courts are not commanded to accept *all* claims as true when considering a motion to dismiss— only plausible allegations are afforded this benefit of the doubt. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. The Court is commanded to employ its common sense and judicial experience in determining whether plausibility exists when considering a motion brought under Rule 12(b)(6). *Iqbal*, 556 U.S. at 679. Furthermore, the Supreme Court has held that where an "obvious alternative explanation" exists, there is insufficient plausibility to survive a motion to dismiss. *Id*. at 682.

Here, in addition to characterizing Mr. Zappin's factual allegations as "conclusory," the Magistrate Judge also described his claims as "extraneous, irrelevant, implausible, … and precluded" by prior litigation. PF&R at 44. The PF&R provided ample support for this finding of a lack of plausibility, including a thirteen-page analysis of the prior litigation brought by Mr. Zappin in a variety of courts and procedural postures, on the same and similar issues as those raised here. *Id*. at 3-16. Additionally, the Magistrate Judge correctly applied the standard for abuse of process, analyzing the Amended Complaint to conclude that Mr. Zappin failed to plausibly allege either that Defendants committed abuse of process within the state of West Virginia, or, in some cases, that any process occurred at all.[9] *Id*. at 43-45. The Court agrees with and **ADOPTS** the

---

[9] This section of the PF&R likewise found Mr. Zappin had failed to state a claim for abuse of process concerning his FOIA request, relying upon an analysis of the Amended Complaint as failing to state a factual basis upon which a plausible abuse of process claim could rest. Mr. Zappin has not expressly objected to this finding; his Objections to this portion of the PF&R are fixated upon the use of the word "conclusory" in dismissing his abuse of process claims concerning the West Virginia Disciplinary Action and mention the FOIA request only in bolstering this claim. *See* Pl.'s Objs. to PF&R at 16. Nonetheless, the Court has reviewed and now **AFFIRMS** the Magistrate Judge's findings with regards to Mr. Zappin's accusations of abuse of process via his FOIA request.

Magistrate Judge's finding that "[Mr.] Zappin's conjecture that his disbarment by the State of West Virginia was due—not to the obvious reason that it was reciprocal to his New York disbarment—but rather was the result of some unlikely and fantastical retaliatory scheme conjured up by a group of lawyers who barely knew him" is implausible. *Id*. at 44.

### D.  Pre-Filing Injunction

In addition to motioning to dismiss Mr. Zappin's claims on the merits, Defendants have filed Motions for a Pre-filing Injunction. ECF Nos. 11 & 15. In the PF&R, the Magistrate Judge recommended that these motions be granted. PF&R at 50-53. Mr. Zappin has not expressly objected to this recommendation. *See* Pl.'s Objs. to PF&R. However, as noted above, Mr. Zappin has broadly objected to the full range of conclusions the Magistrate Judge reached, without delving into details. *See id*. at 16. Furthermore, the issuance of pre-filing injunctions raises important constitutional concerns. *See Cromer*, 390 F.3d at 818. Accordingly, this Opinion will briefly review and endorse the PF&R's determination that Mr. Zappin be precluded from future filings in the Southern District of West Virginia concerning his divorce, disbarments, custody disputes, and related disciplinary proceedings without prior leave of Court.

The standard for granting a pre-filing injunction requires this Court to consider (1) Mr. Zappin's history of litigation, and the nature of said litigation; (2) whether Mr. Zappin had a good faith basis in pursuing his litigation; (3) the extent of the burden on the courts and other parties caused by Mr. Zappin's filings; and (4) the adequacy of alternative sanctions. *Cromer*, 390 F.3d at 818. While this Court is mindful that pre-filing sanctions should be issued sparingly—given the due process implications of limiting access to the judiciary—upon consideration of the *Cromer* criteria, the Court **AGREES** with the Magistrate Judge's recommendation that a pre-filing injunction be issued.

First, Mr. Zappin has a lengthy history of litigation concerning his divorce, disbarments, custody disputes, disciplinary proceedings, and collateral issues. *See Zappin VI*, 2022 WL 985634 at *1 (outlining Mr. Zappin's litigious efforts at length). The suits brought by Mr. Zappin in multiple venues are frequently duplicative, repetitive, and constitute thinly veiled attempts at relitigating the issues on which he has repeatedly lost. *Id*. Mr. Zappin has already had a pre-filing injunction issued against him in the Southern District of New York, the forum in which he litigated the majority of his suits, prior to emigrating his efforts to this Court. *Id*. at *11. As quoted in the PF&R, in considering a similar standard, the Southern District concluded that "[a]t bottom, [Mr.] Zappin's years-long history of filing suit again and again against the same set of actors for the same series of events—and, in so doing, displaying little respect for courts and their orders and deadlines—counsels in favor of a filing injunction." *Id*. at *8. The Court further notes that Mr. Zappin has yet again ignored court-imposed litigation deadlines in the instant case, neglecting to file a Reply to Defendant's Response to his Objections. Nor has Mr. Zappin adequately or properly objected to the Magistrate Judge's determination that a pre-filing injunction is appropriate, as discussed above; Mr. Zappin is yet again litigating in a "dilatory and disrespectful manner." *Id*. Finally, the Southern District of New York recently has been forced to issue a *second* pre-filing injunction against Mr. Zappin, concerning additional elements of his custody and divorce proceedings which were not covered by the first pre-filing injunction. *Zappin v. Comfort*, 2022 WL 4592551 (S.D.N.Y. Sept. 30, 2022). Accordingly, both Mr. Zappin's years-long history of litigation on the issues at hand and his efforts in the instant suit weigh heavily in favor of granting a pre-filing injunction.

Second, the Court is compelled to consider whether Mr. Zappin has a good faith basis for pursuing successive litigation on these issues. *See Cromer*, 390 F.3d at 818. Unlike the average

pro se litigant, Mr. Zappin has a law degree, was admitted to practice in several jurisdictions, and has demonstrated an understanding of the applicability of abstract legal concepts to his allegations of impropriety. *See, e.g.*, Am. Compl ¶ 97. The claims Mr. Zappin has raised in this Court have been repeatedly relitigated, to the extent that most of them are barred by a straightforward application of res judicata and collateral estoppel. Furthermore, several courts have dismissed Mr. Zappin's prior nigh-identical suits with prejudice. *See, e.g.*, *Zappin V*, 2020 WL 5646496. The Court concludes that it is not feasible that the legally-literate Mr. Zappin could hold a good faith belief that filing yet another suit alleging the same offensive conduct by the same actors in the same forum could possibly lead to a different outcome. Therefore, the Court agrees with the Magistrate Judge's assessment that this factor weighs in favor of granting the requested injunction.

Third, the Court finds that Mr. Zappin has imposed a burden upon the courts in which he continually files his vexatious lawsuits, as well as upon the parties who are forced to repeatedly expend resources in responding to them. Mr. Zappin has filed at least twenty lawsuits on these issues, none of which have afforded him his requested relief, and many of which have burdened Defendants with duplicative efforts. *See, e.g.*, *id*. (brought against Defendant Dopico); *Zappin IV*, 2020 WL 4753036 (brought against Defendant Doyle); *Zappin v. Comfort*, 2022 WL 6241248 (S.D.N.Y. Aug. 29, 2022) (counting twenty actions brought by Mr. Zappin). Accordingly, the Court finds that this factor weighs against allowing Mr. Zappin to continue his litigious campaign.

Finally, the Court considers whether alternative sanctions are available which could adequately protect the Court and other parties from the unfortunate aspects of Mr. Zappin's efforts. Unfortunately for Plaintiff, neither the PF&R nor the instant Opinion can contemplate an alternative effective penalty. Mr. Zappin has been previously subjected to monetary sanctions, none of which have alleviated the issue. *Zappin VI*, 2022 WL 985634 at *10. Furthermore, one

pre-filing injunction in the Southern District of New York has been insufficient to halt Mr. Zappin's frivolous lawsuits, leading to the issuance of a second pre-filing injunction in that court. *Zappin v. Comfort*, 2022 WL 4592551. The manifest inability of alternative sanctions to address the difficulties engendered by Mr. Zappin's repetitious litigation indicates that this factor weighs in favor of granting the injunction.

The Court appreciates that Mr. Zappin has a constitutional right to access the judicial system and seek redress for his grievances. And yet, balancing the nature of that right with the burdens he has imposed upon the judiciary as an institution and the various civil servants Mr. Zappin has baselessly accused of harboring animus against him leads this Court to the inescapable conclusion that the Magistrate Judge's recommendation of a pre-filing injunction should be adopted.

### IV. CONCLUSION

For the forgoing reasons, the Court **OVERRULES** Mr. Zappin's Objections and **ADOPTS AND INCORPORATES HEREIN** the PF&R, ECF No. 29. Accordingly, the Court **GRANTS** Defendants' Motions to Dismiss with Prejudice (ECF Nos. 11 & 15), and **ORDERS** this case stricken from its docket.

Furthermore, Mr. Zappin is **ENJOINED** from further filings in this Court against any current or former New York or West Virginia judge, official, employee, or counsel representing such persons in previous litigation involving the Plaintiff arising out of the New York divorce proceeding, the New York disciplinary proceeding, or the West Virginia reciprocal disciplinary proceeding without first seeking leave from this Court.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to Plaintiff, who is acting pro se, and counsel of record.

ENTER:      February 2, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE